# TOTAL QUALITY LOGISTICS, LLC

## Employee Non-Compete, Confidentiality And Non-Solicitation Agreement

This EMPLOYEE NON-COMPETE, CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement"), is by and between TOTAL QUALITY LOGISTICS, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245 and the Employee whose name and address are set forth below his or her signature on the last page of this Agreement ("Employee").

### Recitals:

**WHEREAS**, TQL is an Ohio Corporation providing motor transport and related services, including third-party logistic services, motor freight brokerage services and supply-chain management services (hereinafter referred to as the "Business") throughout the Continental United States; and

**WHEREAS**, TQL is unique within the organizations providing services competitive to the Business (hereinafter referred to as the "Industry"). TQL has spent extensive time developing relationships with Customers, Motor Carriers, suppliers and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information, and such information would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns at and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL; and

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers, potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers, and financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors: pricing, marketing and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This

PPAB 1642339v3

TQL EXH 1

information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection; and

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's Business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL; and

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its Business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's Business; and

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or would be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL; and

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry; and

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, TQL will not agree to employ Employee unless Employee signs this Agreement and is bound by it;

**WHEREAS**, Employee acknowledges and agrees that this Agreement is entered into at the inception of his or her employment with TQL and that Employee has not been permitted to perform any work for TQL before executing this Agreement; and

**NOW THEREFORE**, in consideration of the employment of Employee by TQL, including compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, TQL and Employee agree as follows:

1. <u>Recitals</u>. The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

2. **At-will Employment.** Employee is an employee at-will. Nothing in this Agreement changes Employee's status as an at-will employee. Either TQL or Employee may terminate Employee's employment for any reason at any time. Employee acknowledges and agrees that this Agreement does not constitute a contract of employment and that Employee does not have a contract of employment with TQL.

3. **TQL Owns Confidential Information.** All Confidential Information as described herein is proprietary and the sole property of TQL.

4. **Confidential Information is for TQL's Use Only.** Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business. Employee agrees that all information disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential. Notwithstanding anything herein to the contrary, the restrictions contained in this Section 4 are not intended and shall not be construed to prohibit Employee from disclosing or using the general skills and knowledge acquired as an employee of TQL, except as such disclosure and use is restricted in Section 8 hereof.

5. **Return of Company Property.** Upon termination or cessation of employment for any reason or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data or other materials.

6. **Presumption Regarding Confidential Information.** Employee agrees that Employee's engaging in an employment relationship with a Competing Business, as defined in Section 8 below, in a position similar to Employee's position at TQL or in any other position in which the knowledge or use of TQL's Confidential Information would be beneficial, would necessarily and inevitably result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

7. **Trade Secrets.** The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and unique assets of TQL's Business and operations, access to and knowledge of which are essential to performance of Employee's duties hereunder. Employee will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, nor shall Employee make use of any such property for

PPAB 1642339v3     3     Employee Initials _TCN_

Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

    8.  Covenants and Remedies.

        (a) Agreement to Covenants and Material Breach. The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 3 through 8 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

        (b) Covenants. Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason (the "Restricted Period"):

            (i) Employee will not, directly or indirectly, own, operate, maintain or have any other interest (whether as an owner, shareholder, officer, director, partner, member, joint venturer or any other interest) in any Competing Business (as defined below); except that nothing in this subsection prohibits Employee from owning less than 1% of the outstanding equity securities of any publicly-held corporation or entity; and

            (ii) Employee will not, directly or indirectly, (whether as an employee, agent, consultant, contractor or otherwise), become employed by or engaged in a Competing Business (as defined below), in a capacity similar to that in which Employee is engaged by TQL or in a capacity in which Employee is in a position to use or benefit from the use of TQL's Confidential Information; and

            (iii) Employee will not, directly or indirectly, solicit any Customer or Motor Carrier (as defined below) for any business purpose in competition with or in conflict with the Business of TQL; and

            (iv) Employee will not, directly or indirectly, interfere with, tamper with, disrupt, or attempt to interfere with, tamper with or disrupt any contractual relationship, or prospective contractual relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL, or otherwise take any action to divert Business from TQL; and

            (v) Employee will not, directly or indirectly, recruit, solicit, or assist others in recruiting or soliciting any person who is an employee of or consultant with TQL.

        (c) Injunction & Enforcement Remedies. If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach. Alternatively and additionally, without limitation of remedy, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee. If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL. Nothing herein shall be construed as prohibiting TQL from pursuing any other legal or

PPAB 1642339v3                              4                          Employee Initials TCN

equitable remedies that may be available to it for any breach or threatened breach of the Agreement. Furthermore, the Restricted Period (defined above) shall not include any period(s) of violation or period(s) of time required for litigation to enforce the covenants contained in this Agreement.

(d) Definitions. For purposes of this Agreement, the term: (i) "Customer" is any customer or prospective customer: (A) with whom Employee had contact in connection with Employee's employment with TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with TQL for any reason; or (B) about whom Employee had access to proprietary, confidential, or commercially advantageous information through Employee's employment by TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with TQL for any reason; (ii) the term "Motor Carrier" is any over-the-road motor carrier, trucker or hauling business that has transported freight for any Customer as a result of a relationship, dealings, arrangements, or communications with TQL and: (A) with whom Employee had contact in connection with Employee's employment with TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with Company for any reason; or (B) about whom Employee had access to proprietary, confidential, or commercially advantageous information through Employee's employment by TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with TQL for any reason; (iii) the term "Competing Business" is any person, firm, corporation, or entity that is engaged in the Business anywhere in the Continental United States.

(e) Acknowledgement of Intent. The parties agree and affirm that their intention with respect to Section 8 of this Agreement is that Employee's activities be limited only during Employee's employment with TQL and for a twelve (12) month period after termination or cessation of Employee's employment with TQL for any reason. The provisions calling for a "look back" of twelve (12) calendar months prior to termination or cessation of Employee's employment with TQL for any reason are intended solely as a means of identifying the Customers and Motor Carriers to which such restrictions apply and are not intended to nor shall they, under any circumstances, be construed to define the length or term of any such restrictions.

9. Reasonableness of Restrictions. Employee agrees and acknowledges that the provisions of this Agreement, including the geographic, duration, and content restrictions contained in Section 8 and the restrictions on the disclosure and use of Confidential Information contained in Section 4, are reasonable and fair in all respects and properly required for the adequate protection of the Business of TQL from the disclosure of Confidential Information and unfair competition. Employee further agrees and acknowledges that this Agreement is based upon valuable and sufficient consideration, the receipt of which as of the date of this Agreement is hereby acknowledged.

10. Governing Law. This Agreement is made and entered into in the State of Ohio. This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without regard to its conflict of law principles.

11. Severability. Should any of the provisions of this Agreement be declared or determined to be illegal or invalid by a court of competent jurisdiction, (a) the validity of the

remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement provisions as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable. The parties hereby consent and agree that the scope of the Agreement's provisions may be modified judicially in any proceeding brought to enforce such provisions.

12. <u>No Conflicting Employee Agreement</u>. Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

13. <u>Acknowledgments</u>. Employee acknowledges and agrees that he or she:

(a) has had sufficient time within which to consider the Agreement before executing it;

(b) has carefully read and fully understands all of the provisions of the Agreement;

(c) knowingly and voluntarily agrees to all of the terms set forth in the Agreement;

(d) knowingly and voluntarily intends to be legally bound by this Agreement;

(e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and

(f) has knowingly and voluntarily executed this Agreement.

14. <u>Binding Agreement</u>. This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns. The Agreement is not assignable by Employee.

15. <u>Survival</u>. Sections 3 through 14 of this Agreement shall survive the termination or cessation of Employee's employment with TQL for any reason.

16. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement. This Agreement may be amended or modified only upon written agreement signed by both of the parties hereto. This Agreement may be executed in Counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

In Witness Whereof, the undersigned parties to this Agreement have duly executed it on the day and year first written below.

EMPLOYEE:

_[signature]_
Signature
Name: T. Carter Neal
Please Print
Address: 1152 Garland Rd
Mt. Pleasant, SC 29464

Date: 8/22/11

TOTAL QUALITY LOGISTICS, LLC

By: _[signature]_
Name: KERBY BURKE
Title: EVP
Date: 8/22/11