**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **TOTAL QUALITY LOGISTICS, LLC.** | **Case No. 1:24-cv-742-SJD** |
| Plaintiff, | **Judge  Dlott** |
| **v.** | |
| **NEAL et al.,** | **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTIOJN, AND IN THE ALTERNATIVE TO TRANSFER VENUE TO THE DISTRICT OF SOUTH CAROLINA** |
| Defendants. | |
| | **DECLARATIONS OF ANDREW WADE AND CARTER NEAL ATTACHED** |

Defendants Carter Neal and Devine Logistics move under Rule 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. As established by the attached declarations, the defendants' connections to Ohio are so attenuated as to be effectively non-existent. Neither defendant has any place of business or physical presence in Ohio. Neither defendant lives nor works in Ohio. Neither defendant regularly conducts business in Ohio. Defendant Neal was formerly employed with TQL in South Carolina—not Ohio—and he signed his former employment agreement with TQL in South Carolina. Unlike TQL, which is a third-party logistics company (i.e., TQL acts as a middle-man between truckers and people who need goods shipped), Devine is a drayage company, which means it uses its own roster of employed or contracted drivers to haul goods from three east coast ports to wherever its customers need them delivered—and just 21 of the over 4900 hauls went to Ohio. That is about 0.4% of Devine's business. That is not enough contact with Ohio to subject the defendants to suit here. The plaintiff cannot be the only link between the case and the forum—*see Walden v. Fiore*, 571 U.S. 277 (2014)—and the only reason that TQL has filed this lawsuit in Ohio rather than South

Carolina is that it knows that South Carolina courts have refused to enforce the restrictive covenants in substantially similar employment agreements. In these circumstances it would not be constitutionally permissible for this Court to exercise personal jurisdiction over the defendants.

In the alternative to dismissing for lack of personal jurisdiction, the Court should transfer venue to the District of South Carolina (Charleston Division). That is not just where the defendants are located. It is also (1) where defendant Carter Neal lived and worked for the entire duration of his employment with plaintiff TQL, (2) where TQL maintains the office where the witnesses with knowledge of Neal's employment work (and where those witnesses live), (3) where the records relating to Neal's employment are located, (4) where the records relating to the customers Neal is alleged to have serviced with TQL are located, (5) where defendant Devine Logistics is incorporated and maintains its only office, (6) where all Devine employees who are likely to be witnesses live and work, and (7) where all of Devine's records are located.

In sum, the *only* connection to the Southern District of Ohio is that it is the site of the plaintiff's headquarters. That is not a basis for exercising personal jurisdiction over the defendants, and it does not make Ohio a proper venue.

## BACKGROUND AND FACTS

Defendant Carter Neal was employed by plaintiff TQL, and resigned that position on September 30, 2024. *See* doc. 2 at PAGEID# 72 ¶6. TQL filed its complaint against the defendants in Clermont County, Ohio, on December 11, 2024. *See* doc. 2 at PAGEID# 71. The complaint raises three claims against each defendant, and each claim demands damages of "more than $25,000." *See* doc. 2 at ¶50, ¶59, ¶69, ¶73. Based on the complaint's allegation that "more than" $75,000 was in controversy (more than $25,000 times 3), and based on the parties'

2

complete diversity, *see* doc. 1 at PAGEID# 2 ¶6, the defendants jointly removed this action to this Court. *See* doc. 1.

The complaint alleges claims for breach of Neal's employment contract, tortious interference by Devine with the Neal-TQL employment contract, misappropriation of trade secrets that Neal allegedly used while he was employed by TQL (and which TQL contends that the defendants will use in South Carolina), and civil conspiracy.

### A. Devine has no connections of any substance to Ohio.

Devine is a South Carolina corporation. *See* Andrew Wade Declaration ¶2 (attached). Its only office is, and at all times has been, in Charleston, South Carolina. *Id.* Devine does not have any employees in Ohio and does not own any assets in Ohio. *Id.* at ¶3. All of Devine's employees[1] (including defendant Carter Neal) are in Charleston, South Carolina, and Devine's business efforts are focused on the Mid-Atlantic, not Ohio. *Id.* at ¶3-4. With the exception of an extremely small number of truck drivers—see below—none of Devine's employees have traveled to Ohio for business at any time. *Id.* at ¶5.

Unlike TQL, which is in the business of third-party logistics, Devine is an asset-based trucking company. *Id.* at ¶8. More specifically, Devine is a drayage trucking company. *Id.* Drayage means that Devine does not work as the broker or market-maker for any freight; instead, Devine uses its own drivers and trucks to pick up containers from ships and deliver them to their destination, and then either return with an empty truck or bring the empty container back. *Id.* at ¶8-10. Devine does this for both imports (taking containers from ships to their destination) and exports (taking containers to ships from their destinations), *id.* at ¶9-10, and charges a round-trip

---

[1] Devine's truckers are independent contractors rather than employees. They contract exclusively with Devine to haul goods from the ports in Charleston, South Carolina, Norfolk, Virginia, and Savannah, Georgia. *See* Wade Decl. at ¶12. But even if those independent contractors *were* employees, a vanishingly small amount of their work took them to Ohio—about 0.4% of loads; see below and Wade Decl. at ¶17-21.

fee for providing this service, *id.* at ¶11. All of Devine's hauls are done with trucks that Devine

owns or leases (or contracts exclusively, all of which are branded on the side as "Antler

Transport." *Id.* at ¶12-13.

Because Devine works exclusively in drayage, all of its jobs either begin or end at one of

three ports: the Port of Charleston (South Carolina), the Port of Norfolk (Virginia), or the Port of

Savannah (Georgia). *Id.* at ¶14. Drayage trucking is not cost-effective for long hauls; containers

that need be moved long distances from ports are typically loaded on trains. *Id.* at ¶15. Most of

Ohio is well outside the typical maximum distance that containers would be hauled from any of

three ports at which Devine works. For that reason, it is exceedingly rare that Devine does (or

that any drayage company operating in Norfolk, Charleston, or Savannah would) haul loads to

Ohio. *Id.* at ¶16.

Instead, Devine focuses its business efforts on the Mid-Atlantic region, *id.* at ¶3, and

consistently more than 80% of Devine's business (and in some quarters more than 90% of its

business) comes from hauls from the three above-named ports to destinations in South Carolina,

North Carolina, Georgia, or Virginia. *Id.* at ¶19.

A review of Devine's business records by its CEO reveals that Devine hauled more than

4900 loads between October 1, 2023, and January 6, 2025. *Id.* at ¶17-19. (The October 1, 2023,

date was chosen because it was one year before Carter Neal left TQL's employment on

September 30, 2024.) Of those 4936 loads, just **21** loads went into Ohio. *Id.* at ¶20. That is

approximately 0.4% of all of Devine's loads in that time period. *Id.* at ¶20. Of those Ohio loads,

all of them originated in Norfolk, Virginia, and nearly all of them went to Gallipolis, Ohio (on

the Ohio River on the state's far southeastern edge). *Id.* at ¶20. Moreover, all the loads sent into

Ohio were run on or before May 23, 2024—meaning that *zero* loads have been run to Ohio in the

4

roughly seven months preceding the filing of the complaint, and *zero* loads have been run to Ohio since Carter Neal left TQL's employment in the early fall of 2024. *Id.* at ¶21.[2]

**B.  Carter Neal also has no connection to Ohio.**

Like Devine, Neal is a South Carolinian. *See* Thomas Carter Neal Declaration (attached) at ¶2. While Neal was previously employed by TQL, he was employed exclusively in Charleston, South Carolina. *Id.* When Neal was hired, he was hired at the office then located on Daniel Island within the City of Charleston. *Id.* That location is where Neal executed all paperwork related to his hiring and employment, including his employment contract, and his paperwork was taken and processed by the TQL personnel who worked at that South Carolina location. *Id.* at ¶3.

Neal was a South Carolina resident the entire time he worked for TQL *Id.* at ¶4. Throughout his employment he resided in Mt. Pleasant, South Carolina (and still does to this day). *Id.* At all relevant times he has been registered to vote in South Carolina, has held a South Carolina driver's license, has paid South Carolina income taxes, and has not resided in any state other than South Carolina. *Id.*

Neal did not receive any TQL training in Ohio. *Id.* at ¶7. When he worked for TQL, he worked exclusively out of TQL's Charleston, South Carolina, office, *id.* at ¶5, and his employment activities took place in Charleston, South Carolina, *id.* at ¶10. When he worked for TQL Neal reported directly to supervisors in Charleston, South Carolina. *Id.* at ¶9. Neal did not report to any supervisors in Ohio. *Id.* Throughout his employment with TQL, the company withheld employment-related taxes from his wages and remitted them to the South Carolina Tax Commission. *Id.* at ¶8. Neal worked for TQL for more than twelve years, *id.* at ¶3, and traveled

---

[2] Neal joined Devine on October 7, 2024. *See* Wade Decl. at ¶6.

to Ohio only twice for work (once to visit a customer, and once for an internal interview for a job that he did not take), spending a grand total of less than five days in Ohio. *Id.* at ¶6.

Neal now works for Devine, which he does exclusively from the office in Charleston, South Carolina (with the exception of one one-day trip to Charlotte, North Carolina). *Id.* at ¶11. He has not worked for Devine in Ohio, and has not been to Ohio for any reason since starting to work for Devine. *Id.* To the best of Neal's knowledge, he has not worked with any customers located in Ohio. *Id.*

While Devine works at the ports in Charleston, South Carolina, Norfolk, Virginia, and Savannah, Georgia, Neal works primarily only at the terminal in Charleston. *Id.* at ¶12. Meanwhile as described above (see Wade Decl. at ¶20-21), *zero* loads run by Devine during Neal's employment have gone to Ohio, and even if any future loads do go to Ohio they are likely to come out of Norfolk, not Charleston (and therefore unlikely to have been arranged by Neal).

## ARGUMENT

### A.  The Complaint should be dismissed for a lack of personal jurisdiction.

TQL must demonstrate that Ohio law authorizes personal jurisdiction over the defendants pursuant to Ohio's long-arm statute, and also that the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *Hedman v. Allianz Seguros SA*, No. 1:10-cv-546, 2014 WL 3687743, at *1 (S.D. Ohio May 28, 2015).

To exert personal jurisdiction over non-resident defendants like Devine and Neal, the forum's long-arm statute must be satisfied, and the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice under the Due Process Clause.  *Am. Energy Corp. v. Am. Energy Partners*, No. 2:13-cv-886, 2014 WL 1908290, at *5 (S.D. Ohio May 9, 2014).  The Sixth Circuit has held that "[j]urisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the

forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996).

**(1) TQL cannot satisfy the requirements of Ohio's long-arm statute.**

The complaint alleges that both Neal and Devine are subject to personal jurisdiction in Ohio because their business activities in Ohio "are so substantial that it is reasonable to require [them] to defend a lawsuit in Ohio." *See* doc. 2, PAGEID# 72-73, ¶6-7. It further alleges that they have "caused tortious injury in Ohio," and that they have caused tortious injury in Ohio "by an act outside this state committed with the purpose of injuring TQL." *Id.*

TQL's allegations do not satisfy the long-arm for two reasons.

First, TQL has misquoted part of the long-arm statute. The relevant portions of the statute read as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> …
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> …
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonable have expected that some person would be injured thereby in this state; …

Ohio Rev. Code § 2307.382(A).

While TQL alleged in ¶6-7 of the complaint that the defendants are subject to personal jurisdiction because they have "caused tortious injury in Ohio," in order to satisfy part (A)(3) of

the long-arm requires TQL to establish that the defendants "caus[ed] tortious jury *by an act or omission in [Ohio]*." There is no allegation that the defendants committed any act or omission *in Ohio*.

Second, and more importantly, the other portions of the long-arm require TQL to show that the defendants have the necessary connections with (or that their actions were directed toward) Ohio. As discussed at length above, neither Devine nor Neal has any such connection. While Neal was formerly employed by TQL, that employment was exclusively in South Carolina, not Ohio. He executed his employment agreement there; he was trained there; he reported to supervisors there; and he lived, voted, and paid taxes there. Devine, meanwhile, has no offices or assets in Ohio; has no employees in Ohio; does not direct any business activities to or in Ohio; and in the preceding year-plus has had only the smallest incidental contact with Ohio (0.4% of all loads).

None of that is sufficient to constitute "transacting business" in Ohio. Under part (A)(1) of the long-arm, "transacting business" entails either initiating business dealings with Ohio, or conducting negotiations in or with terms affecting Ohio. *See Thomas v. Dykstra*, 309 F. Supp. 3d 480, 484 (N.D. Ohio 2018) (citing *Shaker Constr. Grp., LLC v. Schilling*, 2008 WL 4346777, at *3 (S.D. Ohio 2008)).

In *TQL v. Tarpon Transportation Services*, Judge Barrett explained that out-of-state defendants delivering an extremely small proportion of loads into Ohio from out-of-Ohio points of origin was not "transacting business" in Ohio within the meaning of the long-arm statute. *See* 2019 U.S. Dist. LEXIS 157672, at *6-7 (S.D. Ohio. no. 1:18-cv-353, Sept. 16, 2019). What happened there—a Florida company hiring a Florida-resident ex-TQL employee, with the defendants then sending about one quarter of one percent of loads into Ohio—was "essentially

8

asking the Court to find that it has personal jurisdiction over Defendant because its customers—who are not located in Ohio—have customers who are located in Ohio." *Id.* at *6. This case is functionally identical. TQL is asking the Court to find that it has personal jurisdiction over the South Carolina defendants because their customers, who are not located in Ohio, have customers who are located in Ohio. The only differences are that these defendants are South Carolinians rather than the Floridian in *Tarpon Transportation*, and that about 0.4% of loads went into Ohio rather than about 0.25% of loads in *Tarpon Transportation*.  That is insufficient to satisfy the long-arm. *Id.* at *7.

For the same reasons, TQL has failed to satisfy parts (A)(4) or (A)(6) of the statute. Part (A)(4) requires TQL to establish that each defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Ohio. For all the reasons discussed above TQL cannot meet that burden. Part (A)(6) requires TQL to establish that each defendant committed "an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state." TQL cannot meet that burden either. As Judge Barrett explained in *Tarpon*, case law in this district requires the plaintiff to show that the defendants participated in a scheme to disclose or use the plaintiff's trade secrets and confidential information for the benefit of the defendants. *Id.* at *7-8. TQL has two problems here. One is that even if there were any evidence of the disclosure or use of confidential information, both defendants have only ever worked in South Carolina, and so there would be no reason for them to reasonably expect—as R.C. 2307.382(A)(6) requires—that anyone would be injured in Ohio. The other is that as both Devine CEO Andrew Wade and Carter Neal explain in their declarations, Devine is an asset-based drayage trucking company,

9

and it does not compete with TQL and its third-party logistics business. There thus is no way that the defendants could use TQL's confidential information for their benefit anyway.

Because TQL has not satisfied the long-arm statute, this Court lacks personal jurisdiction over the defendants, and it must dismiss the case.

### (2) Due process precludes TQL from haling the defendants into court in Ohio.

In addition to failing to satisfy Ohio's long-arm statute, TQL cannot show that this Court's exercise of personal jurisdiction is permissible under the Due Process Clause.  "[T]he Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice'." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)); *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, (1980) (The critical minimum-contacts analysis seeks to answer whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there).

To find specific jurisdiction under the Due Process Clause, the Sixth Circuit has held that the following three factors must be satisfied: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "the cause of action must arise from the defendant's activities there"; and (3) "the acts or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Conn*, 667 F.3d at 713.

As set forth above, a South Carolina company hiring a South Carolina citizen to work at their office in South Carolina cannot give rise to a lawsuit in Ohio just because the individual's

10

former employer is based in Ohio. It cannot be fairly alleged that the defendants' actions or the effects of their action establish any connection, let alone a substantial connection, to the forum state.

The first requirement is intended to protect a defendant from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," which is precisely the protection the defendants seek. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1975). As this Court said in *Gold Medal Prod. Co. v. Bell Flavors & Fragrances, Inc.*, No. 1:16-CV-00365, 2017 WL 1365798, at \*6 (S.D. Ohio Apr. 14, 2017), "The Supreme Court in *Walden* [*v. Fiore*, 571 U.S. 277 (2014)] 'rejected' the theory that personal jurisdiction can be based on intentional acts taken outside a forum state which the defendant knows will cause effects inside the forum state." Both the Supreme Court and the Sixth Circuit have recently reiterated that "'mere injury to a forum resident is not a sufficient connection to the forum' to establish jurisdiction." *Bulso v. O'Shea*, 2018 U.S. App. LEXIS 9809, at \*5 (CA6, Apr. 19, 2018) (citing *Walden v. Fiore*, 134 S.Ct 1115, 1125 (2014). "[A]fter *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Bulso* at *id.* Here, an alleged injury to the plaintiff is the only link between the defendants and the forum. As a result, "there can be no doubt" that personal jurisdiction is lacking.

Again, this case is similar to *TQL v. Tarpon Transportation*. In that case Judge Barrett held that the "purposeful availment" element had not been satisfied when the individual in question was formerly employed by an Ohio company in Florida. That did not constitute the new employer "purposefully availing" itself of the privilege of doing business in Ohio, and

11

employing such a person in Florida should not make the new employer reasonably anticipate being haled into court in Ohio. *See Tarpon Transp.*, 2019 U.S. Dist. LEXIS 157672 at *10.

Because purposeful availment does not exist it is not even necessary to address the other due process elements—dismissal is mandatory. *See LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir.1989) ("The plaintiff having failed to pass the 'purposeful availment' test, we need not dwell on the other criteria… each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."). But in an abundance of caution this brief will address them anyway.

The second element requires proof that the claims in the complaint arise out of the defendants' activities *in the forum state*. TQL cannot satisfy this element because neither defendant has engaged in effectively *any* activity of any kind in the forum state. Devine's drivers ran only 21 loads in Ohio, which is itself a vanishingly small number—but even if it weren't, every one of those loads occurred many months before any of the conduct which gives rise to the complaint. Neal has done nothing in Ohio except having had the misfortune of working in South Carolina for a company based in Ohio. To the extent that these constitute "contacts" with Ohio at all, they are exactly the type of random, fortuitous, and attenuated contacts that are inconsistent with due process. The second element is not satisfied.

Turning to the third element of specific jurisdiction—the "reasonableness inquiry"— courts typically consider (1) the burden on the defendant, (2) the interest of the forum state, (3) plaintiff's interest in obtaining relief, and (4) the interest of other states in securing the most efficient resolution of controversies. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Each of these factors militates in favor of dismissing the complaint.

In comparison to TQL, one of the largest transportation logistics providers in the nation—see Complaint, doc. 2, PAGEID# 74, ¶10—Devine is a much smaller regional drayage company.  The costs of litigating these issues in Ohio unduly and unfairly burden the defendants, as they have been forced to engage local counsel and will incur the costs of potentially traveling to Ohio if the litigation progresses.  On the other hand, these disputes have no particular nexus to Ohio, and while the defendants submit that TQL's claims are without merit, they could be and are more appropriately litigated in a South Carolina court. TQL maintains an office in Charleston, South Carolina, and TQL has voluntarily made contact with South Carolina by having hired Neal, a South Carolina resident.

TQL has previously defended actions brought against TQL by former employees in South Carolina's courts. Indeed, the reason that TQL wants so badly to keep *this* case out of South Carolina is that the South Carolina courts have determined that restrictive covenants substantially similar to those at issue here are unenforceable as a matter of law. *See Fay v. Total Quality Logistics*, 419 S.C. 622, 629 (S.C. App. 2017) (holding that TQL's employment agreement "violated the public policy of South Carolina").

There is no reason this case has a specific connection to Ohio. A large company like TQL can obtain relief as effectively in South Carolina as it can in Ohio, while Devine and Neal are significantly prejudiced by being forced to litigate in Ohio.  The State of South Carolina, meanwhile, has a substantial interest in resolving the controversies at issue.  The lawsuit involves a South Carolina corporation and a South Carolina citizen and relates to work performed in South Carolina. Even TQL's corporate representatives are likely to be in South Carolina, given that Neal worked for them there. The majority or all the other fact witnesses reside in South

13

Carolina, and the case, including discovery efforts, will certainly proceed more efficiently if the trial court is geographically proximate to the anticipated witnesses.

All these facts show that the "reasonableness" aspect of the due process inquiry points to South Carolina, not Ohio. Because exercising jurisdiction over these defendants in Ohio is inconsistent with due process, the case must be dismissed.

**B. In the alternative, the Court should order a change of venue to the District of South Carolina.**

If the Court determines that it has personal jurisdiction over the defendants, it should nevertheless order a chance of venue to the District of South Carolina (Charleston Division) because venue is not proper in this district.

Venue is governed by 28 USC 1391, which provides in relevant part as follows:

(b) VENUE IN GENERAL.—A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Southern District of Ohio is not a proper venue under (b)(1), because no defendant resides in this district or State.

The Southern District of Ohio is not a proper venue under (b)(2), because no substantial part of the events giving rise to the claim occurred here. Instead, *all* the acts occurred in *South Carolina*—that is where Devine and Neal reside; that is where Devine and Neal formed their contractual relationship; and that is even where TQL employed Neal. (An alleged injury to a district resident is not a substantial connection to the district; see *Bulso* and *Walden*, *supra*.)

14

The Southern District of Ohio is not a proper venue under (b)(3), because (even assuming that the defendants are subject to personal jurisdiction here), there is not an absence of a "district in which an action may otherwise be brought as provided in this section." The action could have and should have been brought in the District of South Carolina.

Transfer is mandatory when the action is currently pending in an impermissible venue, but even if the Southern District of Ohio were a proper venue, the Court would still have discretion to change venue "For the convenience of parties and witnesses, in the interest of justice." 28 USC §1404(a). *See also* 28 USC §1406(a) (when case is filed in improper venue, the court may dismiss or transfer it). Factors to consider in this assessment include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). All of these factors point to South Carolina as the proper venue—Devine Neal are in South Carolina, the relevant defense witnesses who can speak to what Devine does and how it operates are in South Carolina, the relevant TQL witnesses who supervised Neal and can testify as to Neal's work for TQL are in South Carolina—and essentially none of the customers are in Ohio. In addition, where (as here) the case was removed from state court, the plaintiff's choice of forum is entitled to less weight than usual—the plaintiff is already outside its chosen forum of state court. *See, e.g., Sky Technologies Partners, LLC v. Midwest Research Inst.*, 125 F.Supp.2d 286,292 (S.D. Ohio 2000). If the Court does not dismiss the case for lack of personal jurisdiction, it should transfer it to the District of South Carolina (Charleston Division).

## CONCLUSION

Devine has no connection to Ohio. It has no offices in Ohio and no employees in Ohio, and it does not do any significant work in Ohio. Its customers are not located in Ohio, and while a very small portion of its past business had an indirect connection to Ohio, any of those deliveries have no connection whatsoever to *this* case. Neal also has no connection to Ohio. He lives and works in South Carolina, the state of which he has been a resident for nearly twenty years. Even when he worked for TQL, he did so only in South Carolina. He cannot be haled into court in Ohio merely because his former employer has an office here. The only connection to Ohio is the plaintiff. That cannot confer personal jurisdiction over the defendants in Ohio. The Court should dismiss the case under Rule 12(b)(2), or in the alternative should transfer venue to the District of South Carolina (Charleston Division).

<div style="margin-left:50%">

Respectfully submitted,

 */s/ Jeffrey M. Nye*
Peter A. Saba (0055535)
Jeffrey M. Nye (0082247)
SSP LAW, Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
Tel.   (513) 533-2701
Fax   (513) 533-2999
pas@sspfirm.com
jmn@sspfirm.com
**Counsel for defendants Thomas Carter Neal and Devine Logistics**

</div>

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served on all counsel of record via cm/ecf on the date of filing.

<div style="margin-left:50%">

*/s/ Jeffrey M. Nye*
Jeffrey M. Nye

</div>