Last updated  January 03, 2025   11:35:00 am GMT

# Total Quality Logistics, LLC v. Franklin

United States District Court for the Southern District of Ohio, Western Division

August 27, 2020, Decided; August 27, 2020, Filed

Case No. 1:19-cv-266

**Reporter**
2020 U.S. Dist. LEXIS 155757 *; 2020 WL 5051418

TOTAL QUALITY LOGISTICS, LLC, Plaintiff, v. JERRY LEE FRANKLIN, et al., Defendants.

## Core Terms

removal, damages, amount in controversy, state court, Notice, discovery response, attorney's fees, jurisdictional amount, federal court, Defendants', parties, civil rule, allegations, discovery, threshold, burden of proof, preponderance, ambiguous, responses, binding, courts, cases

**Counsel:** [*1] For Total Quality Logistics, LLC, Plaintiff: Kellie Kulka, Michael A Roberts, LEAD ATTORNEYS, Graydon Head & Ritchey, LLP, Cincinnati, OH; Scott K Jones, LEAD ATTORNEY, Graydon, Head & Ritchey, LLP, Liberty Township, OH.

For Jerry Lee Franklin, CaseStack, Inc., Defendants: Angela Courtwright, Paul L Bittner, LEAD ATTORNEYS, Kristina S. Dahmann, Ice Miller LLP, Columbus, OH.

For CaseStack, Inc., Counter Claimant: Angela Courtwright, Paul L Bittner, LEAD ATTORNEYS, Kristina S. Dahmann, Ice Miller LLP, Columbus, OH.

For Total Quality Logistics, LLC, Counter Defendant: Kellie Kulka, Michael A Roberts, LEAD ATTORNEYS, Graydon Head & Ritchey, LLP, Cincinnati, OH; Scott K Jones, LEAD ATTORNEY, Graydon, Head & Ritchey, LLP, Liberty Township, OH.

**Judges:** DOUGLAS R. COLE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DOUGLAS R. COLE

## Opinion

**OPINION AND ORDER**

This cause is before the Court on Plaintiff Total Quality Logistics, LLC's Motion to Remand to State Court (Doc. 11), following removal of this action from state court on April 10, 2019 (Doc. 1). For the reasons below, the Court **GRANTS** Plaintiff's Motion to the extent that it requests remand to state court, but **DENIES** the motion to the extent that is seeks an award of the associated [*2] attorneys' fees and costs.

**BACKGROUND**

This case originated in an Ohio state court when Total Quality Logistics, LLC ("TQL") filed a complaint against its former employee, Jerry Lee Franklin ("Franklin"), and his new employer, CaseStack, Inc. ("CaseStack" or

collectively with Franklin "Defendants"), on November 2, 2018. (*See* Notice of Removal ("State Ct. R."), Ex. A, Doc. 1-1, #21[1] ). Defendants removed to this Court and TQL has moved to remand.

### A. TQL Sues CaseStack And Franklin In State Court.

The underlying issue is a run-of-the-mill business dispute involving allegations that a former employee violated a noncompete agreement by taking a job with a different employer in the same industry. (*See id.* at #23-30). TQL alleges that Franklin, by leaving his position with TQL for a similar one with CaseStack, violated Section 9 of his Employee Non-Compete, Confidentiality and Non-Solicitation Agreement (the "Agreement"). (*See id.* at #37-43). That Agreement required that Franklin, for one year, would not "directly or indirectly be employed by ... any business that is competitive with TQL" or "participate in any transportation-intermediary business that provides services anywhere in the Continental United **[*3]** States." (*Id.* at #26). The Agreement also aimed to prevent the transmission of TQL's self-proclaimed "Confidential Information" to any one of its many competitors in the "extremely competitive" third-party logistics and freight-shipping industry. (*See id.* at #24-29).

TQL alleges Franklin violated both the Agreement's employment and nondisclosure obligations. TQL complains that when Franklin's employment ended on May 31, 2018, he accepted a similar role with CaseStack, and once employed, that he disclosed "Confidential Information" to his new employer, causing one of TQL's customers to leave for CaseStack. (*See id.* at #29). Moreover, TQL asserts that CaseStack knew about the Agreement and retained Franklin anyway. (*See id.*).

Based on this series of events, TQL brought four claims against Defendants: breach of contract (Count 1) and breach of fiduciary duty (Count 2) claims against Franklin; a misappropriation of trade secrets claim against both Franklin and CaseStack (Count 3); and a tortious interference with contract claim against CaseStack (Count 4). (*See id.* at #30-33). As to the relief it seeks, TQL averred in its state court Complaint that it is requesting "compensatory damages **[*4]** and reasonable attorneys' fees in the maximum cumulative total not to exceed $75,000." (*Id.* at #33).

Prior to removal, TQL moved the state court for a Temporary Restraining Order and Preliminary Injunction (*see id.* at #47-63), and for expedited discovery (*see id.* at #68-69). The parties agreed to the state court granting both of those motions. (*See id.* at #73-75). Franklin subsequently answered the Complaint. (*See id.* at #251-65). CaseStack also answered, but then amended its answer to assert a counterclaim against TQL for tortious interference with a contract or business relationship. (*Id.* at #82-121). The counterclaim alleged that TQL "purposefully and intentionally interfered" with Franklin and CaseStack's relationship. (*Id.* at #119-20). CaseStack also filed for leave to oppose the injunction (*id.* at #123-41), and TQL moved to dismiss the counterclaim (*id.* at #159-69). The state court dismissed CaseStack's counterclaim on March 22, 2019. (*Id.* at #281-88).

Also while in state court, the parties appear to have engaged in at least some paper discovery. (*See, e.g.*, State Ct. R. at #302-25 (TQL's Obj. & Resps. to CaseStack's First Set of Interrogs.); *id.* at #290-300 (TQL's Objs. and Resps. **[*5]** to CaseStack's First Req. for Admis. to Pl.); *id.* at #197-206 (Pl.'s First Set of Interrogs., Reqs. for Docs., & Admis.)). As discussed further below, Defendants claim that it was TQL's discovery responses that first indicated to them that removal to federal court had become a possibility.

### B. CaseStack And Franklin File A Notice Of Removal And TQL Moves For Remand.

---

[1] Refers to PageID Number.

Twenty-seven days after receiving those responses, on April 10, 2019, CaseStack and Franklin removed the state court action to this Court.[2] (*See* Defs.' Notice of Removal ("Notice of Removal"), Doc. 1, #1-10). Defendants attached the state court record, pleadings included, to their Notice of Removal. (*See id.* at Ex. A, Doc. 1-1, #12-288). As the basis for removal, Defendants state that the parties are diverse (Notice of Removal at ¶¶ 2-4, 15, #1-2, 5), and that despite the statement in the Complaint about damages, TQL's responses to several of Defendants' discovery requests indicate that the amount in controversy, especially in light of TQL's request for attorneys' fees, meets the federal jurisdictional threshold (*id.* at ¶¶ 20-22, #5). Defendants say this means the case is removable under 28 U.S.C. § 1441 and 28 U.S.C. § 1446, as federal jurisdiction is proper **[*6]** under 28 U.S.C. § 1332.

On May 10, 2019, TQL filed the instant Motion to Remand. (Mot. of Pl. TQL To Remand ("Mot. to Remand"), Doc. 11, #411-20). TQL argues that Defendants cannot remove this action because they actively participated in the state action for 142 days, meaning they constructively waived their right to removal. (*Id.* at #418-19). Separately, TQL argues that this Court lacks jurisdiction under 28 U.S.C. § 1441 in any event, as Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional threshold. (*See id.* at #413-17). This is so, TQL says, because the Complaint expressly limits the amount TQL seeks to recover to $75,000 or less, and TQL's responses to Defendants' discovery requests do nothing to change that pleading. (*See id.* at #414-17). As TQL contends removal was improper, it also seeks to recover the attorneys' fees and costs it incurred in seeking remand. (*Id.* at #419-20 (citing 28 U.S.C. § 1447)).

In response, Defendants argue that TQL is engaged in "avoidance tactics" to dodge answering the "core issue" of whether it is "seeking over $75,000" or not. (Defs. CaseStack's and Franklin's Resp. to Pl.'s Mot. to Remand, Doc. 12, #438-53). Defendants **[*7]** further argue that removal is supported by "relevant evidence" (the already-provided discovery responses), which have "been accepted as support for removal" by this District and other districts within the Sixth Circuit. (*Id.* at #445). Defendants assert that because TQL's discovery responses explicitly "denied that it is limiting its damages to $75,000," any claim otherwise now is "tortured" and "evasive." (*Id.*).

In reply, TQL reiterates the position it took in the Complaint, that it "seeks a maximum cumulative total not to exceed $75,000" and that its discovery responses do not indicate otherwise. (Reply of TQL in Supp. of Mot. of Pl. TQL to Remand, Doc. 13, #455-62). TQL repeats its belief that removal was untimely, that Defendants waived any right to removal, and that it is entitled to attorneys' fees. (*See id.* at #456-62).

## LEGAL STANDARD

When all defendants agree to remove an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). For original jurisdiction to exist under 28 U.S.C. § 1332(a), the parties must be sufficiently diverse and the amount in controversy must exceed $75,000. Removal jurisdiction is assessed **[*8]** based on the facts as they exist at the time of removal. *See Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004)*. When jurisdiction upon removal is uncertain, federal district courts must strictly construe the removal statutes and resolve all doubts in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999)*. That makes sense as, if the federal court lacks jurisdiction, that makes "any decree in the case void and the continuation of the litigation in federal court futile," *Eastman v. Marine Mechanical Corp., 438 F.3d 544, 549-50 (6th Cir. 2006)* (citation omitted), which serves no one's interests.

## LAW AND ANALYSIS

---

[2] At the time this action was removed, it was transferred from the Dayton Division to the Cincinnati Division and assigned to Judge Black, who referred it to Magistrate Judge Litkovitz. (*See* Order, Doc. 4, #330). The case was subsequently reassigned to the undersigned on December 11, 2019. (*See* Doc. 14, #463). The referral to Magistrate Judge Litkovitz was removed on January 7, 2020. (*See* Jan. 7, 2020 Docket Entry).

**A. This Action Will Be Remanded To State Court Because Defendants Have Not Satisfied Their Burden Of Proof On Showing Jurisdiction**.

"Ordinarily, a plaintiff is considered the master of his complaint." *Heyman v. Lincoln Nat'l Life Ins. Co., 781 F. App'x 463, 469 (6th Cir. 2019)*. As to the amount in controversy, a plaintiff who does not want to try his or her claim in federal court "may resort to the expedient of suing for less than the jurisdictional amount[.]" *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S. Ct. 586, 82 L. Ed. 845 (1938)*. If a plaintiff does so, despite being "justly [] entitled to more, the defendant cannot remove." *Id.*; *Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000)* ("Generally, because the plaintiff is the 'master of the claim,' a claim specifically less than [$75,000] should preclude removal.").

But the removal analysis "becomes more complicated when the plaintiff claims an unspecified amount of damages." *Halsey v. AGCO Corp., 755 F. App'x 524, 526 (6th Cir. 2018)* **[*9]** (citing *Naji v. Lincoln, 665 F. App'x 397, 400 (6th Cir. 2016))*. This complication arises as a matter of course for cases originating in Ohio's state courts (as well as many other States with civil rules similar to Ohio's) because the Ohio Civil Rules of Procedure do not permit plaintiffs to specify a damages amount in their complaints, other than stating whether they are seeking more than $25,000. *See Ohio Civ. R. 8(A)* ("If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleadings but shall not specify in the demand for judgment the amount of the recovery sought ...."). Thus, Ohio plaintiffs cannot easily avail themselves of the option of specifying recovery of less than the jurisdictional amount as a mechanism for blocking removal.

Moreover, even if an Ohio-court plaintiff, in contravention of that civil rule, *were* to state a particular damages amount in the complaint, the Ohio Civil Rules allow the plaintiff ultimately to *recover* more than the amount specified. *See Ohio Civ. R. 54(C)* ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded the relief in the pleadings*. (emphasis added)). A complaint stating, for example, that the plaintiff seeks more than $25,000 but no more than $75,000, does not create a hard and fast cap on what a plaintiff may actually recover under Ohio law.

Given that an Ohio state court complaint cannot specify an enforceable damages amount, the question then becomes how to determine the amount **[*10]** in controversy in a matter removed from an Ohio state court. Fortunately, the removal statute expressly addresses such situations. Consistent with the description above, the removal statute starts from the general proposition that the amount in controversy is "the sum demanded in good faith in the initial pleading." *28 U.S.C. § 1446(c)(2)*. But it then provides a specific exemption to that rule for those States (like Ohio) in which "State practice does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded," *28 U.S.C. § 1446(c)(2)(A)(ii)*.

In such cases, "the notice of removal may assert the amount in controversy." *28 U.S.C. § 1446(c)(2)(A)*; *see also Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 84, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014)* ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."). This assertion "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and "need not contain evidentiary submissions." *Dart Cherokee, 574 U.S. at 85, 89*; *see also Heyman, 781 F. App'x at 468*. The only constraint is the typical good faith standard that applies to pleadings generally: "By design, *§ 1446(a)* tracks the general pleading requirement stated in *Rule 8(a) of the Federal Rules of Civil Procedure*." *Dart Cherokee, 574 U.S. at 87*. There is no requirement that "[a] removing defendant ... prove up the jurisdictional allegations of a notice **[*11]** of removal by submitting evidence with the notice." *Evans v. Wells Fargo Bank, N.A., No. 15-2725, 2016 U.S. Dist. LEXIS 40991, 2016 WL 1248972, at *3 (W.D. Tenn. Mar. 29, 2016)*. In short, in states like Ohio, where a plaintiff may not allege a specific, binding damage amount in the complaint, a notice of removal may make its own assertion of the amount in controversy, so long as that assertion is plausible and made in good faith.

A plaintiff faced with such a removal notice has three possible responses. The first is to do nothing, thereby leaving the defendant's assertion as to the amount in controversy unchallenged. *See Brown v. AmSouth Bank, No. 15-5468, 2016 U.S. App. LEXIS 15309 2016 WL 4271874, at \*3 (6th Cir. Mar. 23, 2016)* ("[T]he notice of removal satisfied the amount-in-controversy requirement by stating that the amount in controversy exceeded [$]75,000" and "[n]either the [plaintiffs] nor the magistrate judge questioned the amount in controversy asserted in the defendants' notice of removal."). In such cases, the Court has an independent obligation to assure itself of jurisdiction, *see Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)* ("Moreover, courts, including [the Supreme Court], have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."), but the Court can generally rely on the defendant's statement in the notice of removal regarding the amount in controversy, subject **[\*12]** only to a plausibility test. *Dart Cherokee, 574 U.S. at 87-88* (analogizing to a plaintiff's damages assertion in a claim and noting "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court").

Alternatively, a plaintiff can respond to the removal by stating in a binding fashion, for the first time (as State rules do not allow binding damages allegations in the category of cases under consideration), that his or her damages do not exceed the jurisdictional threshold. If a plaintiff correctly implements this approach, the court treats the stipulation as a clarification of damages, not a reduction. *See Heyman, 781 F. App'x at 469-70* (citing *Egan v. Premier Scales & Sys., 237 F. Supp. 2d 774, 778 (W.D. Ky. 2002))*. The difference between a clarification and a reduction is important because, as noted above, jurisdiction is measured at the time of the removal. Thus, if the plaintiff had been seeking more than the jurisdictional amount in state court, but reduced that demand after the matter was removed to federal court, that would not prevent federal jurisdiction. Conversely though, if the plaintiff were merely to *clarify* that, all along, he or she was irrevocably and unequivocally disclaiming any **[\*13]** recovery in excess of the jurisdictional amount, that would prevent federal jurisdiction from attaching. So, a clarification in the form of a stipulation works, but only "unequivocal statements and stipulations limiting damages" will suffice. *Total Quality Logistics, LLC v. Alliance Shippers, Inc., No. 1:19-cv-1052, 2020 U.S. Dist. LEXIS 104360, 2020 WL 3166672, at \*2 (S.D. Ohio June 15, 2020)* (Black, J.) (discussing *Heyman* and damages stipulations).

The third approach a plaintiff could take is to challenge, through a motion to remand, the defendant's damages assertion in the notice of removal. Both parties then submit their respective evidence. *See 28 U.S.C. § 1446(c)(2)(B)*. And "[i]n this situation, [courts] place the burden on the party seeking to remove the case to federal court 'to show by a preponderance of the evidence that the amount in controversy requirement has been met.'" *Halsey, 755 F. App'x at 526-27* (quoting *Hayes, 266 F.3d at 572*). The Sixth Circuit has noted that "this is not a daunting burden," and it does not "require[] the defendants to research, state[,] and prove the plaintiff's claim for damages." *Id. at 527* (quotation omitted). "Instead, the defendants need only show that it is more likely than not that the plaintiff's claims exceed $75,000." *Id.* (cleaned up).

At the same time, "[w]hile preponderance of the evidence is not **[\*14]** a daunting burden, the standard still requires evidence[.]" *Warren v. Sheba Logistics, LLC, No. 1:15-cv-148, 2016 U.S. Dist. LEXIS 32097, 2016 WL 1057322, at \*2 (W.D. Ky. Mar. 14, 2016)*. That evidence can come from a variety of sources. "In some cases, a fair reading of the complaint can establish the amount in controversy—even when that complaint seeks unspecified damages." *Crimaldi v. Pitt Ohio Express, LLC, 185 F. Supp. 3d 1004, 1008 (N.D. Ohio 2016)* (citation and quotation omitted). But for a fair reading of the complaint to suffice, "the language must contain 'clear allegations ... that the case involved a sum well in excess of the $75,000 minimum.'" *Id.* (quoting *Holt v. HMS Host USA, No. 3:09-cv-344, 2009 U.S. Dist. LEXIS 52948, 2009 WL 1794748, at \*2 (M.D. Tenn. June 18, 2009))*.

In other instances, specifically when it is unclear from the face of the complaint whether the amount in controversy is satisfied, pre-removal discovery proves useful. "Such evidence of the amount in controversy is not hard to obtain" and can include, for example, pre-removal interrogatories, requests for admission, or other discovery responses. *See Sanders v. Print Fulfillment Servs., LLC, No. 3:17-cv-245, 2017 U.S. Dist. LEXIS 92986, 2017 WL 2624550, at \*3 (W.D. Ky. June 16, 2017)* (cleaned up) (citing *King v. Household Fin. Corp. II, 593 F. Supp. 2d 958, 960 (E.D. Ky. 2009))*. "When the issue [of amount in controversy] is disputed, the parties can take discovery and submit

evidence on the amount in controversy." *Heartland of Portsmouth, OH, LLC v. McHugh Fuller Law Grp., PLLC, No. 1:15-cv-007, 2015 U.S. Dist. LEXIS 19780, 2015 WL 728311, at \*1 (S.D. Ohio Feb. 19, 2015)*. **[\*15]**

The Ohio Civil Rules also afford a potential avenue to help a defendant in a situation like this. *Rule 8(A)* provides that "[a]t any time after the pleading is filed and served, any party from whom monetary recovery is sought may request in writing that the party seeking recovery provide the requesting party a written statement of the amount of recovery sought." *Ohio Civ. R. 8(A).* If the party seeking monetary recovery does not respond, the requesting party can file a motion and the court "shall require the party to respond to that request." *Id.*

But, whatever the source of evidence, "[m]ere speculation is insufficient," and the party seeking removal must adduce "competent proof that the amount in controversy requirement is satisfied." *Terry v. Phelps KY Opco, LLC, No. 7:20-cv-23, 2020 U.S. Dist. LEXIS 84850, 2020 WL 2500306, at \*2 (E.D. Ky. Apr. 20, 2020)* (citations omitted).

Applying the above framework here, the Court starts by noting that TQL did not specify the particular amount of damages it was seeking in its Complaint (nor even, as Ohio rules require, identify whether TQL was seeking more than $25,000). Rather, TQL merely stated that it was seeking not more than $75,000. (*See* State Ct. R. at #34).

Given that the damages figure in the Complaint is not an enforceable **[\*16]** damages limitation under Ohio civil rules, Defendants availed themselves of their right to specify in the Notice of Removal that the jurisdictional amount is met. They averred that "TQL's sworn answers to CaseStack's First Requests for Admission and First Set of Interrogatories make it clear that the amount in controversy exceeds $75,000[.]" (Notice of Removal at #5). Defendants also go on to explain the basis for that allegation, noting that in the discovery responses, TQL "*denied* that it was capping [its] damages at $75,000," that TQL "seeks compensatory damages and attorneys' fees[,]" and that because of the substantial nature of the state court litigation, those fees may already surpass $75,000. (*Id.* at #6-7). But then, in addition to merely asserting the amount in controversy, Defendants went beyond what is required of them and attached the evidence (the discovery responses) that they say support their assertion.[3]

Faced with this notice of removal, TQL had the three basic options identified above—do nothing (leaving it to the Court to assess plausibility), provide a proper stipulation limiting damages, or dispute that Defendants' assertion regarding the jurisdictional amount was **[\*17]** correct. TQL chose the last option, and it moved to remand.

With the jurisdictional amount issue thus joined, both TQL and Defendants were required to submit evidence regarding damages so the Court could determine whether Defendants had shown, by a preponderance of the evidence, that subject matter jurisdiction existed under *§ 1332(a)* at the time of removal. Unfortunately, neither party has overwhelmed the Court with its "evidence" on this issue. The "evidence" that TQL submitted and addressed in its Motion to Remand as to the jurisdictional amount essentially consists of a discussion of its state court Complaint and the (non-enforceable) language there indicating that TQL is seeking less than $75,000 (*see id.* at #414-17), with the remainder of its motion attacking the sufficiency of Defendants' Notice on other fronts (*see id.* at #417-19). Defendants' "evidence" regarding that issue, on the other hand, consists of the same discovery responses they attached to their Notice. (*See* Defs.' Resp. at #445-47). They offer nothing more.

As it is Defendants' burden to plausibly establish jurisdiction by a preponderance, the Court starts with their evidence. Of course, discovery responses can be useful, **[\*18]** depending on their content, in determining whether the amount in controversy is met. For example, an admission by a plaintiff that he or she is seeking more than $75,000 presumably would lend substantial assistance to meeting the defendant's burden. Less so, but still relevant, would be a plaintiff's denial of a request for admission asking the plaintiff to admit he or she will not seek more than $75,000, exclusive of costs and fees, at some point in the future. *See, e.g., Gentry v. CF Ky. Owner, LLC, No. 5:18-cv-528, 2019 U.S. Dist. LEXIS 93205, 2019 WL 2357367, at \*4 (E.D. Ky. June 4, 2020)*.[4]

---

[3] They likely attached these discovery responses for another reason as well, which is discussed below.

[4] *Gentry* also draws a distinction between the discovery responses in that case, objections that neither admitted nor denied anything, and those in a case that Defendants cite for the proposition that discovery responses alone are sufficient to support

But here, in the responses to the requests for admission and interrogatories on which Defendants rely in support of removal, all TQL did is object and refer Defendants to TQL's state court complaint. (Notice of Removal at #2-4 (restating TQL's relevant discovery responses)). TQL did not admit, nor did it deny, that it would not seek more than $75,000 in damages. (*See id.*). Rather, the discovery responses here are, at best, ambiguous. That makes it difficult for Defendants to clear the preponderance-of-the-evidence hurdle on the jurisdictional amount based on those discovery responses alone.

In sum, on the one hand, there is the Complaint, which TQL asserts [*19] is evidence that it is not seeking damages in excess of the jurisdictional threshold—but which does not bind TQL in that regard under Ohio law. On the other hand are discovery responses that are at best ambiguous. Both are inconclusive, which is a problem for the party—here Defendants—who bears the burden of proof.

The Court could perhaps undertake its own analysis of the claims set forth in the Complaint to determine whether the amount in controversy is plausibly established. But that approach would run headlong into another problem. When the basis for removal is the complaint itself, removal must occur "within 30 days after the receipt by the defendant" if served, or "within 30 days after the service of summons" if service is not required, whichever is shorter. 28 U.S.C. § 1446(b). Therefore, if the determination that the amount at issue is over the jurisdictional threshold arises solely from an analysis of the state court Complaint, Defendants have a timing problem—they should have removed the case long before they did. In other words, if the Complaint, rather than the ambiguous discovery responses, is the document that justifies removal, the time to remove this action had come and gone by the time [*20] they sought such removal, which is perhaps why the Defendants tried to tie removal to those discovery responses from the outset. But as already noted, those discovery responses are ambiguous and do little to aid the removal analysis.

None of this is to say that removal was necessarily impossible here. Another recent case involving TQL in this District shows how a defendant seeking to remove might go about meeting its burden of proof. *See Alliance Shippers, 2020 U.S. Dist. LEXIS 104360, 2020 WL 3166672, at \*3-4*. For example, applying the lessons from *Alliance Shippers* here, Defendants might have argued that one of TQL's claims is for tortious interference related to the noncompete Agreement, and that the quantum of damages for such claims under Ohio law is measured by reference to "the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *2020 U.S. Dist. LEXIS 104360, [WL] at \*4* (quoting *Transtar Indus., LLC v. Lester, No. 1:19-cv-1230, 2019 U.S. Dist. LEXIS 96146, 2019 WL 2410855, at \*2 (N.D. Ohio June 7, 2019))*. Building on that, Defendants perhaps could have provided, by affidavit, the revenues associated with the allegedly purloined customer here, asserting that those revenues provide one estimate of the amount that TQL might seek to recover on that claim. In doing so, of course, Defendants would [*21] not be conceding that the tortious interference claim is valid, or even that this is an appropriate measure of damages, but rather merely that TQL might reasonably be expected to claim that was the case.

Alternatively, where, as here, a contract provides for the recovery of attorneys' fees as an element of damages, those fees count toward the jurisdictional amount. *See id.* (citing *Heyman, 781 F. App'x at 473*). Defendants perhaps could have provided, by affidavit, an accounting of their own attorneys' fees incurred to date, or a good-faith estimate of their own likely fees for this case, and argued that this would serve as an acceptable estimate of TQL's likely attorneys' fees, as well.

---

removal. *See Miller v. Malik. No. Civ. 11-74, 2011 U.S. Dist. LEXIS 79946, 2011 WL 2968428, at \*2 (E.D. Ky. July 20, 2011)* (Thapar, J.) (viewing discovery responses that damages exceeded the jurisdictional threshold as "at least some evidence ... that damages [we]re more than that amount" when coupled with other evidence, can satisfy the amount in controversy). Refusing to deny that damages exceeded the requisite amount, when given the opportunity, "while not dispositive of the jurisdictional inquiry," can constitute some evidence that the minimum might be met. *Miller, 2011 U.S. Dist. LEXIS 79946, 2011 WL 2968428at \*2*. But without something else proffered by a defendant seeking to substantiate removal, discovery requests *alone* that merely object and obfuscate are insufficient.

Whether that all would have added up to $75,000 is perhaps an open question. But the point is merely that Defendants have provided no such evidence here, and they bear the burden of proof. "Where uncertainty clouds the propriety of removal, courts must strictly construe removal statutes and resolve all doubts as to jurisdiction in favor of remand." *Gentry, 2019 U.S. Dist. LEXIS 93205, 2019 WL 2357367, at \*2*; *Brierly, 184 F.3d at 534* ("In interpreting the statutory language [of § 1446], we are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches **[\*22]** on a state court's jurisdiction" and that "any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts."). As Defendants have not carried their burden, jurisdiction is questionable, and remand is thus the only proper course.

**B. TQL's Request For Attorneys' Fees Is Denied**.

There is one loose end to tie up—TQL's request for attorneys' fees, which the Court denies. Absent unreasonable circumstances, the question of attorneys' fees under *28 U.S.C. § 1447(c)* turns on whether "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005)*. "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.* "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant departure from the rule in a given case." *Id.*

A district court departing from the rule and deciding to award fees "should be faithful to the purposes" of *§ 1447(c)*, which are to balance deterring vexatious removals without undermining the right to remove a case as a general matter. *Id.* (citation and quotation omitted); *see, e.g., Powers v. Cottrell, Inc., 728 F.3d 509, 515-17 (6th Cir. 2013)* (holding defendant lacked an objectively reasonable basis for removal and finding fees appropriate because removal was "clearly **[\*23]** at odds" with binding precedent).

Here, the Court cannot say that Defendants were "objectively unreasonable" in seeking removal. TQL admittedly has been cagey in its approach to articulating a damages figure, and the Court can understand why Defendants concluded that the discovery responses were enough to trigger removal. The Court disagrees that removal was proper for the reasons set forth above, but it was not an easy enough call to warrant the label "objectively unreasonable." Accordingly, the Court declines to award attorneys' fees.

**CONCLUSION**

Both parties failed to accomplish what they set out to do. TQL did not enforceably limit its damages request in a way that would preclude federal jurisdiction outright. But Defendants did not meet their evidentiary burden to plausibly establish the requisite amount in controversy. Given the burden of proof on removal, coupled with the settled principle that doubts as to jurisdiction should be construed in favor of remand, the Court determines remand is proper, and so will return this case to the state court from which it came.

Accordingly, the Court **GRANTS** Plaintiff's Motion (Doc. 11) as to remand and **REMANDS** this action to the Court of Common **[\*24]** Pleas for Clermont County, Ohio. The Court, however, **DENIES** the Motion as to attorneys' fees and costs related to removal. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED**.

August 27, 2020

**DATE**

/s/ Douglas R. Cole

**DOUGLAS R. COLE**

2020 U.S. Dist. LEXIS 155757, *24

**UNITED STATES DISTRICT JUDGE**

**End of Document**