⚠️ Last updated  January 03, 2025   11:35:40 am GMT

# *Heyman v. Lincoln Nat'l Life Ins. Co.*

United States Court of Appeals for the Sixth Circuit

July 18, 2019, Filed

File Name: 19a0370n.06

No. 18-5622

**Reporter**

781 Fed. Appx. 463 *; 2019 U.S. App. LEXIS 21254 **; 2019 FED App. 0370N (6th Cir.); 2019 WL 3229347

JAMES HEYMAN, Plaintiff-Appellant, v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellee.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** Rehearing, en banc, denied by *Heyman v. Lincoln Nat'l Life Ins. Co., 2019 U.S. App. LEXIS 25767 (6th Cir., Aug. 26, 2019)*

**Prior History: [**1]** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY.

*Heyman v. Lincoln Nat'l Life Ins. Co., 2017 U.S. Dist. LEXIS 149213 (W.D. Ky., Apr. 27, 2017)*

## Core Terms

district court, amount in controversy, damages, punitive damages, attorney's fees, federal court, cases, lawsuit, compensatory damages, first-to-file, benefits, state court, removal, ratio, parties, injunctive relief, calculation, diversity jurisdiction, insurance company, punitive-damages, disability, pleadings, exceeded, costs, threshold, insurer, monthly, preponderance of evidence, federal jurisdiction, illusory

## LexisNexis® Headnotes

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Citizenship

*HN1*[⬇️] **Diversity Jurisdiction, Amount in Controversy**

District courts may exercise diversity jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. *28 U.S.C.S. § 1332(a)(1)*.

Civil Procedure > Preliminary Considerations > Removal > Elements for Removal

Civil Procedure > Preliminary Considerations > Removal > Postremoval Remands

*HN2*[🔽] **Removal, Elements for Removal**

The party seeking removal bears the burden of establishing that the district court would have had original jurisdiction over the matter had the plaintiff chosen to file the case in federal court in the first instance. The question of jurisdiction is determined at the time of removal, and application of the removal statute should be strictly construed and all doubts resolved in favor of remand.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Removal > Postremoval Remands > Motions for Remand

*HN3*[🔽] **Standards of Review, De Novo Review**

The appellate court reviews de novo a district court's denial of a motion to remand for lack of subject matter jurisdiction.

Civil Procedure > ... > Diversity Jurisdiction > Amount in Controversy > Determination

*HN4*[🔽] **Amount in Controversy, Determination**

Ordinarily, a plaintiff is considered the master of his complaint. Thus, in diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy. Thus, a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > ... > Removal > Specific Cases Removed > Diversity of Citizenship

*HN5*[🔽] **Diversity Jurisdiction, Amount in Controversy**

Federal courts recognizing the pleading limitations placed upon Kentucky plaintiffs have held that, after removal to federal court, a plaintiff may stipulate to a claim less than the federal jurisdictional amount where a plaintiff provides specific information about the amount in controversy for the first time. *28 U.S.C.S. § 1446(c)(2)* provides that if the State practice does not permit demand for a specific sum removal of the action is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in *28 U.S.C.S. § 1332(a)*. In such a situation, the stipulation by the plaintiff is not deemed a post-removal change in the prayer for relief but merely a clarification of the plaintiff's intent. Only an unequivocal statement and stipulation limiting damages will serve this purpose, however. To merely say that one will not accept money in excess of a certain amount limits neither the judgment nor the demand. Indeed, *Ky. R. Civ. P. 54.03* provides that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

*HN6*[⬇️] **Diversity Jurisdiction, Amount in Controversy**

Under Kentucky law, a statement in a complaint declaring that the plaintiff is seeking less than $75,000 is insufficient to affirmatively establish that the amount in controversy requirement for diversity jurisdiction cannot be met.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > ... > Removal > Specific Cases Removed > Diversity of Citizenship

*HN7*[⬇️] **Diversity Jurisdiction, Amount in Controversy**

The burden of proof remains on the removing party to establish by a preponderance of the evidence that *28 U.S.C.S. § 1332*'s amount-in-controversy requirement was met. The removing party is required to show that it was more likely than not that the plaintiff was entitled to a recovery of at least $75,000.01 should he be successful in proving his legal claims. Such a preponderance-of-the-evidence test, however, does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

*HN8*[⬇️] **Diversity Jurisdiction, Amount in Controversy**

When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered unless it is apparent to a legal certainty that such cannot be recovered.

Insurance Law > Remedies > Damages > Punitive Damages

*HN9*[⬇️] **Damages, Punitive Damages**

A cause of action against an insurer for bad-faith violations of the Kentucky's Unfair Claims Settlement Practices Act entitles the claimant to an instruction permitting an award of punitive damages.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > ... > Removal > Specific Cases Removed > Diversity of Citizenship

*HN10*[⬇️] **Diversity Jurisdiction, Amount in Controversy**

Under the preponderance-of-the-evidence standard adopted by the court for use in cases in which damages are unspecified, a defendant seeking to remove a case to federal court need not research, state and prove the plaintiff's claim for damages. The precise award in any case must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff, facts that are unavailable to the court at this time. Awards exceeding a single-digit ratio between punitive and compensatory damages rarely will comport with principles of

due process. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. Conversely, where the compensatory damage award is relatively small, a higher ratio might be acceptable.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Fees & Expenses

*HN11*[⬇] **Diversity Jurisdiction, Amount in Controversy**

As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees.

Insurance Law > Remedies > Costs & Attorney Fees > Failure to Pay Claims

*HN12*[⬇] **Costs & Attorney Fees, Failure to Pay Claims**

Where a plaintiff asserts that his claims under the disability insurance policy were not paid in a timely manner, *Ky. Rev. Stat. Ann. § 304.12-235(3)* explicitly provides that the plaintiff shall be entitled to be reimbursed for his reasonable attorneys' fees incurred.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Insurance Law > Remedies > Damages > Consequential Damages

*HN13*[⬇] **Diversity Jurisdiction, Amount in Controversy**

Where the validity of an insurance policy containing disability benefit provisions is involved in a diversity action in a federal district court, future potential benefits may be considered in computing the requisite jurisdictional amount. In contrast, future potential benefits may not be taken into consideration in the computation of the amount in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy.

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Amount in Controversy

Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > Citizenship

*HN14*[⬇] **Diversity Jurisdiction, Amount in Controversy**

The provisions of *28 U.S.C.S. § 1332(a)* state that the federal district courts have jurisdiction over matters between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Judgments > Pretrial Judgments > Judgment on Pleadings

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

### *HN15*[⬇] **Standards of Review, De Novo Review**

The appellate court reviews a district court's judgment on the pleadings using the same de novo standard of review employed for a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*.

Civil Procedure > Judgments > Pretrial Judgments > Judgment on Pleadings

### *HN16*[⬇] **Pretrial Judgments, Judgment on Pleadings**

In assessing the pleadings, the court takes as true all well-pleaded material allegations. A motion for judgment on the pleadings is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Governments > Courts > Judicial Comity

### *HN17*[⬇] **Standards of Review, Abuse of Discretion**

The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts. The appellate court reviews the district court's application of the first-to-file rule for abuse of discretion.

Governments > Courts > Judicial Comity

### *HN18*[⬇] **Courts, Judicial Comity**

Because the first-to-file rule comes into play when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. In applying the first-to-file rule, the court generally evaluates: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. Even when those factors call for application of the rule, however, district courts have the discretion to dispense with the first-to-file rule where equity so demands.

Governments > Courts > Judicial Comity

### *HN19*[⬇] **Courts, Judicial Comity**

In examining the chronology of events for purposes of the first-to-file rule, the appropriate dates to consider are when the relevant complaints are filed.

Governments > Courts > Judicial Comity

*HN20*[⬇] **Courts, Judicial Comity**

The similarity-of-the-parties factor of the first-to-file rule does not require that the parties in the competing lawsuits be identical, however. Rather, the first-to-file rule applies when the parties in the two actions substantially overlap.

Governments > Courts > Judicial Comity

*HN21*[⬇] **Courts, Judicial Comity**

The first-to-file rule analysis is not affected by a representation that a plaintiff would opt out of the class if it is certified. That is certainly a plaintiff's right if and when that day comes. But allowing plaintiffs to use this representation to prevent the first-to-file rule from being applied in the first instance would undercut the purposes of the first-to-file rule: parties, not courts, would determine when the rule could be applied, and could force resource-draining duplicative class actions to proceed simultaneously. This would unduly burden the courts, and could be used as a vexatious litigation tactic. While the opt-out right may allow for (and perhaps anticipate) duplicative litigation, it should not prospectively prohibit courts' efforts to conserve resources by applying the first-to-file rule.

Governments > Courts > Judicial Comity

*HN22*[⬇] **Courts, Judicial Comity**

The issues in the two proceedings need not be identical for purposes of the first-to-file rule. Rather, they need only to substantially overlap, be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other.

Governments > Courts > Judicial Comity

*HN23*[⬇] **Courts, Judicial Comity**

Even where the three Baatz factors are satisfied, district courts still have discretion to decline to apply the first-to-file rule. The first-to-file rule is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. Nevertheless, deviations from the rule should be the exception, rather than the norm.

Governments > Courts > Judicial Comity

*HN24*[⬇] **Courts, Judicial Comity**

Even though dismissal of a case is an option in certain situations, a district court can abuse its discretion by dismissing a case under the first-to-file rule when doing so could adversely affect a party's interests.

**Counsel:** For JAMES HEYMAN, Plaintiff - Appellant: Michael D. Grabhorn, Andrew Michael Grabhorn, Grabhorn Law Office, Louisville, KY.

For LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant - Appellee, John M. Scannapieco, Baker Donelson, Nashville, TN; Christopher G. Morris, Baker Donelson, Baton Rouge, LA.

**Judges:** BEFORE: DAUGHTREY, COOK, and GRIFFIN, Circuit Judges. GRIFFIN, Circuit Judge, dissenting.

**Opinion by:** MARTHA CRAIG DAUGHTREY

# Opinion

 **[*466]** MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff James Heyman appeals two orders of the district court, one that denied his motion to remand this matter to the Kentucky state court from which it was removed and a second that granted judgment on the pleadings to the defendant, Lincoln National Life Insurance Company. Heyman argues that the district court erred in concluding that the amount in controversy in the case exceeded $75,000. He thus insists that the district court did not have subject matter jurisdiction over this lawsuit. He also contends that, even if the district court properly exercised diversity jurisdiction in this matter, that court erroneously applied a first-to-file rule **[**2]** to justify granting judgment on the pleadings to Lincoln National.

We conclude that the district court appropriately determined both that it had jurisdiction over this matter and that application of the first-to-file rule was proper. However, the district court abused its discretion, in dismissing Heyman's lawsuit—even though that dismissal was without prejudice—rather than holding the matter in abeyance pending resolution of an earlier-filed federal lawsuit with overlapping parties and issues. We thus affirm the judgment of the district court in part, reverse the order of dismissal, and remand the matter for such further actions as are appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

James Heyman formerly was employed by the Louisville-Jefferson County Metropolitan Government and thus was insured under a group long-term-disability-insurance policy issued by Lincoln National Life Insurance Company. When Heyman became disabled and unable to work, Lincoln National began paying benefits to him, beginning on November 9, 2011, in the amount of $1,222.87 per month. Effective January 1, 2012, the Social Security Administration, having found Heyman to be disabled according to Social Security standards, **[**3]** also awarded him monthly Social Security Disability Insurance (SSDI) benefits of $1,977.00.

In August 2013, Lincoln National learned that Heyman had been receiving SSDI benefits—as well as benefits from the insurance company—for, at that point, 20 months. Pursuant to the "Other Income Benefits" provisions of Lincoln National's policy, such Social Security disability benefits were required to "be offset, in determining the amount of the Insured Employee's **[*467]** Monthly Benefit" if "th[o]se amounts . . . result[ed] from the same Disability for which a Monthly Benefit is payable under [the Lincoln National] Policy." Because the amount of the monthly SSDI benefits exceeded the amount of the long-term-disability benefits provided under the Lincoln National policy, the insurance company asserted that Heyman should not have been receiving the monthly $1,222.87 payments, but rather only "the minimum benefit amount under the Policy in the amount of $122.29" for those 20 months. According to a Lincoln National official, "[t]his resulted in a benefit overpayment made to Mr. Heyman by Lincoln National in the amount of $12,979.38."

Upon discovering the overpayments, Lincoln National requested that Heyman **[**4]** reimburse the insurance company in the amount of those overpayments. When Heyman failed to do so, Lincoln National, in accordance with expressed policy provisions, began withholding even the minimum monthly payments of $122.29—beginning in September 2015—in an attempt to recoup its alleged losses.

In response, Heyman filed suit on December 22, 2015, in Jefferson County (Kentucky) Circuit Court. In his complaint, he claimed that Lincoln National's actions in reducing and then withholding disability benefits constituted: a breach of the company's contract with Heyman; a breach of the company's "duty to act in good faith and fair dealing"; a violation of *Kentucky Revised Statutes § 304.12-230 (Kentucky's Unfair Claims Settlement Practices Act (UCSPA)*); a violation of *Kentucky Revised Statutes § 304.14-375*, which "prohibits an insurer from seeking reimbursement of health insurance overpayments 'more than two (2) years after the claim was filed'"; a violation of *Kentucky Revised Statutes § 304.12-235*, which prohibits delays in payment of insurance claims; and a violation of *Kentucky Revised Statutes § 304.12-010*, which prohibits unfair or deceptive acts or practices by insurance companies. In his prayer for relief, Heyman sought "all available damages including an amount of money sufficient to satisfy his claims (not to exceed $75,000) **[**5]** inclusive of pre- and post-judgment interest, attorneys' fees and costs, including the cost of any experts, and any other and further relief as the Court deems appropriate."

Upon receipt of Heyman's complaint, Lincoln National filed a timely notice of removal to federal district court. In that filing, Lincoln National noted that Heyman is a citizen and resident of Kentucky and that the insurance company was organized pursuant to the laws of Indiana and had its principal place of business in Pennsylvania. Lincoln National further alleged that, despite Heyman's efforts to limit his damages to $75,000, the amount in controversy actually far exceeded the amount necessary to invoke the district court's diversity jurisdiction. *See 28 U.S.C. § 1332(a)*. Specifically, Lincoln National claimed that Heyman's compensatory damages amounted to $31,305.40, that damages tied to declaratory and injunctive relief totaled another $303,271.76, and that Heyman could be entitled to additional punitive damages, attorneys' fees, and interest.

Disputing the insurer's calculation of possible damages, Heyman filed a motion to remand the matter to the Jefferson County court. Lincoln National countered by filing a motion for judgment **[**6]** on the pleadings, leading Heyman to reemphasize his belief that the district court lacked jurisdiction over the matter by filing the following stipulation:

> I assert in the above cause of action, and any subsequent state court action(s), that I will not seek or accept damages in excess of $75,00.00, inclusive of statutory pre- and post-judgment interest, attorneys' **[*468]** fees and costs (including the cost of any experts), punitive damages, the fair value of any injunctive relief, and any other and further relief the Court deems appropriate. This stipulation does not limit my ability to seek costs and interest on a judgment as defined in *28 U.S.C. § 1332(a)*.

In light of that stipulation, the district court ordered Lincoln National either to indicate its acquiescence to the remand request or to file "a surreply addressing the stipulation."

Lincoln National chose to file a surreply in opposition to Heyman's motion for remand. In that surreply, the insurer argued that Heyman's stipulation could not divest the district court of jurisdiction because that post-removal stipulation was not the plaintiff's "first expression of damages" and thus was ineffective in limiting the amount in controversy in the suit. Furthermore, **[**7]** Lincoln National asserted that Heyman's complaint also seeks injunctive relief and "the value of injunctive relief cannot be limited through a stipulation."

The district court agreed with Lincoln National's argument and ruled that Heyman's stipulation was "not the 'first expression' of the damages he seeks" and "thus cannot be considered 'a clarification rather than a reduction of the amount in controversy.'" *Heyman v. Lincoln Nat'l Life Ins. Co., No. 3:16-cv-37-DJH-DW, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at *2 (W.D. Ky. Apr. 27, 2017)* (citation omitted). The district court thus concluded that the amount-in-controversy provision of *28 U.S.C. § 1332(a)* had been met and denied Heyman's motion to remand. *2017 U.S. Dist. LEXIS 149213, [WL] at *3-4*.

Satisfied that it could exercise jurisdiction over the dispute, the district court turned its attention to Lincoln National's motion for judgment on the pleadings. The district court noted that Heyman's suit mirrored that filed on behalf of another plaintiff in a class action in Indiana federal court. Because the Indiana federal court suit predated Heyman's Kentucky federal court action, and because the parties and issues in the two cases were similar, the district court

invoked a first-to-file rule, granted the insurance company's motion, and dismissed Heyman's case, albeit **[\*\*8]** without prejudice. From those district court rulings, Heyman now appeals.

## DISCUSSION

### Amount in Controversy

*HN1*[↑] District courts may exercise diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." *28 U.S.C. § 1332(a)(1)*. Because Lincoln National believed that Heyman's lawsuit filed in Kentucky state court met those criteria, it sought removal of the action to federal district court pursuant to the provisions of *28 U.S.C. § 1441*. As *HN2*[↑] the party seeking removal, Lincoln National bore the burden of establishing that the district court would have had original jurisdiction over the matter had Heyman chosen to file the case in federal court in the first instance. *Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006)*. The question of jurisdiction "is determined at the time of removal," *Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007)*, and application of "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman, 438 F.3d at 550* (quoting *Brown v. Francis, 75 F.3d 860, 864-65, 33 V.I. 385 (3d Cir. 1996))*.

Heyman concedes that the parties to this action are diverse, but he insists that the prayer for relief in his complaint that stated that he sought no more than $75,000 in damages means that *28 U.S.C. § 1332(a)*'s **[\*469]** amount-in-controversy requirement was not met. He thus argues **[\*\*9]** that the district court erred in denying the motion to remand and in concluding that it had subject matter jurisdiction over Heyman's claims against Lincoln National. *HN3*[↑] We review *de novo* a district court's denial of a motion to remand for lack of subject matter jurisdiction. *Music v. Arrowood Indem. Co., 632 F.3d 284, 286 (6th Cir. 2011)*.

### Attempt to Limit Damages

*HN4*[↑] Ordinarily, a plaintiff is considered the master of his complaint. *See, e.g.*, *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC, 912 F.3d 316, 331 (6th Cir. 2018)*. Thus, "[i]n diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy." *Rosen v. Chrysler Corp., 205 F.3d 918, 920-21 (6th Cir. 2000)* (citing *Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938))*. Thus, "a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 872 (6th Cir. 2000)*.

For each of the common-law and statutory violations that Heyman alleged in his complaint, he sought "all compensatory, equitable, declaratory, injunctive, and exemplary relief against Lincoln in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and such other relief as is just and appropriate." Even so, as discussed previously, he attempted in that complaint to foreclose removal to federal district court by limiting the relief he sought as follows:

> Mr. Heyman requests the Court **[\*\*10]** find Lincoln liable as to each claim asserted herein and award all available damages including an amount of money sufficient to satisfy his claims (not to exceed $75,000) inclusive of pre- and post-judgment interest, attorneys' fees and costs, including the cost of any experts, and any other and further relief as the Court deems appropriate.

In rejecting Heyman's argument that this language in the complaint's prayer for relief established that Heyman was seeking less than $75,000 in his lawsuit, the district court referenced the pleading limitations contained in *Kentucky Rule of Civil Procedure 8.01*. That rule requires that all pleadings setting forth a claim for relief contain "a short and

plain statement of the claim showing that the pleader is entitled to relief," but that the pleading "not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court." *Ky. R. Civ. P. 8.01(1)(a)* and *(2)*. Thus, Heyman's attempt to limit his monetary recovery through reference to a damages cap was improper under Kentucky rules and did not create the barrier to the federal court's jurisdiction that Heyman envisioned.

Nevertheless, **[**11]** *HN5*[↑] federal courts recognizing the pleading limitations placed upon Kentucky plaintiffs have held that, *after removal to federal court*, "[a] plaintiff may stipulate to a claim less than the federal jurisdictional amount 'where a plaintiff provides specific information about the amount in controversy *for the first time*.'" *Shupe v. Asplundh Tree Expert Co., 566 F. App'x 476, 481 (6th Cir. 2014)* (emphasis added) (quoting *Egan v. Premier Scales & Sys., 237 F. Supp.2d 774, 778 (W.D. Ky. 2002))*. *See also 28 U.S.C. § 1446(c)(2)* (If "the State practice . . . does not permit demand for a specific sum . . . removal of the action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in *section 1332(a)*."). In such a situation, the stipulation **[*470]** by the plaintiff is not deemed a post-removal change in the prayer for relief but merely a *clarification* of the plaintiff's intent. *Egan, 237 F. Supp.2d at 778*. "[O]nly an unequivocal statement and stipulation limiting damages will serve this purpose," however. *Id.* "To merely say that one will not accept money in excess of a certain amount settles neither the judgment nor the demand." *Id.* Indeed, *Kentucky Rule of Civil Procedure 54.03* provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has* **[**12]** *not demanded such relief in his pleadings*." (Emphasis added.)

Unfortunately for Heyman, his first post-removal statement regarding the amount in controversy—contained in his motion to remand—cannot be considered an unequivocal stipulation limiting damages. In that motion, Heyman simply restated the prayer for relief from his complaint—which requested damages "not to exceed $75,000"—and then claimed that the wording of that prayer for relief must be understood to have "clearly stipulated [that] he would not accept more than $75,000, which he has reiterated in this motion." *HN6*[↑] Under Kentucky law, however, "a statement in a complaint declaring that the plaintiff is seeking less than $75,000 is insufficient to affirmatively establish that the amount in controversy requirement for diversity jurisdiction cannot be met." *Cook v. Estate of Moore, No. 3:12-cv-00485-H, 2012 U.S. Dist. LEXIS 157486, 2012 WL 5398064, at *1 (W. D. Ky. Nov. 2, 2012)*. *See also Jefferson v. Hyatt Corp., No. 3:14-cv-00601-TBR, 2015 U.S. Dist. LEXIS 46837, 2015 WL 1611834, at *2 (W.D. Ky. Apr. 10, 2015)* (A statement in a complaint that the plaintiff is seeking less than $75,000 cannot defeat diversity jurisdiction because "Kentucky plaintiffs are afforded substantial flexibility to amend their complaints.").

Eventually, Heyman submitted to the district court the stipulation that **[**13]** asserted that he "*will not seek or accept* damages in excess of $75,000." (Emphasis added.) Such unequivocal wording has been found in other cases to be sufficient to limit a plaintiff's monetary recovery. *See, e.g., Jefferson, 2015 U.S. Dist. LEXIS 46837, 2015 WL 1611834, at *4* ("Plaintiff will not seek or accept an award of damages in excess of $74,999.00 inclusive of punitive damages, attorneys' fees, and the fair value of any injunctive relief."); *Spence v. Centerplate, 931 F. Supp.2d 779, 780, 782 (W.D. Ky. 2013)* (same); *Agri-Power, Inc. v. Majestic JC, LLC, No. 5:13-cv-00046-TBR, 2013 U.S. Dist. LEXIS 90410, 2013 WL 3280244, at *4 (W.D.Ky. June 27, 2013)* (plaintiff "seeks to recover . . . $24,000.00 in compensatory damages, together with punitive damages not to exceed $24,000.00 [and] will not accept an award of damages that exceeds $50,000.00 in total, exclusive of interest and costs"); *Van Etten v. Boston Sci. Corp., No. 3:09-cv-442-H, 2009 U.S. Dist. LEXIS 99079, 2009 WL 3485909, at *1 (W.D. Ky. Oct. 23, 2009)* (plaintiff "will not be making a claim nor pursuing damages in amount equal to or exceeding the sum of $75,000.00"). Because Heyman's stipulation was not his *first* post-removal statement regarding the damages sought, however, even that unequivocal rejection of damages exceeding $75,000 cannot serve as a retroactive, *per se* repudiation of federal jurisdiction. *See Shupe, 566 F. App'x at 481*.

Even so, as recognized by the district court in this case, *HN7*[↑] the burden of proof remained **[**14]** on Lincoln National to establish by a preponderance of the evidence that *§ 1332*'s amount-in-controversy requirement was met. Lincoln National thus was required to show that it was "more likely than not" that Heyman was entitled to a recovery of at least $75,000.01 should he be successful in proving his legal claims. *See Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993)*, abrogated on other **[*471]** grounds in *Hertz Corp. v. Friend, 559 U.S. 77, 130 S.*

Ct. 1181, 175 L. Ed. 2d 1029 (2010). Such a preponderance-of-the-evidence test, however, "does not place upon the defendant the daunting burden of proving, *to a legal certainty*, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Id. at 159* (emphasis added).

### Establishment of Jurisdictional Amount-in-Controversy Requirement

In his complaint, Heyman sought "all compensatory, equitable, declaratory, injunctive, and exemplary relief against Lincoln in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and such other relief as is just and appropriate." To counter Heyman's motion to remand the case to Kentucky state court, Lincoln National thus undertook to establish that it was more likely than not that the aggregate **[**15]** of those various components of the prayer for relief equaled more than $75,000 and, therefore, vested the district court with jurisdiction over this matter.

### Compensatory Damages

Of the various components of the overall damages that Heyman seeks, the easiest to calculate is the compensatory-damages figure. Were Heyman to be successful in the claims set forth in his complaint, the court would be required to determine the total disability payments Heyman should have received from September 2013—when Lincoln National began paying Heyman the reduced $122.29 monthly amount—through December 2015—when Heyman filed his state court complaint. That calculation ($1,222.87 per month x 28 months) would yield a gross benefit amount of $34,240.36. From that gross amount, however, the court would be required to subtract the value of the reduced payments that Heyman did receive for the 24 months between September 2013 and August 2015, when all payments were suspended pending recoupment of prior alleged overpayments ($122.29 x 24 = $2,934.96). Subtracting the reduced insurance payments that Heyman received from the gross benefit amount that Heyman claims he *should have received* yields a net compensatory-damages **[**16]** amount of $31,305.40 ($34,240.36 - $2,934.96 = $31,305.40).

Heyman contended before the district court that Lincoln National's $31,305.40 figure is "inflated," but he failed to offer either an explanation for that conclusion or an alternate method of calculating the compensatory damages due him. Lincoln National thus has demonstrated, at least by a preponderance of the evidence, that its calculation of compensatory damages is correct.

### Punitive Damages

*HN8*[↑] "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6th Cir. 2001)* (quoting *Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987)* (citations omitted)). *See also Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 64 S. Ct. 5, 88 L. Ed. 15 (1943)* ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining [the] jurisdictional amount."). In his complaint, Heyman seeks punitive-damages awards **[*472]** for five of his claims, including his allegation that Lincoln National committed numerous violations of Kentucky's UCSPA. *See Ky. Rev. Stat. § 304.12-230(1)*, *(3)*, *(4)*, and *(7)*. The Kentucky Supreme Court has recognized that *HN9*[↑] a cause of action against an insurer for bad-faith violations of the UCSPA entitles the claimant "to **[**17]** an instruction permitting an award of punitive damages." *Wittmer v. Jones, 864 S.W.2d 885, 890-91 (Ky. 1993)*.

At this early stage of the proceedings, and in light of Kentucky's prohibition on requesting specific recovery figures in state court complaints, it becomes difficult to estimate what punitive-damages recovery a jury might award. For that reason, Heyman argues that the addition of *any* punitive-damages amount must be the result of impermissible

speculation. As previously discussed, however, _HN10_[↑] under the preponderance-of-the-evidence standard adopted by this court for use in cases in which damages are unspecified, a defendant seeking to remove a case to federal court need not "research, state and prove the plaintiff's claim for damages." _Gafford, 997 F.2d at 159_. "The precise award in any case . . . must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff," facts that are unavailable to the court at this time. _State Farm Mut. Auto. Ins. v. Campbell, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)_. The Supreme Court has offered some guidance on the issue, however, by noting that "awards exceeding a single-digit ratio between punitive and compensatory damages" rarely will comport with principles of due process. _Id._ "When compensatory damages are substantial, then a lesser ratio, perhaps only equal **[**18]** to compensatory damages, can reach the outermost limit of the due process guarantee." _Id._ Conversely, where—as in this case—the compensatory damage award is relatively small, a higher ratio might be acceptable.

Given that Heyman sought to prove in this case that Lincoln National unjustly deprived him of all insurance benefits for four months, and that Heyman's provable compensatory damages totaled only $31,305.40, the district court concluded that "a conservative 2:1 punitive-to-compensatory ratio" might well be appropriate and that such a ratio "easily pushes the amount in controversy over the jurisdictional threshold." _Heyman, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at *3_. Furthermore, Lincoln National has cited two other cases raising claims under the UCSPA, both of which found punitive-to-compensatory ratios of 2:1 or greater to be justified.

The first such case, _Farmland Mutual Insurance Co. v. Johnson_, involved a jury determination that a $2,000,000 punitive-damages award was appropriate for violations of the UCSPA that had resulted in an earlier compensatory-damages award of $213,810. _36 S.W.3d 368, 383 (Ky. 2000)_, _as modified_, (Feb. 22, 2001). Thus, even though the punitive damages were more than nine times the compensatory-damages amount in that case, the Kentucky **[**19]** Supreme Court concluded that the jury's award was not excessive. _Id._

In _Lovelace v. Stonebridge Life Insurance Co., No. 1:13-cv-000138-TBR, 2013 U.S. Dist. LEXIS 154180, 2013 WL 5797860 (W.D. Ky. Oct. 28, 2013)_, a plaintiff sought compensatory, punitive, and other damages in an amount not to exceed $75,000 based upon a claim against an insurance policy that provided only $25,000 in coverage. _2013 U.S. Dist. LEXIS 154180, [WL] at *1_. The district court concluded that the amount-in-controversy requirement for the court's exercise of its diversity jurisdiction nevertheless had been met in the matter stating:

> Considering that Plaintiffs seek punitive damages, it becomes clear that the amount in controversy exceeds $75,000. **[*473]** The Supreme Court has embraced a punitive-to-compensatory damages ratio near 4:1. _See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 424-26, 123 S. Ct. 1513, 155 L. Ed.2d 585 (2003)_. Even reducing to a 2:1 ratio would result in Plaintiff being awarded $50,000 in punitive damages, which would [ ] bring the total damages to $75,000 ($25,000 compensatory and $50,000 punitive). This isn't even taking into account Plaintiff's additional claims for attorney [sic] fee and costs, [and other damages].

_2013 U.S. Dist. LEXIS 154180, [WL] at *2_ (footnote omitted).

Similarly, even a 2:1 ratio of punitive damages to compensatory damages would place the amount in controversy in Heyman's case well over $90,000, irrespective of attorneys' **[**20]** fees and any other damages to which Heyman claims he would be entitled. Thus, to the extent that any evidence of a possible punitive-damages award can be gleaned from prior, similar cases, Lincoln National has proven by a preponderance of the evidence that Heyman's lawsuit indeed could result in a recovery exceeding the minimum monetary amount necessary to invoke the diversity jurisdiction of the federal courts.[1]

---

[1] The dissent suggests that Lincoln National could have offered _proof_ of the amount of punitive damages appropriate in this case simply by requesting such information from Heyman in an interrogatory propounded in state-court discovery. But a plaintiff does not control the award or amount of punitive damages — that determination is made by the finder of fact at the _conclusion_ of the presentation of all the evidence.

**Attorneys' Fees**

Heyman also sought reimbursement from Lincoln National for his attorneys' fees. As we explained in *Williamson, 481 F.3d at 376*, **HN11**[↑] "[a]s a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, *unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees.*" (Citation omitted and emphasis added.) **HN12**[↑] Because Heyman asserts that his claims under the disability insurance policy were not paid in a timely manner, *Kentucky Revised Statutes § 304.12-235(3)* explicitly provides that Heyman "shall be entitled to be reimbursed for his reasonable attorneys' fees incurred." Thus, a reasonable fee to compensate attorneys for their work on the case also must be included in the calculation of the relevant amount in controversy **[**21]** in the litigation.

Heyman argues, however, that Lincoln National offered no evidence of "an hourly rate, potential number of hours, similar cases with related facts, etc." to support inclusion of attorneys' fees in the amount in controversy. As noted by the district court in its order regarding its jurisdiction over this matter, "It is unclear how Lincoln National could calculate the fees more precisely when this case is still in its infancy and the fee arrangement is presumably within the exclusive knowledge of Heyman and his counsel." *Heyman, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at \*4.*[2]

In any event, as discussed above, a conservative 2:1 ratio of punitive damages to compensatory damages would lift the amount in controversy well over the threshold amount, even without consideration of attorneys' fees. Even if punitive **[*474]** damages in this case were only equal to the uncontroverted compensatory damage amount, attorneys' fees in an amount of $12,389.21 or more would serve to satisfy the jurisdictional amount in controversy. Given that a 25-percent contingency fee in this matter would amount to $15,652.70 with the 1:1 ratio, it is difficult to believe that Heyman's attorneys would agree to a fee award of less than $12,389.21 to compensate **[**22]** them for what now has become more than three years of legal work on Heyman's behalf. Moreover, even if Heyman's counsel were willing to stipulate at this late date to a combined award of punitive damages and attorneys' fees of less than $43,694.60, such a stipulation would be given no effect because "events occurring after removal that reduce the amount in controversy do not oust jurisdiction." *Rogers, 230 F.3d at 872*.

**Value of Injunctive Relief**

Heyman also seeks injunctive relief to prevent continued withholding of disability benefits and any decrease in the amount of benefits that are payable. Nevertheless, determining that the amount in controversy in this case would be met simply by adding compensatory and punitive DAMAGES and attorneys' fees, the district court concluded that it "need not address the issue of future damages." *Heyman, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at \*4*.

Even so, as we have recognized:

> **HN13**[↑] [W]here the validity of an insurance policy containing disability benefit provisions is involved in a diversity action in a federal district court, future potential benefits may be considered in computing the requisite jurisdictional amount. . . . In contrast, future potential benefits may not be taken into consideration in the computation of the amount **[**23]** in controversy in diversity actions in Federal District Courts involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy.

---

[2] Again, the dissent suggests that this problem could be solved simply by "serv[ing] an interrogatory seeking Heyman's fee arrangement with his lawyers." But, even if the attorneys agreed to divulge their agreement regarding fees at that time, neither the total hours spent on the case nor the ultimate recovery by the plaintiff could be ascertained at such an early stage of the proceedings.

*Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416-17 (6th Cir. 1996)* (citations and internal quotation marks omitted). In an effort to preclude consideration of the value of injunctive relief, Heyman argues that he is not contesting the validity of the entire insurance policy but only whether Lincoln National can offset Social Security benefits from the benefits due him under the insurance contract. Lincoln National notes, however, that Heyman's complaint alleges that "Lincoln's insertion of discretionary language [in the policy] improperly renders the insurance coverage illusory." Thus, in Heyman's own initial filing in this matter, he called into question the validity of the contract itself, thus justifying consideration of future potential benefits.

When calculating the value of the future benefits that would be due Heyman should be prevail in this matter, Lincoln National stated that Heyman possibly could receive disability benefits for the 248 months from the filing of the lawsuit in December 2015 until September **[**24]** 28, 2036.[3] The insurance company thus calculated that "the future value of Mr. Heyman's benefits, beginning in January of 2016, would be $303,271.76 ($1,222.87 x 248 months)." If Lincoln National seeks to assert that Heyman would be able to recover lost benefits for that entire period, however, the actual monthly payment lost by Heyman would be only $1,100.58 ($1,222.87-$122.29, the reduced benefit to which even Lincoln National **[*475]** concedes Heyman is due). Thus, multiplied by 248 (or 249 months), the value of any injunctive relief to which Heyman would be entitled would be $272,943.84 (or $274,044.42). In any event, either amount, added to the compensatory and punitive damages and attorneys' fees, more than satisfies the statutory amount-in-controversy requirement to justify exercise of the district court's diversity jurisdiction.

### Interest on the Judgment

In arguing that the amount in controversy in this matter exceeds $75,000, Lincoln National contends that interest on the judgment also should be included in the calculation because such a recovery is allowed by the provisions of *Kentucky Revised Statutes § 304.12-235(2)*. Indeed, that provision of the Kentucky Code provides:

> If an insurer fails to make a good faith attempt to settle **[**25]** a claim within the time prescribed in *subsection (1)* of this section, the value of the final judgment shall bear interest at the rate of twelve percent (12%) per annum from and after the expiration of the thirty (30) day period.

The district court properly declined to consider interest when determining the amount in controversy, however. As noted by the district court, *HN14*[⬆] the provisions of *28 U.S.C. § 1332(a)* state that the federal district courts have jurisdiction over matters between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, *exclusive of interest* and costs." (Emphasis added.) Lincoln National's argument that interest on the judgment should be included when calculating the amount in controversy thus is without merit, but does not affect the ultimate conclusion that Heyman's lawsuit could be valued at an amount in excess of $75,000.

### Grant of Lincoln National's Motion for Judgment on the Pleadings

Having determined that it could exercise jurisdiction over the lawsuit, the district court granted Lincoln National's motion for judgment on the pleadings. In doing so, the district court noted that Heyman's complaint was filed after a similar suit—filed by Heyman's attorney **[**26]** on behalf of another plaintiff and "all similarly situated individuals insured under group long term disability insurance coverage issued and underwritten by Defendant Lincoln National Life Insurance Company"—was filed in Indiana state court and then removed to the United States District Court for

---

[3] Because Lincoln National claims Heyman would be entitled to benefits until September 28, 2036, the period from January 1, 2016, through September 28, 2036, actually consists of 249 months.

the Southern District of Indiana.[4] *See Beverly M. Kennedy v. Lincoln Nat'l Life Ins. Co.*, No. 4:15-cv-00099-TWP-DML (the *Kennedy* federal lawsuit).[5]

**HN15**[⬆] "We review a district court's judgment on the pleadings using the same de novo standard of review employed for a motion to dismiss under *Rule 12(b)(6)*" of the Federal Rules of Civil Procedure. *Boulger v. Woods, 917 F.3d 471, 478 (6th Cir. 2019)* **[*476]** (citations and internal quotation marks omitted). **HN16**[⬆] "In assessing the pleadings, we take as true all well-pleaded material allegations. The motion [for judgment on the pleadings] is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley v. Dish Network, LLC, 751 F.3d 724, 733 (6th Cir. 2014)* (citations and internal quotation marks omitted).

**First-to-File Rule**

In granting Lincoln National's motion, the district court applied **HN17**[⬆] the first-to-file rule, "a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." **[**27]** *Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016)*. "We review the district court's application of the first-to-file rule for abuse of discretion." *Id.* (citations omitted).

*Baatz* sets out the framework by which first-to-file decisions should be evaluated. **HN18**[⬆] Because the first-to-file rule comes into play "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007)* (citations and internal quotation marks omitted). In applying the first-to-file rule, we generally evaluate: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz, 814 F.3d at 789.* Even when those factors call for application of the rule, however, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001).*

**Chronology of Events**

**HN19**[⬆] In examining the chronology of events, the appropriate dates to consider "are when the relevant complaints are filed." *Baatz, 814 F.3d at 790.* Heyman filed his Kentucky state court complaint on December 28, 2015, and Lincoln National filed its notice of removal to federal district court in Kentucky on January 19, 2016. The putative class-action **[**28]** complaint in *Kennedy*, however, was filed in Indiana state court on July 13, 2015, before being removed to federal district court in Indiana on July 29, 2015. Faced with those facts, Heyman asserts that "[i]t is undisputed Mr. Heyman filed this lawsuit after the *Kennedy* lawsuit was filed." Thus, the first *Baatz* factor weighs in favor of applying the first-to-file rule in this case.

---

[4] The proposed class in the Indiana lawsuit was defined to include, in relevant part, "[a]ll individuals insured by a group disability insurance policy issued by The Lincoln National Life Insurance Company, and for whom during the applicable limitations period, (i) monthly income benefits were reduced by Social Security disability benefits; or (ii) an insured remitted Social Security disability retroactive benefits to Lincoln."

[5] Interestingly, Heyman's counsel also filed a putative class action suit against Lincoln National—with *Heyman* as the named plaintiff—in federal district court in *Indiana* almost four months prior to the filing of Heyman's Kentucky state court complaint. In light of the similar suit already filed by Beverly Kennedy, however, Lincoln National moved to dismiss Heyman's Indiana federal lawsuit, and Heyman tendered a notice of voluntary dismissal of that action six days prior to filing his Kentucky state court complaint.

**Similarity of the Parties**

Heyman argues, however, that the remaining *Baatz* factors do not support application of the first-to-file rule. He maintains, for example, that he and Beverly Kennedy "are wholly distinct and separate persons" and that, although he might be included within the class of plaintiffs in the *Kennedy* lawsuit, he potentially could opt out of that class. Consequently, he argues that there is not sufficient similarity of the parties in the two lawsuits to justify the district court's dismissal of this action.

*HN20*[⬆] The similarity-of-the-parties factor does not require that the parties in the competing lawsuits be *identical*, however. Rather, "[t]he first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap.'" *Baatz, 814 F.3d at 790* (quoting *Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950-51 (5th Cir. 1997)).* Heyman clearly would be a member of the putative class **[**29]** in *Kennedy* were it to be certified. Because he too was insured by a Lincoln National group disability-insurance policy **[*477]** and had his monthly benefits reduced due to receipt of Social Security disability benefits, there is "substantial overlap" between Heyman and the parties in *Kennedy*.

Nor does the fact that Heyman could opt out of the *Kennedy* class destroy the similarity of the parties. As we explained in *Baatz*:

> *HN21*[⬆] This analysis is not affected by [a] representation that [a plaintiff] would opt out of the class if it is certified. That is certainly [a plaintiff's] right if and when that day comes. But allowing plaintiffs to use this representation to prevent the first-to-file rule from being applied in the first instance would undercut the purposes of the first-to-file rule: parties, not courts, would determine when the rule could be applied, and could force resource-draining duplicative class actions to proceed simultaneously. This would unduly burden the courts, and could be used as a vexatious litigation tactic. While the opt-out right may allow for (and perhaps anticipate) duplicative litigation, it should not prospectively prohibit courts' efforts to conserve resources by applying the **[**30]** first-to-file rule.

*Id. at 791* (citations omitted).

Heyman further contends that the parties in *Kennedy* and *Heyman* cannot be similar because Heyman seeks to prosecute his claims only as an individual while the *Kennedy* lawsuit involves a potential class of plaintiffs. Regardless of the number of plaintiffs in the two actions, however, all claimants in the suits—Heyman and the *Kennedy* plaintiffs—are individuals covered by a Lincoln National disability-insurance policy who have had their benefits reduced by receipt of Social Security disability benefits. The parties therefore substantially overlap, and the second *Baatz* factor also weighs in favor of the application of the first-to-file rule.

**Similarity of Issues or Claims**

Heyman submits that the claims at issue in the Kentucky and Indiana actions are not sufficiently similar to justify invocation of the first-to-file rule. *HN22*[⬆] The issues in the two proceedings also need not be identical, however. *Id.* Rather, they "need only to substantially overlap," "'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* (quoting *Smith v. Sec. & Exch. Comm'n, 129 F.3d 356, 361 (6th Cir. 1997)* (*en banc*) (citation omitted)). Despite Heyman's **[**31]** argument to the contrary, the district court in Heyman's case did not abuse its discretion in concluding that the issues in the two cases do substantially overlap.

The complaint in *Kennedy* and the complaint in this case both were drafted by the same attorney and use identical language throughout much of the two filings. Both complaints allege that Lincoln National breached the insurance contracts with the plaintiffs, breached the company's duty to act in good faith, violated Unfair Claims Settlement Practices Acts, and sought compensatory, equitable, declaratory, injunctive, and exemplary relief, pre- and post-

judgment interest, attorneys' fees, and costs. In fact, the only material difference between the two complaints that Heyman can identify is the fact that Heyman, filing his suit in Kentucky, also alleged violations of Kentucky statutes requiring requests by an insurer for reimbursement be made within two years from the date the claim was filed, *Ky. Rev. Stat. § 304.14-375*, and prohibiting unfair or deceptive acts or practices in the business of insurance, *Ky. Rev. Stat. § 304.12-010*. As the district court noted, however, "those claims are encompassed by [Heyman's] breach-of-contract claim."

**[*478]** Although not identical in all respects, **[**32]** the claims alleged in the Kentucky and the Indiana federal lawsuits are "materially on all fours," and the resolution of one case necessarily would leave "little or nothing to be determined" in the other. The third *Baatz* factor thus also militates in favor of application of the first-to-file rule in this matter.


### Equitable Considerations

*HN23*[⬆] Even though the three *Baatz* factors are satisfied in this case, district courts still have discretion "to decline to apply the first-to-file rule." *Baatz, 814 F.3d at 793* (citations omitted). The first-to-file rule "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *EEOC v. Univ. of Pa., 850 F.2d 969, 972 (3d Cir. 1988)*. Nevertheless, "deviations from the rule should be the exception, rather than the norm." *Baatz, 814 F.3d at 792* (citation omitted).

Here, no equitable considerations render application of the rule improper. Indeed, it is Heyman, not Lincoln National, who has engaged in forum shopping in an effort to have his claims resolved in a sympathetic venue. Not only did Heyman file his own class action suit in Indiana federal court based on the same alleged violations contained in the complaint in this Kentucky litigation, but his **[**33]** attorney also filed the complaint in *Kennedy* that sought to certify a class of claimants that also would include Heyman. In short, nothing in the convoluted history of this lawsuit calls for consideration of equitable principles or suggests that the district court abused its discretion in applying the first-to-file rule.


### Appropriateness of Dismissal Order

In a final appellate argument, Heyman contends that the district court should not have dismissed his case without prejudice, but rather should have held the matter in abeyance pending resolution of the first-filed Indiana federal lawsuit. We have recognized that *HN24*[⬆] even though dismissal of a case is an option in certain situations, "a district court can abuse its discretion by dismissing a case under the first-to-file rule when doing so could adversely affect a party's interests." *Baatz, 814 F.3d at 793-94*.

Heyman maintains that serious, important interests indeed will be affected adversely should the district court's dismissal of his lawsuit be affirmed. First, the district court in the *Kennedy* lawsuit has not yet certified the proposed class of plaintiffs. If no class is certified, Heyman's ability to have his claims heard in the Indiana federal court will be **[**34]** extinguished. Furthermore, depending on how long such a class-certification decision remains pending, Kentucky statute-of-limitations concerns also may impinge upon Heyman's ability to have a court examine his claims. For those reasons alone, we believe that the district court abused its discretion in dismissing Heyman's lawsuit. Instead, the district court should have held the matter in abeyance pending final resolution of the *Kennedy* litigation in the federal and state courts in Indiana.[6]

---

[6] At the time of the district court's order of dismissal in this case, the federal *Kennedy* lawsuit had been stayed by order of the federal district court in Indiana in light of a parallel Indiana state court lawsuit filed by the same plaintiff. Three weeks after the district court's ruling in Heyman's Kentucky federal court case, the federal district court in Indiana administratively closed the *Kennedy* federal lawsuit, leaving available the option for the parties to reopen the matter upon resolution of the pending Indiana state court litigation.

**[*479] CONCLUSION**

For the reasons discussed, the amount in controversy in this litigation far exceeded the $75,000 minimum necessary to invoke the diversity jurisdiction of the federal courts. Furthermore, the district court did not err in applying the first-to-file rule in this matter, but did abuse its discretion in dismissing the case rather than holding it in abeyance pending resolution of the *Kennedy* lawsuits. We thus AFFIRM the judgment of the district court in part but REVERSE the order of dismissal and REMAND the matter for such further action as is appropriate.

**Dissent by:** GRIFFIN

# Dissent

GRIFFIN, Circuit Judge, dissenting.

"In the Wild West, the rule was 'shoot first, ask questions later.' In modern civil [**35] litigation, the rule seems to be 'remove [to Federal Court] first, ask questions later.'" *May v. Wal-Mart Stores Inc., 751 F. Supp. 2d 946, 947 (E.D. Ky. 2010)* (Thapar, J.). Put differently, asking jurisdictional questions *after* removing a case to federal court is improper.

So is never asking those questions at all. When a party removes a case from state court without conducting discovery to establish federal jurisdiction, never seeks to serve that discovery upon arriving to federal court, asks the federal court to speculate that subject-matter jurisdiction exists, and convinces the federal court to do so, unfairness abounds. It's unfair to the plaintiff, who is deprived of his choice of venue, and it's unfair to the State, which is denied its sovereign authority to have its own courts resolve disputes.

That's what happened here. Plaintiff James Heyman sued Defendant Lincoln National Life Insurance Company in Jefferson County Circuit Court: "a perfectly competent court in the Commonwealth of Kentucky," *id. at 948*. Lincoln then ran to federal court with *proof* that Heyman sought about $31,000 in compensatory damages and a *hunch* that the total amount in controversy might be over $44,000 higher (thus qualifying for the $75,000 federal diversity-jurisdiction threshold). [**36] When Heyman sought to return to state court because federal jurisdiction was lacking, Lincoln asked the district court to fill the amount-in-controversy gap with guesses. The district court did, and my colleagues now affirm the error. Because I cannot reconcile such an approach with our caselaw and, more importantly, with principles of federalism, I respectfully dissent.

I.

As an initial matter, I would address an issue the majority ignores: whether the Supreme Court's decision in *Powerex Corp. v. Reliant Energy Services, Inc., 551 U.S. 224, 127 S. Ct. 2411, 168 L. Ed. 2d 112 (2007)*, abrogated our decision in *Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868 (6th Cir. 2000)*. In *Rogers*, we held that "a post-removal stipulation reducing the amount in controversy below the jurisdictional limit does not require remand to state court." *230 F.3d at 872*. And here, Heyman submitted such a stipulation. So if *Powerex* abrogated *Rogers*, Heyman's stipulation, alone, might require remand to state court (because even if federal jurisdiction existed at the time of removal, the stipulation might have extinguished it).

To be sure, neither party raises this issue on appeal (although Heyman raised it below). But it requires consideration because it affects our subject-matter jurisdiction and might resolve the appeal. Further, it has split district courts in our circuit for over a decade. [**37] Some district courts have held that *Powerex* abrogated *Rogers* and have thus remanded cases to state court after plaintiffs have submitted post-removal **[*480]** stipulations that reduced the amount in controversy. *See, e.g.*, *Shearer v. Ohio Cas. Ins. Co., No. 5:12-cv-00188-JMH, 2013 U.S. Dist. LEXIS 23865 (E.D. Ky. Feb. 13, 2013)*; *Captain v. Wal-Mart Stores E., Inc., No. 10-501-HJW-JGW, 2010 U.S. Dist. LEXIS 123999 (S.D. Ohio Oct. 7, 2010)*, *report and recommendation adopted*, *No. C-1-10-501, 2010 U.S. Dist.*

LEXIS 123996 (S.D. Ohio Nov. 23, 2010)); Roberts v. A&S Bldg. Sys., L.P., No. 3:07-CV-413, 2008 U.S. Dist. LEXIS 6309 (E.D. Tenn. Jan 25, 2008). Yet others, like the district court here, have distinguished Powerex and refused to remand cases because of such stipulations. See Heyman v. Lincoln Nat'l Life Ins. Co., No. 3:16-cv-37-DJH-DW, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at *2 (W.D. Ky. Apr. 27, 2017); see also Miller v. Volkswagen of Am., Inc., 889 F. Supp. 2d 980, 987 (N.D. Ohio 2012) (remanding the case anyway because the defendant hadn't proved by a preponderance of the evidence that the amount in controversy exceeded $75,000).

So this debate has produced disparate outcomes. Parties have had their cases remain in federal court or return to state court not because of the law or the facts, but because of the district court they were in. In my view, we should clarify this fundamental jurisdictional issue. I would hold that Rogers remains good law for the reasons the district court provided:

> In Powerex (which did not involve diversity jurisdiction), the Supreme [**38] Court observed that "a case can be properly removed and yet suffer from a failing in subject-matter jurisdiction that requires remand." 551 U.S. at 232 (emphasis removed). In a footnote at the end of the same paragraph, however, the Court reiterated "the general rule that postremoval events do not deprive federal courts of subject-matter jurisdiction." Id. n.1 (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998)). Thus, the rule established in Rogers remains intact. See Rogers, 230 F.3d at 872 ("Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction.").

Heyman, 2017 U.S. Dist. LEXIS 149213, 2017 WL 3274452, at *2. In other words, Powerex recognized an exception to the general rule that Rogers falls under. Thus, I would hold that Heyman's stipulation did not require the district court to remand the case.

II.

Because Heyman's stipulation was futile, it is necessary for us to determine whether federal jurisdiction existed at the time of removal. Diversity jurisdiction—the type of subject-matter jurisdiction in dispute here—requires that the parties to a lawsuit be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). Heyman and Lincoln are citizens of different states, so our jurisdiction depends on the [**39] amount in controversy, which Lincoln must prove by a preponderance of the evidence. Rogers, 230 F.3d at 871. Before examining the various categories of potential monetary recovery and whether, or how much, they count toward the amount in controversy, it helps to take a step back to consider a few fundamental jurisdictional principles.

A.

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Given our restricted authority to hear cases, we must presume that we lack jurisdiction unless the record contains "facts or circumstances" [*481] that establish it. Turner v. Bank of N.A., 4 U.S. 8, 11, 1 L. Ed. 718, 4 Dall. 8 (1799). So "[j]ust as a criminal defendant is presumed innocent until the government proves him guilty, a case is presumed to fall outside a federal court's jurisdiction until a litigant proves otherwise." May, 751 F. Supp. 2d at 950.

When a defendant removes a case from state court to federal court, this presumption requires both hesitancy and diligence in allowing the case to proceed. That's because States have the sovereign power "to provide for the determination of controversies in their courts." Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 (1934). When a federal court exercises jurisdiction in a removed case, then, it implicates the State's "rightful independence." Ahearn v. Charter Twp. of Bloomfield, 100 F.3d 451, 454 (6th Cir. 1996). Indeed, only "Congress[,] in conformity [with] the judiciary sections of the [**40] Constitution," can override that independence. Healy, 292 U.S. at 270. And when Congress does so by passing a removal statute like the one Lincoln invokes here, we must construe it strictly. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994).

So what does this all mean when the amount in controversy is itself in controversy? It means that "the removing defendant must show that it is 'more likely than not' that the plaintiff's claims meet the amount[-]in[-]controversy requirement." *Rogers, 230 F.3d at 871.* Put differently, the defendant must *prove*, by a preponderance of the evidence, what the amount in controversy likely is. To be sure, this requirement doesn't mean the defendant must "research, state[,] and prove the plaintiff's claim for damages" "to a legal certainty." *Gafford v. Gen. Elec. Co., 997 F.2d 150, 159 (6th Cir. 1993)*, *abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010)*. But it also doesn't mean the defendant need show only that "the amount in controversy *may* meet the federal requirement"; such a low threshold "would effectively force the plaintiff seeking remand to prove in rebuttal that only a relatively small amount of damages is legally possible." *Id.* (emphasis changed from internal quotation marks to italics). Thus, when Lincoln asserts that a certain category of potential recovery should count toward what's more likely than not in **[**41]** controversy, we must examine the *evidence* supporting its assertion.

B.

Lincoln musters meager evidence. It asks us to consider five types of potential recovery: compensatory damages, punitive damages, attorney's fees, injunctive relief, and interest on the judgment. The amount Heyman seeks in compensatory damages is undisputed: $31,305.40 (the difference between what he claims he was entitled to receive under his insurance policy and what Lincoln actually paid him). That puts the amount in controversy $43,694.61 below the jurisdictional threshold. So for federal courts to have subject-matter jurisdiction, the other four categories must fill that gap.

*Punitive Damages.* Under our holding in *Hayes v. Equitable Energy Resources Company*, we must consider punitive damages unless it's apparent to a legal certainty that Heyman can't recover them. *266 F.3d 560, 572 (6th Cir. 2001)*. But just because we must consider them doesn't mean that Lincoln can use their availability, and nothing more, to increase the amount in controversy. As one district court has noted, *Hayes* still ultimately imposed a burden on the defendant to prove **[*482]** every aspect of the amount in controversy by a preponderance of the evidence. *Brown v. Jackson Hewitt, Inc., No. 1:06-cv-2632, 2007 U.S. Dist. LEXIS 13328 at *9-10 (N.D. Ohio Feb. 26, 2007)* **[**42]** .

Before removing the case to federal court, Lincoln didn't inquire how much in punitive damages Heyman sought. It therefore lacks evidence specific to this case. But that doesn't necessarily end the inquiry; a comparison to similar cases with punitive-damages awards could logically provide the necessary support. After all, if a plaintiff in a case with comparable facts obtained punitive damages that exceeded compensatory damages by a factor of two or three or more, and if Heyman successfully recovered compensatory damages here, he likely would recover punitive damages that were at least double his compensatory damages, which would put his total recovery beyond $75,000.

Lincoln asked the district court to compare this case to three others, and it repeats its argument on appeal. First, there's *State Farm Mutual Automotive Insurance Company v. Campbell*, where the Supreme Court struck down a 145:1 punitive-to-compensatory-damages ratio as inconsistent with due process, declined to create a bright-line rule for when a ratio is too high, and noted that ratios in the single digits are more likely to survive due-process challenges. *538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)*. *Campbell* tells us that a punitive-damages **[**43]** award here can't be somewhere in the stratosphere, but it says nothing about where in the permissible range the award is likely to fall. And that means that Lincoln can't rely on *Campbell* because diversity jurisdiction depends on the likely floor of recovery, not the theoretical ceiling.

Then there's *Lovelace v. Stonebridge Life Insurance Company*, a case that didn't involve a punitive-damages award at all. There, the district court considered the plaintiff's motion to remand and, when determining the amount in controversy, simply assumed a 2:1 ratio without evidence to support it. *No. 1:13-CV-000138-TBR, 2013 U.S. Dist. LEXIS 154180, 2013 WL 5797860, at *2 (W.D. Ky. Oct. 28, 2013)*. In other words, the district court there made the same mistake that the district court and the majority have made here (indeed my colleagues cite *Lovelace* to support their assumption of a 2:1 ratio).

Finally, in *Farmland Mutual Insurance Company v. Johnson*, the Kentucky Supreme Court rejected a challenge to a punitive-damages award that had a ratio of approximately 28:1. *36 S.W.3d 368, 374, 383 (Ky. 2000)*, *as modified* (Feb. 22, 2001). *Johnson* is at least closer to the right type of case to use in a comparison (because the punitive-damages award actually survived appeal), but it doesn't support Lincoln's position because **[\*\*44]** it involved (1) a double-digit punitive-to-compensatory-damages ratio, which *Campbell* has since suggested would be unlikely to survive a due-process challenge, *538 U.S. at 425*, and (2) far worse conduct than the company's alleged conduct here.

In *Johnson*, an insurance adjustor misrepresented the terms of a policy for a commercial building without even reading the policy, conspired with a damage-restoration company to create a repair estimate that the adjustor knew was too low, and refused to consider reports from a structural engineer and building contractor the plaintiffs had hired to examine the damaged building. *36 S.W.3d at 371-74*. Here, by contrast, Heyman alleges that Lincoln misrepresented a policy provision, but he doesn't claim that the company did so without reading his policy. He also maintains that the company reduced his monthly payments without justification, but he never says that it conspired to reduce his **[\*483]** payouts below what it knew was proper. And he asserts that Lincoln didn't investigate whether the disability that entitled him to Social Security benefits was the same one that triggered payouts under his policy, but nowhere does he declare that it ignored information he provided the company.

So *Johnson* **[\*\*45]**, like *Campbell*, establishes a theoretical ceiling for punitive damages. Because *Johnson* involved worse conduct and a punitive-to-compensatory-damages ratio of about 28:1, it'd be illogical to say that the award there makes it more likely than not that a jury here would award Heyman punitive damages that exceeded his compensatory damages by so much. (Indeed, as previously noted, such an award would likely conflict with due-process principles.) And because *Johnson* says nothing about what the floor of a punitive-damages award is likely to be, it offers no support for Lincoln's position that Heyman's request for punitive damages more likely than not puts the amount in controversy above the jurisdictional threshold.

Without evidence of how much in punitive damages Heyman seeks, and without any substantially similar cases, we're left to speculate regarding what punitive damages might be. This we cannot do. We resolve all doubts in favor of remand, not the other way around. *Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007)*; *Eastman v. Marine Mech. Corp., 438 F.3d 544, 550 (6th Cir. 2006)*; *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 704 (6th Cir. 2005)*; *Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)*, *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)*.

Yet my colleagues see things differently. They state that "[a]t this early stage of the proceedings," it's "difficult to estimate what punitive-damages recovery a jury **[\*\*46]** might award." With that much, I agree. But they blame this challenge on Kentucky's "prohibition on requesting specific recovery figures in state[-]court complaints," which is where my agreement ends. Yes, *Kentucky Rule of Civil Procedure 8.01* imposes such a ban. *See Ky. R. Civ. P. 8.01(2)* (providing that a prayer for relief in a case seeking unliquidated damages "shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court."). And yes, if the rule stopped there, a defendant removing a case would have a hard time proving how much in punitive damages is more likely than not in controversy. But *Rule 8.01* goes further; it also provides that "[w]hen a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories." Thus, under Kentucky law, a defendant isn't left waiting until a verdict to find out the amount of punitive damages in controversy—all the defendant must do is serve an interrogatory.

And that means Lincoln's difficulty in proving the amount of punitive damages in controversy is a problem of its own making. The way removal **[\*\*47]** should have worked is simple. Heyman sued in state court, so the parties should have conducted discovery in state court. If discovery revealed evidence showing that the case satisfied the requirements for federal jurisdiction, Lincoln could have removed the case to federal court at that time. But if discovery failed to reveal such evidence, the case should have stayed in state court. Instead, Lincoln reflexively removed the case without gathering the evidence necessary for it to establish federal jurisdiction.

**[\*484]**  In the absence of such evidence, the majority notes that "even a 2:1 ratio of punitive damages to compensatory damages would place the amount in controversy in Heyman's case well over $90,000" (and thus well over the threshold for diversity jurisdiction). That's true, but where does this ratio come from? What *evidence* has Lincoln presented that punitive damages will more likely than not double Heyman's claim for compensatory damages? The record, underdeveloped because of Lincoln's rush to federal court, sits devoid of such evidence. I would therefore hold that Lincoln hasn't carried its burden of establishing the amount of punitive damages in controversy, which means the total **[\*\*48]**  amount in controversy remains at $31,305.40.

*Attorney's Fees.* Generally, attorney's fees don't count toward the amount in controversy. *Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376 (6th Cir. 2007)*. But they do when the law mandates their recovery. *Id.* And here, Kentucky law provides that "[i]f an insurer fails to settle a claim within [30 days] and the delay was without reasonable foundation, the insured person . . . shall be entitled to be reimbursed for his reasonable attorney's fees incurred." *Ky. Rev. Stat. § 304.12-235*. Heyman alleges that he's entitled to attorney's fees under that provision, so we must consider them.

But again, that doesn't mean Lincoln can use their availability, and nothing more, to increase the amount in controversy. The company must still prove a threshold amount by a preponderance of the evidence. And Lincoln has once more failed to carry its burden. Because the company never served discovery to determine how Heyman pays or will pay his counsel, it lacks evidence specific to this case. Instead, Lincoln seeks to compare this case to a handful of ERISA cases from various jurisdictions. This approach presents a host of problems.

First, the company never outlines a specific amount of attorney's fees that it claims is in controversy. The five cases **[\*\*49]**  it cites involve fee awards ranging from $16,933.00 to $42,815.00. *See Satterwhite v. Met. Life. Ins. Co., No. 1:06-cv-165, 2008 U.S. Dist. LEXIS 64931, 2008 WL 2952473 (E.D. Tenn. July 29, 2008)* (lowest award); *Cooper v. Life Ins. Co. of Am., No. 1:05-cv-111, 2008 U.S. Dist. LEXIS 24054, 2008 WL 819990 (E.D. Tenn. Mar. 25, 2008)* (highest award). The median award is $21,666.66. *See Hebert v State Farm Ins. Co., 588 So.2d 1150 (La. Ct. App. 1991)*. The mean is $26,042.93. *See McKay v. Reliance Standard Life Ins. Co., 654 F. Supp. 2d 731 (E.D. Tenn. 2009)* ($17,300.00 award); *Verbaere v Life Invrs. Ins. Co., 226 Ill. App. 3d 289, 589 N.E.2d 753, 168 Ill. Dec. 353 (Ill. App. Ct. 1992)* ($31,500.00 award). So exactly how much in attorney's fees do these cases prove is more likely than not in controversy here? Lincoln never tells us. We're left to speculate.

Second, the company does not attempt to show that the *ERISA* cases it cites are comparable to this case. To be sure, they involved disability benefits. But is that enough to establish that those cases generated approximately the same amount of fees that this case is likely to generate—especially considering how widely the awards varied? Once more, we're left to guess (or to develop Lincoln's argument ourselves).

Third, if the ERISA cases Lincoln relies on are indeed comparable, we lack the information necessary to determine which is the *best* comparator. Of the five cases the company cites, four (*Satterwhite*; *Cooper*; *McKay*; and *Verbaere*) involved hourly-fee arrangements while the fifth (*Hebert*) involved a contingency-fee arrangement. **[\*\*50]** Do Heyman's attorneys bill by the hour? If so, *Hebert* isn't a comparable **[\*485]** case. Do they instead work on contingency? If so, the other four cases are inapt. But we can't answer these questions because Lincoln refused to serve discovery before removing this case, which means we're left to guess how Heyman has agreed to pay his lawyers.

And even if we knew the type of fee arrangement, we'd still be left to guess which of the ERISA cases Lincoln cites would be the best comparator because we don't know the specifics of Heyman's attorneys' hourly rates or contingency agreement. The hourly cases Lincoln cites involved rates ranging from $175 an hour to $295 an hour. *See Verbaere, 589 N.E.2d at 761*; *Satterwhite, 2008 U.S. Dist. LEXIS 64931, 2008 WL 2952473 at *6*. Which case, then, generated fees most similar to the fees this case is likely to generate? We can't be sure without knowing the hourly rates of Heyman's lawyers. And the contingency-fee case Lincoln cites involved a 33.33% fee. *Hebert, 588 So.2d at 1152*. Is it comparable to this case? Again, we can't be sure with knowing the portion of any recovery Heyman's attorneys would receive (and if we had that information, we'd no longer need *Hebert* as a comparator).

781 Fed. Appx. 463, *485 2019 U.S. App. LEXIS 21254, **50

Thus, without evidence of Heyman's fee arrangement with his lawyers, without enough of an **[\*\*51]** explanation to allow us to home in on one of the cases Lincoln cites, and without other comparison cases we can be sure are actually similar, we're left to guess the amount of attorney's fees this case is likely to generate. But we must presume that we lack jurisdiction, not that we have it, *Turner, 4 U.S. at 10*, so we can't simply invent a number.

Despite the presumption, the majority stacks assumptions to find that at least $12,389.21 in attorney's fees is in controversy. My colleagues first assume that punitive damages will at least equal compensatory damages, which would put the amount in controversy about $12,389.21 below the jurisdictional threshold. Then they assume that Heyman's lawyers have taken the case on contingency. Then they assume that the contingency fee is at least 20%. And finally, they assume that the fee must be no less than that because Heyman's attorneys would have foreseen, when he first filed suit, that the case would drag on for the three years that it has. Indeed, this last assumption leads my colleagues to conclude that "it is difficult to believe that Heyman's attorneys would agree to a fee award of less than $12,389.21." But speculation does not establish federal jurisdiction; **[\*\*52]** proof does.

The majority also notes its agreement with the district court's observation that "[i]t is unclear how Lincoln National could calculate the fees more precisely when this case is still in its infancy and the fee arrangement is presumably within the exclusive knowledge of Heyman and his counsel." Yet the method of precise calculation sits clear as day in *Kentucky Rule of Civil Procedure 8.01*: "When a claim is made against a party for unliquidated damages, that party may obtain information as to the amount claimed by interrogatories." All Lincoln needed to do was serve an interrogatory seeking Heyman's fee arrangement with his lawyers. When Heyman answered, the company could have calculated the amount in fees the case was likely to produce. And if that number put the total amount of controversy above $75,000, Lincoln could have removed the case with proof of federal subject-matter jurisdiction. But Lincoln skipped discovery altogether and came straight to federal court. Because the company therefore lacks any evidence of the likely fees in this case, I would hold that Lincoln hasn't carried its burden regarding attorney's fees, which means the amount in controversy remains at **[\*\*53]** $31,305.40.

 **[\*486]** *Injunctive Relief.* When a plaintiff seeks injunctive relief in a dispute over an insurance policy, whether the value of that relief counts toward the amount in controversy depends on whether the plaintiff challenges the policy's validity. *See Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416-17 (6th Cir. 1996)*. And here, Heyman never challenges the validity of his policy, so the amount in controversy remains at $31,305.40.

The majority concludes that Heyman challenges his policy's validity, but a careful reading of the complaint shows that he seeks to enforce the policy, not invalidate it. My colleagues focus on one sentence appearing in a section of the complaint titled "Factual Allegations." There, Heyman alleges that "Lincoln's insertion of discretionary language [into the policy] improperly renders the insurance coverage illusory." And that sentence, the majority says, "call[s] into question the validity of the contract itself, thus justifying consideration of future potential benefits."

I disagree. The only part of Heyman's allegation that could hint at the contract's validity is the word "illusory." To be sure, that word, when referencing a contract, can create a legal term of art. An "illusory contract" is "[a]n agreement in which one **[\*\*54]** party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable." *Black's Law Dictionary* 394 (10th ed. 2014). But "illusory," itself, also has a legal meaning: "Deceptive; based on a false impression." *Id.* at 865. And the word's plain meaning is no different. *See, e.g., Random House Webster's Unabridged Dictionary* 954 (2001) (defining "illusory" to mean "causing illusion; deceptive; misleading").

So when Heyman asserts that Lincoln "render[ed] the insurance coverage illusory," does he mean that his policy is unenforceable, or merely deceptive? Three aspects of his complaint answer this question. First, his use of "illusory" appears in the "Factual Allegations" section of his complaint. A contract's enforceability, however, is a legal question, which suggests that Heyman isn't using "illusory" in the legal sense that means "unenforceable"; he is simply describing the coverage as "deceptive." Second, when the complaint shifts to legal allegations in a section titled "Claims," the very first thing Heyman alleges is that "The [insurance policy] is a written contract and enforceable as such." Heyman, then, views **[\*\*55]** the contract as valid. And third, nowhere does Heyman ask to rescind the contract, to recover restitution for the policy premiums he paid, or to obtain any other remedy consistent

with entering an unenforceable contract. Instead, he seeks injunctive relief: specific performance of the contract. Heyman's complaint, then, shows that he wants to enforce the contract, not invalidate it.

Thus, under *Harmon*, I would hold that the value of the injunctive relief Heyman seeks doesn't count toward the amount in controversy. *88 F.3d at 416-17*.

*Interest*. I agree with the majority that the amount in controversy cannot include interest on any judgment Heyman obtains because the $75,000 threshold is "exclusive of interest." *28 U.S.C. § 1332(a)*. Because interest doesn't count, the amount in controversy finishes at $31,305.40—far less than what's necessary to trigger diversity jurisdiction.

III.

To deprive Kentucky of its sovereign power to resolve controversies in its courts, we need more. More evidence that Heyman seeks over $75,000 despite his many assurances to the contrary. And **[*487]** more proof of what punitive damages and attorney's fees are likely to be.

In the words of Judge Thapar, "Federal jurisdiction is a binary choice. The switch is **[**56]** either on or off." *May, 751 F. Supp. 2d at 951*. We must presume the switch is off until Lincoln shows us it's on, and its dash to federal court has left us in the dark, unable to see which way the switch is flipped.

In the absence of a sufficient record, I would not speculate that we have subject-matter jurisdiction. Rather, I would reverse and remand with instructions to remand to state court. Further, I would vacate the district court's order of dismissal for lack of jurisdiction. For these reasons, I respectfully dissent.

---

**End of Document**