⚠ Last updated  January 03, 2025   12:16:32 pm GMT

# Total Quality Logistics, LLC v. Covar Transp.

United States District Court for the Southern District of Ohio, Western Division

December 22, 2017, Decided; December 22, 2017, Filed

Case No. 1:17-cv-797

**Reporter**
2017 U.S. Dist. LEXIS 210961 *; 2017 WL 6546617

TOTAL QUALITY LOGISTICS, LLC, Plaintiff, v. COVAR TRANSPORTATION d/b/a COVAR BROKERAGE, et al., Defendants.

**Prior History:** Total Quality Logistics, LLC v. Covar Transp., 2017 U.S. Dist. LEXIS 198846 (S.D. Ohio, Dec. 4, 2017)

## Core Terms

amount in controversy, Employees, injunction, removal, rights, Plaintiffs', exceeds, maximum, costs, compensatory damages, injunctive relief, federal court, state court, confidential, termination, aggregate, damages, amount-in-controversy, reparation, demanding, benefits

**Counsel:** [*1] For Total Quality Logistics, LLC, Plaintiff: Barry F Fagel, LEAD ATTORNEY, Lindhorst & Dreidame Co -1, Cincinnati, OH.

For CoVar Transportation, Collin Cove, David Minnis, John Fletcher, Todd Brazeal, Chase Walker, Cameron Brown, Defendants: Randolph Harry Freking, LEAD ATTORNEY, Freking Myers & Reul LLC, Cincinnati, OH; Melissa G Foster Bird, Nelson Mullins Riley & Scarborough LLP, Huntington, WV.

**Judges:** Timothy S. Black, United States District Judge.

**Opinion by:** Timothy S. Black

## Opinion

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (Doc. 15)**

This civil case is before the Court on the motion of Plaintiff Total Quality Logistics, LLC ("TQL") to remand this case to the Clermont County Court of Common Pleas ("State Court") from which it was removed (Doc. 15), and the parties' responsive memoranda (Docs. 18, 19).

### I. FACTS AS ALLEGED BY THE PLAINTIFF

TQL is an Ohio limited liability company that is engaged in the highly competitive business of providing freight brokerage services in every state in the continental United States. (Doc.4 at ¶ 10).

Defendant Covar Transporation d/b/a Covar Brokerage ("Covar") is a third-party logistics broker and a direct competitor of TQL. (Doc. 4 at ¶ 14). Defendants David Minnis, John Fletcher, [*2] Todd Brazeal, Chase Walker, and Cameron Brown are former employees of TQL (collectively, the "Former TQL Employees"). (Id. at ¶¶ 1-5).

After hiring the Former TQL Employees, TQL provided them with extensive training on TQL's services, pricing structure, sales strategies, customers, and general operations. (Doc. 4 at ¶ 19). TQL entrusted the Former TQL Employees with highly confidential business information and trade secrets, including information on TQL's specialized software, client relationships, pricing, marketing, sales lists, customer lists, motor carrier lists, and business strategy. (*Id.* at ¶ 21). TQL protects its confidential information by, *inter alia*, requiring all of its employees to agree to TQL's Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement ("Agreement"). (*Id.* at ¶ 23). The Former TQL Employees all voluntarily signed the Agreement as a condition of their employment with TQL. (*Id.* at ¶ 24).

By signing the Agreements, the Former TQL Employees agreed to, *inter alia*, retain the secrecy of TQL's confidential information and to use the information only for TQL's benefit, to return to TQL all confidential and company information upon the termination of **[*3]** their employment or upon TQL's request, not to solicit TQL's customers for a period of one year following the termination of employment, not to make use of or disclose TQL's confidential information and/or trade secrets, to refrain from recruiting TQL employees for a period of one year following termination of employment with TQL, and not to compete against TQL or to work for a TQL competitor for a period of one year following termination of employment with TQL. (Doc. 4 at ¶ 25).

After their employment with TQL ended, the Former TQL Employees each joined Covar and began working in a position similar to the one that they held with TQL. (Doc. 4 at ¶ 29).

On November 1, 2017, TQL commenced this action in the State Court. (Doc. 2).

On November 13, 2017, TQL filed a Second Amended Complaint ("Complaint"). (Doc. 4). The Complaint alleges that the Former TQL Employees have been in contact with TQL customers and carriers. (*Id.* at ¶ 32). The Complaint asserts claims of breach of contract and breach of fiduciary duty against the Former TQL Employees and claims of misappropriation of trade secrets, intentional interference with contract, and unfair competition against all Defendants.

In the Complaint, **[*4]** TQL demands temporary, preliminary, and permanent injunctive relief, as well as:
> Compensatory and punitive damages and attorney fees of a maximum cumulative total of $70,000 from each Defendant, individually and severally.

(Doc. 4 at 12).[1]

On November 27, 2017, Defendants removed the case to this Court. (Doc. 1). The Notice of Removal states that amount in controversy exceeds $75,000 and the parties are completely diverse, as TQL is an Ohio limited liability company with Ohio members, Covar is a Florida limited liability company with Florida members, and the Former TQL Employees are residents of Florida. (*Id.* at ¶¶ 2-14).

On December 4, 2017, TQL filed the instant motion to remand, which argues that the amount in controversy is less than the jurisdictional threshold. (Doc. 15).

## II. STANDARD

A party can remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. *28 U.S.C. § 1441(a)*. Generally, where the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, a federal court has jurisdiction to hear the case. *28 U.S.C. § 1332(a)*. The existence of subject matter jurisdiction is determined by examining the complaint as it existed **[*5]** at the time of

---

[1] The State Court initially issued TQL's requested temporary restraining order ("TRO"). This Court denied Plaintiff's request to extend the TRO after removal because it was issued in a manner that would violate the Federal Rules of Civil Procedure. (Doc. 14). The Court is addressing the motion to remand prior to the pending motions for preliminary injunction (Docs. 5, 9) at the parties' oral request.

removal. *Harper v. AutoAlliance Int'l., Inc., 392 F.3d 195, 210 (6th Cir. 2004)*. A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements and must do so by a preponderance of the evidence. *Rotschi v. State Farm Mut. Auto. Ins. Co., Case No. 96-5494, 1997 U.S. App. LEXIS 11771, at * 6 (6th Cir. May 15, 1997)*.

When a defendant does not satisfy its burden of demonstrating that removal was proper, the district court may remand the case back to the state court from which it was removed. *28 U.S.C. § 1447(c)*. "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp., 438 F.3d 544, 549-50 (6th Cir. 2006)* (citation omitted).

**III. ANALYSIS**

**A. Defendants have not established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000**.

TQL argues that the amount-in-controversy requirement is not satisfied because TQL specifically requested "compensatory damages and punitive damages and attorney fees of a maximum cumulative total of $70,000 from each Defendant, individually and severally." (Doc. 15 at 7).[2]

The Court agrees. Generally, the sum claimed by the plaintiff controls. *Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006)*. The Supreme Court has acknowledged that a plaintiff who does not wish to try his claims in federal court "may resort **[*6]** to the expedient of suing for less than the jurisdictional amount, and though he would justly be entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab. Co., 303 U.S. 283, 294, 58 S. Ct. 586, 82 L. Ed. 845 (1938)*. That is precisely what TQL did here. By demanding a "maximum" recovery of less than $75,000, TQL has limited the amount in controversy in this action to below the jurisdictional threshold.

Defendants assert two main arguments in response. First, Defendants argue that TQL has valued its claims at $70,000 per defendant, and accordingly, Covar could potentially be liable for up to $350,000 in damages to TQL for alleged intentional interference with each of the Former TQL Employees' contracts. (Doc. 18 at 5). This argument is not well-taken.

Initially, the Court notes that TQL's demand for a "maximum cumulative total of $70,000 from each Defendant, individually and severally" is ambiguous. It is unclear whether this statement demands a maximum of $70,000 total, or a maximum of $70,000 per each Defendant.[3]

However, assuming *arguendo* that Defendants' interpretation of the demand is the correct one, this argument fails as a matter of law. Claims against individual defendants cannot be "aggregated" to meet the amount-in-controversy requirement unless **[*7]** the defendants are jointly liable for the amount sought. *Fechheimer Bros. Co. v. Barnwasser, 146 F.2d 974, 976 (6th Cir. 1945)*. As the Sixth Circuit explained:

---

[2] TQL does not address the "diversity" requirement of *28 U.S.C. § 1332*. The Court accepts Defendants' assertion that the parties are completely diverse. (Doc. 1 at ¶¶ 2-7).

[3] This ambiguity is likely due to the fact that the Ohio Rules of Civil Procedure, which governed the Complaint at the time it was filed in State Court, prohibit a plaintiff from specifying the exact recovery sought if the amount is more than $25,000. **Ohio R. Civ. P. 8(A)**.

Jurisdiction cannot be conferred on a federal trial court by joining in one action, against distinct defendants, claims of which none reached the requisite jurisdictional amount. *Citizens' Bank v. Cannon, 164 U.S. 319, 322, 17 S. Ct. 89, 41 Led. 451*. The plaintiff is not entitled to secure jurisdiction in the federal court by joining separate defendants whose aggregate indebtedness to him exceeds the jurisdictional amount, unless the test of jurisdiction of joint liability of the defendants to him be met. *Walter v. Northeastern R. Co., 147 U.S. 370, 373, 374, 13 S. Ct. 348, 37 L.Ed. 206*.

*Id.; see also Woodmen of World v. O'Neill, 266 U.S. 292, 295, 45 S. Ct. 49, 69 L. Ed. 293 (1924)* ("in a suit based on diversity of citizenship brought against several defendants to enjoin the collection of claims against the plaintiff which are separate and distinct—although depending for their validity upon a common origin—the test of jurisdiction is the amount of each separate claim, and not their aggregate amount.").

Here, the Complaint does not seek to hold the Defendants jointly liable; to the contrary, it expressly states Defendants are "individually and severally" liable. (Doc. 4 at 12). Accordingly, even if TQL intends to seek $70,000 from each Defendant, the Court cannot aggregate those amounts for purposes of determining the amount **[*8]** in controversy. *Fechheimer Bros., 146 F.2d at 976*.

Second, Defendants argue that TQL's requested injunctive relief, combined with its requested monetary damages, satisfies the amount-in-controversy requirement. This argument is not well-taken.

In valuing injunctive relief for jurisdictional purposes, the Court's focus is on the economic value of the rights which the plaintiff seeks to protect through the requested relief rather than upon the economic cost to the defendant if an injunction were granted. *See Midwest Motor Supply Co. v. Addis, 2006 U.S. Dist. LEXIS 4663, at * 11 (S.D. Ohio Jan. 23 2006)* (Smith, J); *see also Buckeye Recyclers v. Chep United States, 228 F. Supp. 2d 818, 821 (S.D. Ohio 2002)* (Rice, J) (explaining that, in considering the value to be attributed to a claim for injunctive relief, "the better approach is to determine the amount in controversy from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect") (citing *McIntire v. Ford Motor Co., 142 F. Supp. 2d 911, 920 (S.D. Ohio 2001)* (Rice, J))

Here, Defendants argue the value of TQL's requested injunction exceeds the jurisdictional threshold because Defendants' costs of complying with the injunction, including costs involved with Covar terminating the Former TQL Employees and hiring and training their replacements, exceeds $75,000. (Doc. 18 at 6-8). This argument fails because the Court is to consider the value of the injunction to TQL, not **[*9]** Defendants' cost of compliance. *Addis, 2006 U.S. Dist. LEXIS 4663, at * 11*. Defendants—who have the burden of establishing subject matter jurisdiction—have not even attempted to formulate an argument as to what the value of the requested injunction is to TQL.

Further, when the rights the plaintiff seeks to protect with an injunction are the same rights that form the basis of the plaintiff's request for compensatory damages, the Court will not count those rights twice for purposes of determining the amount in controversy. *See Houchens v. Gov't Emples. Ins. Co., Case No. 3:13-cv-00214-Houchens, 2013 U.S. Dist. LEXIS 151245, at *9 (W.D. Ky. Oct. 21, 2013)*.

In *Houchens*, Plaintiffs were injured in a motor vehicle accident, and their insurer (GEICO) denied their claim for no-fault reparation benefits. *2013 U.S. Dist. LEXIS 151245 at **1-2*. Plaintiffs filed suit in state court, demanding, *inter alia*, an injunction and accompanying declaration requiring GEICO to conduct an independent medical examination when contesting a claim for reparation benefits, as well as compensatory damages for GEICO's denial of plaintiffs' claims. *2013 U.S. Dist. LEXIS 151245 at **2-3*. GEICO removed the case to federal court and plaintiffs moved to remand, arguing that GEICO failed to satisfy the amount-in-controversy requirement. *2013 U.S. Dist. LEXIS 151245 at *3*.

The Court explained that the value of plaintiffs' requested injunction **[*10]** was "the amount of reparation benefits [Plaintiffs] claim GEICO illegally denied them" because that was the "object" of the litigation. *2013 U.S. Dist. LEXIS*

151245 at *8. The Court rejected GEICO's argument to aggregate this amount with plaintiffs' request for compensatory damages, because both claims were premised on the same "object:"

> GEICO seeks to aggregate this figure with the amount in controversy relative to Plaintiffs' claims for compensatory damages. However, because the value of Plaintiffs' injunctive and declaratory relief lies exclusively in the amount of reparation benefits that they claim GEICO illegally denied them, the amount in controversy relative to Plaintiffs' injunctive and declaratory relief effectively subsumes any amount in controversy that might be credited to Plaintiffs' claims for compensatory damages. **In other words, GEICO cannot twice count the amount of reparation benefits sought by Plaintiffs in calculating the amount in controversy**.

2013 U.S. Dist. LEXIS 151245 at **10-11.

Here, TQL's claims for monetary damages and injunctive relief seek to protect the exact same "object," TQL's rights in its proprietary information and relationships. TQL has valued those rights at "a maximum cumulative total of $70,000 from each Defendant, **[*11]** individually and severally." (Doc. 4 at 12). Even if Defendants had set forth an argument demonstrating the value of an injunction to TQL—and they did not—the Court would not add that value to TQL's requested monetary damages, as that calculation would inappropriately count the rights at issue in this case twice. Houchens, 2013 U.S. Dist. LEXIS 151245 at **10-11.

Simply put, TQL deliberately demanded less than the jurisdictional threshold, and Defendants have not shown, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Accordingly, the Court **GRANTS** Plaintiff's motion to remand. (Doc. 15).

**B. TQL is not entitled to recoup costs or fees**.

When a district court grants a motion to remand, it may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Defendants argue that, if the Court remands this case, it should not award TQL fees and costs. The Court agrees.[4]

As the Supreme Court of the United States explained, the standard for awarding fees and costs after remanding a removed case "should turn on the reasonableness of the removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Courts may award attorney's fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis **[*12]** for seeking removal." Id. Conversely, "when an objectively reasonable basis exists, fees should be denied." Id.

Here, Defendants' primary argument in support of jurisdiction is that this case satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332 because the cost to Defendants of complying with TQL's requested injunction would exceed $75,000. This is a reasonable position. The Sixth Circuit has recognized that there is a circuit split as to whether a court may value a request for injunctive relief from the perspective of either party, or whether a court may consider only the plaintiff's viewpoint. See Everett v. Verizon Wireless, Inc., 460 F.3d 818, 829 (6th Cir. 2006). While it is "generally agreed" in the Sixth Circuit that the amount in controversy should be determined from the perspective of the plaintiff, the Sixth Circuit has not definitively adopted either position. See Woodmen of the World/Omaha v. Scarbro, 129 Fed. Appx. 194, 195-96 (6th Cir. 2005). The Court cannot conclude that Defendants' basis for removal is objectively unreasonable, and therefore, no costs or fees will be rewarded. Martin, 546 U.S. at 141.

---

[4] TQL did not expressly request fees or costs, or set forth any argument demonstrating its entitlement to either, in its motion to remand.

## IV. CONCLUSION

For the foregoing reasons:

    1. TQL's motion to remand (Doc. 15) is **GRANTED**;

    2. This case is **REMANDED** to the state court from which it was removed;
    3. The parties shall bear their own costs and fees; and

    4. This case is **TERMINATED [\*13]** from the docket of this Court.

**IT IS SO ORDERED**.

Date: 12/22/17

/s/ Timothy S. Black

Timothy S. Black

United States District Judge

---

**End of Document**