Last updated  January 03, 2025   12:18:17 pm GMT

# *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*

United States District Court for the Southern District of Ohio, Western Division

October 14, 2020, Decided; October 14, 2020, Filed

Case No. 1:20-cv-519

**Reporter**
2020 U.S. Dist. LEXIS 190696 *; 2020 WL 6075712

TOTAL QUALITY LOGISTICS, LLC, Plaintiff, v. SUMMIT LOGISTICS GROUP, LLC, et al., Defendants.

**Subsequent History:** Related proceeding at *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC, 2022 U.S. Dist. LEXIS 102052 (S.D. Ohio, June 7, 2022)*

## Core Terms

injunctive relief, damages, removal, amount in controversy, state court, jurisdictional amount, diversity, monetary relief, federal court, attorney's fees, monetary damages, punitive damages, covenants, cases, preponderance, unequivocal, injunction, noncompete, threshold, parties

**Counsel:**  [*1] For Total Quality Logistics, LLC, Plaintiff: John M. Milligan, LEAD ATTORNEY, Keating Muething & Klekamp, Cincinnati, OH; Kasey L Bond, LEAD ATTORNEY, Keating Muething & Klekamp PLL, Cincinnati, OH.

For Summit Logistics Group, LLC, Defendant: Drew Price, LEAD ATTORNEY, Columbus, OH; Shane A. Lawson, LEAD ATTORNEY, Gallagher Sharp LLP, Cleveland, OH; James C. Adams, II, Thomas G. Varnum, PRO HAC VICE, Brooks Pierce, Greensboro, NC.

**Judges:** DOUGLAS R. COLE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DOUGLAS R. COLE

## Opinion

### OPINION AND ORDER

This Cause is before the Court on Plaintiff Total Quality Logistics, LLC's Motion to Remand (the "Motion") (Doc. 11), following Defendant Summit Logistics Group, LLC's ("Summit") removal of this action from state court on July 6, 2020 (Doc. 1). For the reasons below, the Court **GRANTS** Plaintiff's Motion and **REMANDS** this action to state court.

### BACKGROUND

This case began in an Ohio state court when Total Quality Logistics, LLC ("TQL") filed a complaint against its former employee, Nathan C. Ball ("Ball"), and his new employer, Summit, on June 3, 2020. (*See* Complaint, Doc. 3, #25[1] ). Summit removed to this Court and TQL now moves to remand.[2]

---

[1] Refers to PageID Number.

**A. TQL Sues Ball and Summit in State Court.**

This **[*2]** case is one instance of what appears to be a frequently recurring type of business dispute between TQL and some of its former employees—disputes which sometimes end up in federal court, at least for a time. *See, e.g., Total Quality Logistics, LLC v. Franklin, No. 1:19-cv-266, 2020 U.S. Dist. LEXIS 155757, 2020 WL 5051418, (S.D. Ohio Aug. 27, 2020)* (ordering remand); *Total Quality Logistics, LLC v. Alliance Shippers, Inc., No. 1:19-CV-1052, 2020 U.S. Dist. LEXIS 104360, 2020 WL 3166672 (S.D. Ohio June 15, 2020)* (denying remand); *Total Quality Logistics, LLC v. Reed Transport Services, Inc., No. 1:19-cv-182, 2019 U.S. Dist. LEXIS 213291, 2019 WL 6723837 (S.D. Ohio, Dec. 11, 2019)* (ordering remand); *Total Quality Logistics, LLC v. Johnson, No. 1:19-cv-850, 2019 U.S. Dist. LEXIS 185867, 2019 WL 5540682 (S.D. Ohio Oct. 28, 2019)* (ordering remand).

As in those cases, the employee here, Ball, allegedly signed a noncompete agreement with TQL. (*See* Compl., Doc. 3, #27 ¶ 12). Among other things, the agreement prohibited Ball from working with any TQL competitor or recruiting other TQL employees for one year after the end of his employment with TQL. (*Id.* at #27-28 ¶ 13). Ball also agreed to keep confidential any trade secret, proprietary, or otherwise confidential information to which he was exposed while working for TQL. (*Id.* at #28 ¶ 13). In addition, he agreed to pay TQL's attorneys' fees if it had to sue him to enforce the terms of the agreement. (*Id.*). The agreement further provided **[*3]** that the restrictive covenant would be tolled for any amount of time that Ball was violating it. (*Id.* ¶ 14).

Ball worked at TQL from December 4, 2017 until he voluntarily resigned on December 31, 2018. (*Id.* at #27 ¶ 11). TQL later learned that Ball had gone to work for Summit, which TQL alleges is a direct competitor. TQL says Ball began with Summit on or about July 23, 2019—within a year (7 months) after leaving his job at TQL.[3]

Consistent with its past practice regarding other former employees alleged to be violating the noncompete agreement, TQL sued Ball and Summit in Ohio state court to enforce that agreement. And, as in at least some of those other cases, a defendant (here, Summit) removed the case to this Court. TQL has now responded—in what also seems to be its typical fashion—by seeking remand.

**LEGAL STANDARD**

When a defendant removes an action from state court to federal court, the federal court has jurisdiction only if it would have had original jurisdiction over the action. *28 U.S.C. § 1441(a)*. Here, Summit claims this matter falls within the Court's original jurisdiction under *28 U.S.C. § 1332(a)*. For that to be true, two conditions must be met: (1) the parties must be sufficiently diverse; **[*4]** and (2) the amount in controversy must exceed $75,000. *Id.* Removal jurisdiction is assessed based on the facts as they existed at the time of removal. *See Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004)*. When jurisdiction upon removal is uncertain, federal courts must construe the removal statutes strictly, resolving all doubts in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999)*. That makes sense because, if the federal court lacks jurisdiction, that would

---

[2] Summit did not need Ball's consent to remove because, at the time of removal, Ball had not been properly served in state court. *See 28 U.S.C. §1446(b)(2)*; Notice of Removal, Doc. 1, #3 ¶ 9.

[3] The Complaint states that Ball began working for Summit "on or about July 23, 2018." (Complaint, Doc. 3, #28 ¶ 17). But that date is almost certainly off by one year, and should be July 23, 2019, because the Complaint refers to that date as "prior to one year *after* [Ball's] employment with TQL ended." (*Id.* (emphasis added)). And Ball's employment with Summit ended on December 31, 2018 (*Id.* at #27 ¶ 11). Other statements in the parties' papers confirm that reading. For example, in its Notice of Removal, Summit said, in summarizing TQL's allegations, that "Ball subsequently resigned his position with [TQL] and *thereafter* allegedly violated the terms of the Non-Compete Agreement by becoming employed by Summit and taking certain actions as a Summit employee." (Notice of Removal, Doc. 1, #2 ¶ 3 (emphasis added)).

render "any decree in the case void and the continuation of the litigation in federal court futile." *Eastman v. Marine Mech. Corp., 438 F.3d 544, 549-50 (6th Cir. 2006)* (citation omitted). And that serves no one's interests.

**LAW AND ANALYSIS**

**A. This Action Will Be Remanded to State Court Because Summit Has Not Satisfied its Burden Of Proof To Show Federal Jurisdiction**.

As noted, parties asserting federal diversity jurisdiction must make two showings: (1) that the parties are completely diverse; and (2) that the case meets the jurisdictional threshold—above $75,000. It is undisputed that the parties here satisfy the complete diversity requirement. Thus, the amount in controversy requirement is the sole issue in this case.

As a general rule, a plaintiff is the master of his or her own complaint, so a plaintiff wishing to avoid removal can sue in state court for less than the **[*5]** jurisdictional amount, thereby preventing removal even if the parties are diverse. *Heyman v. Lincoln Nat'l Life Ins. Co., 781 F. App'x 463, 469 (6th Cir. 2019)*. Some States, though, including Ohio, make it more difficult for plaintiffs to achieve that objective. That is true in two regards. First, under Ohio civil rules, the only statement that a plaintiff is generally allowed to make regarding alleged damages in a complaint is that the amount sought is more than $25,000, *Ohio Civ. R. 8(A)*, which of course includes amounts both below and above the jurisdictional threshold. Second, even if a plaintiff ignores that stricture, and includes an allegation in the complaint capping the alleged damages (e.g., "plaintiff seeks less than $75,000"), such limitations are not enforceable under Ohio law. The Ohio Civil Rules allow the plaintiff ultimately to recover more than the amount specified. *See Ohio Civ. R. 54(C)*. That is, plaintiffs can recover in an Ohio court more than they allege in their complaints. *Bower v. Am. Cas. Co., Case No. 99-4102, 2001 U.S. App. LEXIS 18053, at *7 (6th Cir. 2001)*; *see also Shankle v. Egner, 2012-Ohio-2027, ¶ 47 (Ohio Ct. App. 2012)* ("*Civ.R. 54* authorizes courts to grant the relief to which a party is 'entitled,' regardless of whether the party has demanded the relief in the pleadings."); *accord Fewell v. Gross, 2007-Ohio-5788, ¶ 32 (Ohio Ct. App. 2007)*. As a result, a defendant facing suit in Ohio court is free to remove an action, even if the Ohio state court complaint **[*6]** purports to cap the amount in controversy below $75,000, so long as the defendant can assert in good faith in its removal papers that the amount in controversy in fact exceeds the jurisdictional threshold. The removal statute puts it this way:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by *section 1332(a)*, the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, *except that— the notice of removal may assert the amount in controversy if the initial pleading seeks ... a money judgment, but the State practice ... permits recovery of damages in excess of the amount demanded*.

*28 U.S.C. § 1446(c)(2)(A)(ii)* (emphasis added).

A plaintiff desiring remand in that situation has two options. First, the plaintiff can respond to the removal by stipulating in the federal court action that the amount in controversy is less than the jurisdictional amount. So long as the stipulation is clear that the plaintiff is not seeking, and will not accept, more than $75,000, that stipulation is binding, and thus deprives the federal court of subject matter jurisdiction.[4] *See Heyman, 781 F. App'x at 469-70*. Second, the plaintiff can move for remand, disputing the allegation in the removal papers regarding **[*7]** the

---

[4] There is an exception to this principle where the stipulation is a reduction in what the plaintiff seeks, rather than a clarification of the amount in controversy. Diversity is measured at the time of removal. Thus, a plaintiff seeking more than $75,000 in a state court action cannot defeat removal by reducing his or her demand, once in federal court, below the jurisdictional amount. *See Heyman, 781 F. App'x at 469-70*. But, as often occurs given the constraints under Ohio civil rules, if the amount claimed in state court is ambiguous with regard to the jurisdictional limit, the plaintiff can clarify that he or she has never sought more than $75,000. That would prevent diversity jurisdiction from attaching and require remand to state court. *Id.*

jurisdictional amount. If the plaintiff opts for this latter course, the defendant, as the party seeking to keep the matter in federal court, then has the burden of showing, by a preponderance of the evidence, that the jurisdictional amount is met. *See* 28 U.S.C. § 1446(c)(2)(B).

The Court applies this well-settled framework to the facts here. To start, consistent with Ohio's rules, TQL specified in its state court Complaint that it was seeking more than $25,000 in compensatory damages, as well as: injunctive relief, punitive damages, attorneys' fees, costs, and "[a]ny other relief that [the state court] deem[ed] just and proper." (*See* Compl., Doc. 3, #34). Summit then filed a Notice of Removal with this Court on the basis of diversity jurisdiction, alleging complete diversity and asserting that the amount in controversy exceeds $75,000. (*See* Notice of Removal, Doc. 1, #3).

TQL thus had two basic options if it wished to direct this case back to state court: (1) provide a proper stipulation clarifying that the relief it sought has a value of $75,000 or less, and that TQL would not accept more than that amount; or (2) dispute the veracity of Summit's assertion about the amount in controversy.[5] Apparently **[*8]** not wanting to leave any stone unturned, TQL opted for *both* approaches: It filed a Motion to Remand in which it disputed Summit's claims about the jurisdictional amount. (*See* Motion to Remand, Doc. 11, #68). And it attached to that Motion a Stipulation that TQL asserted was "unequivocal and binding on [it]." (Stipulation, Doc. 11-1, #78). In that Stipulation, TQL asserted that it was "not seeking, and [would] not accept, damages over $75,000," in aggregate, for economic damages, compensatory damages, punitive damages, attorneys' fees, and all other "forms of potential damages." (*Id.* at #78 ¶ 1).

If TQL were only seeking monetary damages in this action, TQL's stipulation would almost certainly be the end of the matter. It contains the type of unequivocal language limiting damages that the Sixth Circuit and this Court have found sufficient to prevent federal jurisdiction from attaching, including in a previous case involving TQL. *See, e.g.,* Heyman, 781 F. App'x at 470 (collecting cases finding stipulations unequivocal when plaintiff asserts that he will not seek or accept damages over $75,000); Reed Transp. Servs., 2019 U.S. Dist. LEXIS 213291, 2019 WL 6723837, at *7 (holding that a TQL stipulation defeated diversity jurisdiction as the stipulation was expressly binding on TQL and limited **[*9]** "total damages ... to an amount totaling less than $75,000").

But here there is an additional wrinkle. As Summit points out, beyond seeking monetary relief (damages, attorneys' fees, and punitive damages), TQL also seeks injunctive relief. Generally speaking, in suits seeking injunctive relief, the value of that relief also counts toward the jurisdictional limit and is measured by the "the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

That poses a problem for TQL. As TQL explained in its Stipulation, it is seeking *retrospective* "damages in an amount less than $75,000 because the amount of monetary damages suffered by [it]" is "less than 75,000." (Stipulation, Doc. 11-1, #78 ¶ 1). But that does not speak to the value of the *prospective* declaratory and injunctive relief TQL seeks; namely, "a preliminary and permanent injunction prohibiting Defendants from any further violation of the Agreement with TQL." (*Id.* #78 ¶ 2).

Consider, for example, if TQL were awarded damages totaling $74,999 for the period of the alleged violation. It is at least conceivable that the value of a prospective injunction for any remaining non-compete period under the agreement would exceed $1.01, and that the total amount in controversy **[*10]** would thus meet the jurisdictional amount. After all, Ball allegedly went to work for Summit about five months earlier than the agreement permitted, and at least some of the covenants are tolled during the period of the violation. As a result, it is at least possible that there is a substantial amount of time remaining for those covenants, such that an injunction enforcing a future period of noncompetition (if TQL shows it is entitled to such relief) conceivably might provide substantial value to TQL. And that is all aside from the fact that some of the covenants, like the covenant against disclosing confidential

---

[5] TQL has not disputed that the parties are diverse, and the Court is satisfied that, based on the allegations in the Complaint, they are.

information, appear to have no expiration date. (*See* Compl., Doc. 3, #27-28 ¶ 13). Injunctions enforcing those covenants could well have forward-looking value no matter how much time elapses before they are entered.

TQL correctly points out that in at least some cases involving noncompete agreements, courts have concluded that the values of the injunctive and monetary relief sought in such cases are one and the same and that, therefore, assigning any *additional* value to the injunctive relief for diversity purposes, beyond the monetary damages, would amount to unwarranted "double **[*11]** counting." *Total Quality Logistics, LLC v. Covar Transp., No. 1:17-CV-797, 2017 U.S. Dist. LEXIS 210961, 2017 WL 6546617, at \*4 (S.D. Ohio Dec. 22, 2017)*; *Midwest Motor Supply Co. v. Cataldo, No. 2:05-CV-1135, 2006 U.S. Dist. LEXIS 99981, 2006 WL 1133201, at \*3 (S.D. Ohio Apr. 27, 2006)*; *Midwest Motor Supply Co. v. Addis, No. 2:05 CV 0733, 2006 U.S. Dist. LEXIS 4663, 2006 WL 181990, at \*4 (S.D. Ohio Jan. 23, 2006)*. According to such cases, the monetary relief measures what the previous employer would suffer if the noncompete were not enforced—that is, the damages figure essentially reflects the use of monetary damages *as an alternative to* enforcement. But that seems somewhat of an overstatement. To be sure, if the employer's position were that it would accept $75,000 or less as full recovery for *all* damages and *in lieu of* any and all injunctive relief the employer might otherwise receive, that reasoning might work. In such situations, the employer would essentially be pricing the sum of: (1) its damages (including compensatory damages, punitive damages, and attorneys' fees); plus (2) the remainder of its enforcement rights, at a combined aggregate amount lower than the jurisdictional threshold. Where though, as here, the employer could receive (per its Stipulation) slightly less than $75,000 in monetary relief, but then also receive additional value in the form of injunctive relief *on top of that*, things are not so **[*12]** simple. Absent an "unequivocal" statement from TQL limiting the *combined* value of the monetary and injunctive relief to less than the jurisdictional amount, TQL's Stipulation does not prevent this Court's jurisdiction.

Other decisions in this Circuit illustrate one way in which TQL might have addressed this issue in its Stipulation. In particular, a party can include language in its stipulation specifying that the stipulated maximum amount it will accept includes "the fair value of any injunctive relief" that may be awarded. *See, e.g.,* *Jenkins v. Delta Air Lines, Inc., No. 3:18-CV-244-CRS, 2018 U.S. Dist. LEXIS 215861, 2018 WL 6728571, at \*2 (W.D. Ky. Dec. 21, 2018)*; *Emmitt v. Elmington Prop., No. 3:17-CV-00706-GNS, 2018 U.S. Dist. LEXIS 73934, 2018 WL 2011932, at \*2 (W.D. Ky. Apr. 30, 2018)*; *Tankersley v. Martinrea Heavy Stampings, Inc., 33 F. Supp. 3d 775, 776 (E.D. Ky. 2014)*; *Spence v. Centerplate, 931 F. Supp. 2d 779, 780 (W.D. Ky. 2013)*. For example, in *Jenkins*, the stipulation said:

> The amount in controversy in connection with Plaintiff's claims asserted in this case is less than seventy-five thousand dollars ($75,000), inclusive of punitive damages, costs, attorneys' fees, *and the fair market value of any injunctive relief* and that Plaintiff will neither seek nor accept any amount equal to or greater than seventy-five thousand dollars ($75,000), inclusive of punitive damages, costs, attorneys' fees, *and the fair market value of any injunctive relief*.

*2018 U.S. Dist. LEXIS 215861, 2018 WL 6728571, at \*2* (cleaned up) (emphasis added). **[*13]** Under such a stipulation, the value of the injunctive relief is included as one aspect of the capped damages. For example, a determination that the injunctive relief has a value of $25,000 would mean that TQL would not accept more than $50,000 in other forms of monetary relief. By capping the *total* relief, such stipulations settle the matter and preclude jurisdiction.

Here, though, TQL's Stipulation speaks only to the total *monetary* amount that TQL would accept. The Stipulation does not speak at all to the value of the prospective injunctive relief that TQL also seeks. That difference matters. *See* *Total Quality Logistics, LLC v. Grigoryan, No. 1:18cv363, 2019 U.S. Dist. LEXIS 197760, at \*7 (S.D. Ohio Mar. 22, 2019)* (concluding that a TQL Stipulation that expressly limited damages did not also limit any potential injunctive relief).

To be sure, TQL attempted to address this issue in its reply brief in support of remand. There, TQL stated that the total value of the judgment it seeks, "whether monetary or based on the injunctive relief ... shall not exceed $75,000." (TQL Reply Br., Doc. 14, #95). Had TQL included such language in its original Stipulation, that might have worked. But TQL's belated attempt to clarify its clarification arguably runs **[*14]** afoul of at least two rules:

First, a proper stipulation must be the plaintiff's "*first* post-removal statement regarding the amount in controversy." Heyman, 781 F. App'x at 470 (6th Cir. 2019) (emphasis added). And second, a party generally cannot raise new arguments in a reply brief. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008). Thus, the statement in TQL's reply brief does not solve the problem.

Fortunately, though, while the value-of-injunctive-relief issue creates a bit of a tangle, the Court need not unravel it for present purposes, as this case is headed back to state court anyway. Why? Because of the alternate path that TQL pursued in its remand papers—challenging Summit's allegation that the jurisdictional threshold was met. Given TQL's challenge on that front, Summit bears the burden of proving up the jurisdictional amount by a preponderance of the evidence, and Summit has failed to do that here.

Preponderance of the evidence "is not a daunting burden," but it "still requires *evidence*." Warren v. Sheba Logistics, LLC, No. 1:15-cv-148, 2016 U.S. Dist. LEXIS 32097 at *4 (W.D. Ky. Mar. 14, 2016). That evidence can come from many sources, including a fair reading of the complaint if it contains "clear allegations ... that the case involved a sum well in excess of the $75,000 minimum." Crimaldi v. Pitt Ohio Express, LLC, 185 F. Supp. 3d 1004, 1008 (N.D. Ohio 2016); *see also* Total Quality Logistics, LLC v. Franklin, No. 1:19-CV-266, 2020 U.S. Dist. LEXIS 155757, 2020 WL 5051418, at *5 (S.D. Ohio Aug. 27, 2020) **[*15]** (discussing various procedural tools available to a party seeking discovery about the jurisdictional amount). Whatever evidence a party seeking removal might rely on, however, "[m]ere speculation is insufficient." Terry v. Phelps KY Opco, LLC, No. 7:20-cv-23, 2020 U.S. Dist. LEXIS 84850, 2020 WL 2500306, at *2 (E.D. Ky. Apr. 20, 2020) (citations omitted). Rather, the party must adduce "competent proof that shows the amount in controversy requirement is satisfied." *Id.*

Summit offers the Court nothing but "[m]ere speculation" as to the jurisdictional amount. *Id.* Its entire basis for removal boils down to its argument that TQL's Stipulation only limits the amount of monetary damages, and not the injunctive relief, that TQL seeks. Thus, Summit argues, "a court in this case could *potentially* grant TQL injunctive relief on its claims to remedy future conduct and also grant monetary damages totaling $75,000 to remedy past conduct." (Summit's Resp. Br., Doc. 13, #89-90 (emphasis added)). As already discussed, the Court is inclined to agree with Summit on that score.

But that argument is not enough. At the end of the day, Summit must also provide "at least some evidence" that the amount in controversy in this case exceeds $75,000. Miller v. Malik, No. Civ. 11-74, 2011 U.S. Dist. LEXIS 79946, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) (Thapar, **[*16]** J.). Yet Summit offered no evidence to that end. That is perhaps because, as its briefing suggests, Summit apparently (and incorrectly) thought it was TQL's burden to make that showing. (*See* Summit's Resp. Br., Doc. 13, #89-90 ("TQL has fallen well short of meeting its burden of showing *unequivocally* that, all things considered, the full amount in controversy does not exceed $75,000.")).

Whatever the reason, the only evidence the Court is left with is TQL's Complaint and TQL's Stipulation. Taken together, those two filings show that TQL is seeking total monetary relief of some amount *less than* $75,000, plus injunctive relief with some unspecified value. Thus, Summit was free to present evidence showing that the combined amount of the monetary relief plus the value of the injunctive relief is *above* $75,000. In doing so, Summit could have sought to show by a preponderance that the monetary relief at issue here is any amount less than $75,000 (it could not argue for a higher amount, no matter the evidence, given TQL's stipulation that TQL would not accept a higher amount). And it could then have offered evidence ascribing some value to the injunctive relief that TQL is seeking (which Summit **[*17]** would again need to substantiate by a preponderance). But Summit never took a stab at either part of that.

Given that the record contains no evidence on either front, the Court finds that the amount in controversy is at best uncertain. And it is black letter law that "[a]ll doubts as to the propriety of removal are resolved in favor of remand." Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). The Court therefore sends this case back to the state court from which it came.

Accordingly, the Court **GRANTS** Plaintiff's Motion (Doc. 11) and **REMANDS** this action to the Court of Common Pleas for Clermont County, Ohio. And the Court **DENIES WITHOUT PREJUDICE** as moot Summit's pending Motion to Dismiss (Doc. 9), consideration of which the Court had stayed pending the resolution of Plaintiff's Motion.

**SO ORDERED**.

October 14, 2020

**DATE**

/s/ Douglas R. Cole

**DOUGLAS R. COLE**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**