**IN THE COURT OF COMMON PLEAS**
**CLERMONT COUNTY, OHIO**

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC, <br> 4289 Ivy Pointe Boulevard <br> Cincinnati, OH 45245 <br><br> Plaintiff, <br><br> v. <br><br> REED TRANSPORT SERVICES, INC. <br> d/b/a REED TMS LOGISTICS, <br> c/o Mark W. Reed, Registered Agent for <br> Service of Process <br> 615 S. Ware Blvd. <br> Tampa, FL 33619 <br><br> and <br><br> JOHN C. TILLMAN, <br> 37847 Prairie Rose Loop <br> Zephyrhills, FL 33542 <br><br> and <br><br> JEFFREY R. MOTLEY, <br> 1914 W. North A St., Apt. A <br> Tampa, FL 33606 <br><br> Defendants. | Case No. **JUDGE McBRIDE** <br> Judge: _____ <br><br> 2019 CVH 00116  JUDGE MCBRIDE <br><br> **VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND OTHER RELIEF** <br><br> 2019 JAN 29 PM 1:13  FILED |

For its Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief against Defendants Reed Transport Services, Inc. d/b/a Reed TMS Logistics ("Reed Transport"), John C. Tillman ("Tillman"), and Jeffrey R. Motley ("Motley"), Plaintiff Total Quality Logistics, LLC ("TQL") states as follows:

**Introduction**

Attachment 1

1. This case arises from the breach of certain, contractual restrictive covenants contained in signed and enforceable agreements between TQL and Tillman and between TQL and Motley (Tillman and Motley will collectively be referred to as "the Individual Defendants"), respectively, and Reed Transport's conduct and complicity in connection therewith.

### Parties, Jurisdiction, and Venue

2. TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

3. Reed Transport is a Florida corporation with its principal place of business located in Tampa, Florida with several offices across the country including in Ohio. Reed Transport is a freight brokerage and a direct competitor of TQL.

4. Tillman is a Florida resident. He was previously a TQL employee and is now an employee of Reed Transport.

5. Motley is a Florida resident. He was previously a TQL employee and is now an employee of Reed Transport.

6. Jurisdiction and venue are appropriate because each individual Defendant contractually agreed to venue and jurisdiction in this Court, and all improper acts and conduct were purposely directed against an Ohio company located in Clermont County.

### Facts

**A. The Nature of TQL's Business and the Logistics Industry**

7. TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States.

2

8. TQL's customers consist of companies that want to ship goods from one location to another. These customers include companies that need to ship their own goods. But many of TQL's customers also include other freight brokers that have already agreed to ship goods on behalf of another customer, but need assistance in finding a carrier to fulfill the shipment.

9. TQL does not own, operate, or lease any of its own trucks or trucking equipment. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent carriers that are able and willing to haul freight at the times and places required by TQL's customers.

10. The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Among other things, relationships with customers, carriers, and other brokers are essential to sustained success within the industry. TQL spends a great deal of time, money, and other resources developing relationships with new customers and strengthening relationships with existing ones. Further, TQL has made substantial investments to develop and protect the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to succeed in this hyper-competitive industry.

11. Further, TQL protects its trade secrets and confidential information by conditioning employee access upon use of constantly changing passwords and requiring all employees to sign agreements that include confidentiality and restrictive covenant provisions. Likewise, TQL's systems implement internal controls that prevent employees from downloading or printing certain information.

B. **The Individual Defendants' Employment with TQL**

    (i) **Tillman**

12. Tillman worked at TQL from October 9, 2017 until July 31, 2018.

3

13. Before commencing employment with TQL, he was required to sign, and did sign, a Confidentiality Agreement and Restrictive Covenant (the "Tillman Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

14. In the Tillman Agreement, Tillman agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Tillman also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Tillman contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Tillman to enforce the terms of the Tillman Agreement.

15. The Tillman Agreement provides that, for any time during which Tillman is in violation of the restrictive covenant described in Paragraph 14, such restrictive covenant is tolled until such violation ceases.

16. While at TQL, Tillman held the positions of Logistics Account Executive Trainee, Logistics Account Executive, and Sales Assistant.

17. TQL provided Tillman with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Tillman developed close relationships with and an intimate knowledge of certain TQL customers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

18. TQL recently learned that Tillman has been working for Reed Transport in a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended. Upon information and belief, Tillman

4

has solicited TQL customers or carriers, disclosed confidential TQL information, and/or otherwise unfairly competed with TQL. Given that he has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct will continue.

(ii) **Motley**

19. Motley worked for TQL from January 1, 2017 until August 1, 2017.

20. Before commencing employment with TQL, he was required to sign, and did sign, a Confidentiality Agreement and Restrictive Covenant (the "Motley Agreement," and together with the Tillman Agreement, the "Agreements"), a true and accurate copy of which is attached hereto as **Exhibit B** and is incorporated herein by reference.

21. In the Motley Agreement, Motley agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Motley also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Motley contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Motley to enforce the terms of the Motley Agreement.

22. The Motley Agreement provides that, for any time during which Motley is in violation of the restrictive covenant described in Paragraph 21, such restrictive covenant is tolled until such violation ceases.

23. While at TQL, Motley held the positions of Logistics Account Executive Trainee and Logistics Account Executive.

24. TQL provided Motley with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Motley developed close

relationships with and an intimate knowledge of certain TQL customers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

25. TQL recently learned that Motley has been working for Reed Transport in a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended. Upon information and belief, Motley has solicited TQL customers or carriers, disclosed confidential TQL information, and/or otherwise unfairly competed with TQL. Given that he has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct will continue.

C. **Reed Transport's Knowledge of Contractual Violations**

26. Upon information and belief, Reed Transport decided to employ Tillman and Motley despite knowledge of the restrictive covenants contained in the Agreements with TQL and the other covenants and obligations therein. Upon further information and belief, Tillman and Motley are breaching and have breached their respective Agreements with TQL, including but not limited to the non-compete provision, the prohibitions against soliciting TQL customers, and the prohibitions against disclosing or using TQL's confidential and trade secret information. Reed Transport, upon information and belief, is knowingly encouraging the Individual Defendants to engage in conduct that violates the terms of the Agreements.

### COUNT ONE: BREACH OF CONTRACT
(Asserted against Tillman)

27. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

28. The Agreement attached hereto as Exhibit A is a valid and legally enforceable contract that TQL and Tillman entered into freely and without duress.

6

29. In exchange for his commitment to be bound by the Agreement, Tillman received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

30. The Tillman Agreement in Section 9 provides for a one-year period following employment during which Tillman is prohibited from accepting employment or affiliation or association with a TQL competitor, of which Reed Transport is one. Section 9 also provides for the tolling of that one-year period "during any time period during which [Tillman] violates any provision of this Agreement."

31. Tillman has breached and continues to breach the Tillman Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of one of TQL's direct competitors, and, upon information and belief, has used or disclosed TQL's confidential information, solicited its customers, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

32. Unless immediately restrained and enjoined, Tillman will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

33. Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Sections 10(a) and 11(a) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Tillman from any further violation of the Tillman Agreement.

34. In the alternative and/or addition to such relief, as a direct and proximate result of Tillman's breach and continuing breach of the Tillman Agreement, TQL has suffered monetary

7

damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

35. Pursuant to Sections 10(b) and 11(b) of the Tillman Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Tillman's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

### COUNT TWO: BREACH OF CONTRACT
(Asserted against Motley)

36. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

37. The Motley Agreement attached hereto as Exhibit B is a valid and legally enforceable contract that TQL and Motley entered into freely and without duress.

38. In exchange for his commitment to be bound by the Motley Agreement, Motley received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

39. The Motley Agreement in Section 9 provides for a one-year period following employment during which Motley is prohibited from accepting employment or affiliation or association with a TQL competitor, of which Reed Transport is one. Section 9 further provides for the tolling of that one-year period "during any time period during which [Motley] violates any provision of this Agreement."

40. Motley has breached and continues to breach the Motley Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of one of TQL's direct competitors, and upon information and belief used or disclosed TQL's

8

confidential information, solicited its customers, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

41. Unless immediately restrained and enjoined, Motley will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

42. Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Sections 10(a) and 11(a) of the Motley Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Motley from any further violation of the Motley Agreement.

43. In the alternative and/or addition to such relief, as a direct and proximate result of Motley's breach and continuing breach of the Motley Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

44. Pursuant to Sections 10(b) and 11(b) of the Motley Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Motley's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

### COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS
(Asserted against Tillman)

45. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

46. The confidential TQL information identified above are TQL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*

47. Tillman also acknowledged in Section 4(e) of the Tillman Agreement that the confidential TQL information identified above, *inter alia*, constitutes TQL's trade secrets.

9

48. This information derives independent economic value by not being readily known or ascertainable through proper means by other persons who can obtain economic value from its disclosure or use—namely, TQL's competitors.

49. TQL has spent much time over many years and invested significant sums, in terms of both financial and human resources, to develop and maintain this information.

50. This information is the subject of reasonable efforts by TQL to maintain its secrecy, including conditioning employee access it is system upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring all employees to agree sign an agreement containing confidentiality and restrictive covenant provisions similar to those included in the Tillman Agreement.

51. Tillman's misconduct and wrongful taking of this information constitutes misappropriation under the Ohio Uniform Trade Secrets Act because he has used, threatened to use, and inevitably will use this information as a Business Development Representative of Reed Transport.

52. At the time Tillman misappropriated TQL's trade secrets, he knew he acquired those trade secrets by improper means, and had clear knowledge that he only had access to the protected information under circumstances giving rise to a duty maintain the information's secrecy.

53. As a result of Tillman's misappropriation of trade secrets, TQL has suffered and will continue to suffer damages, loss of competitive position, and irreparable harm as a result of Tillman's use of the information to directly compete with TQL.

### COUNT FOUR: MISAPPROPRIATION OF TRADE SECRETS
(Asserted against Motley)

54. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

55. The confidential TQL information identified above are TQL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*

56. Motley also acknowledged in Section 4(e) of the Motley Agreement that the confidential TQL information identified above, *inter alia*, constitutes TQL's trade secrets.

57. This information derives independent economic value by not being readily known or ascertainable through proper means by other persons who can obtain economic value from its disclosure or use—namely, TQL's competitors.

58. TQL has spent much time over many years and invested significant sums, in terms of both financial and human resources, to develop and maintain this information.

59. This information is the subject of reasonable efforts by TQL to maintain its secrecy, including conditioning employee access it is system upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring all employees to agree sign an agreement containing confidentiality and restrictive covenant provisions similar to those included in the Motley Agreement.

60. Motley's misconduct and wrongful taking of this information constitutes misappropriation under the Ohio Uniform Trade Secrets Act because he has used, threatened to use, and inevitably will use this information as a Carrier Sales Specialist of Reed Transport.

61. At the time Motley misappropriated TQL's trade secrets, he knew he acquired those trade secrets by improper means, and had clear knowledge that he only had access to the protected information under circumstances giving rise to a duty maintain the information's secrecy.

11

62. As a result of Motley's misappropriation of trade secrets, TQL has suffered and will continue to suffer damages, loss of competitive position, and irreparable harm as a result of Motley's use of the information to directly compete with TQL.

### COUNT FIVE: TORTIOUS INTERFERENCE WITH CONTRACT
(Asserted Against Reed Transport)

63. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

64. TQL has separate contractual relationships with Tillman and Motley.

65. Reed Transport is aware of these contractual relationships.

66. Despite this knowledge, Tillman has knowingly and intentionally interfered with these contractual relationships, and continues to do so, by employing Tillman and Motley, in violation of their respective Agreements with TQL.

67. Reed Transport has tortiously, willfully, and maliciously ignored the contractual obligations that the Individual Defendants each owe to TQL, without any justifiable excuse.

68. As a proximate result of Reed Transport's conduct, TQL has suffered, and will continue to suffer, damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

69. Because Reed Transport's conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

### COUNT FIVE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
(Asserted Against Reed Transport)

70. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

71. The foregoing conduct of Reed Transport constitutes tortious interference with TQL's business relations with its clients.

72. Reed Transport knew that TQL had a reasonable expectation of continuing its business relations with its clients, and nevertheless used improper means to damage or cause the severance of such relations, including, without limitation by inducing the Individual Defendants' breach of the Agreements.

73. Reed Transport lacked any justification or privilege to act in the manner described above.

74. Upon information and belief, Reed Transport's wrongful conduct is continuing.

75. As a consequence of the foregoing, TQL has suffered and will continue to suffer irreparable harm and loss.

## PRAYER FOR RELIEF

**WHEREFORE**, TQL respectfully requests that this Court issue a judgment as follows:

a) Issue immediate, preliminary, and permanent injunctive relief prohibiting the Individual Defendants from any further violation of their Agreements with TQL, plus attorney's fees as provided in the Agreements;

b) Issue immediate, preliminary, and permanent injunctive relief prohibiting Reed Transport from further tortiously interfering with TQL's contractual or business relations;

c) Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000.00;

d) Award punitive damages in favor of TQL in an amount to be determined at trial;

e) Award attorney's fees as provided in the Agreements or as otherwise provided by law;

f) Court costs, prejudgment interest, and post-judgment interest; and

g) Any other relief that this Court deems just and proper.

Respectfully Submitted,

*Matthew J. Wiles*

Matthew J. Wiles (0075455)
Jordan D. Rauch (0093389)
DICKINSON WRIGHT PLLC
150 E. Gay Street, 24th Floor
Columbus, Ohio 43215
Telephone: (614) 744-2570
mwiles@dickinsonwright.com
jrauch@dickinsonwright.com

*Attorneys for Plaintiff Total Quality Logistics, LLC*

14

**VERIFICATION OF COMPLAINT**

STATE OF OHIO )

COUNTY OF CLERMONT )

I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

Marc Bostwick

Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 28th day of January, 2019.

Notary Public

COLUMBUS 81774-22 105970v1



KELLY A. PIERRO
Notary Public, State of Ohio
My Commission Expires
July 22, 2023

15