IN THE COURT OF COMMON PLEAS
CLERMONT COUNTY, OHIO

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC, <br> 4289 Ivy Pointe Boulevard <br> Cincinnati, OH 45245 <br><br> Plaintiff, <br><br> -v- <br><br> SUMMIT LOGISTICS GROUP, LLC <br> 5911 Oleander Drive Suite 201 <br> Wilmington, NC 28403 <br><br> **Serve On**: David Gary Sholar <br> Registered Agent <br> PO Box 596 <br> Wallace, North Carolina 28466 <br><br> and <br><br> NATHAN C. BALL <br> 1301 York St. <br> Evans, Georgia 30809 <br><br> Defendants. | 2020 CVH 00485 JUDGE BROCK <br> Case No. _____ <br><br> Judge: <br><br><br><br><br><br> **VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND OTHER RELIEF** <br><br> 2020 JUN -3 PM 12:10 <br> BARBARA A. WIEDERHEIN <br> CLERK OF COMMON PLEAS COURT <br> CLERMONT COUNTY, OH <br> FILED |

For its Verified Complaint for Preliminary Injunction, Permanent Injunction, and Other Relief against Defendants Summit Logistics Group, LLC ("Summit") and Nathan C. Ball ("Ball"), Plaintiff Total Quality Logistics, LLC ("TQL") states as follows:

**INTRODUCTION**

1. This case arises from the breach of certain contractual restrictive covenants contained in a signed and enforceable agreement between TQL and Ball, and Summit's conduct and complicity in connection therewith.

Attachment 2

## PARTIES, JURISDICTION, AND VENUE

2. TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

3. Upon information and belief, Summit is a North Carolina limited liability company with its principal place of business located in Wilmington, North Carolina with brokers operating across North America. Summit received its authorization to provide freight brokerage and logistics services on November 18, 2016, and is a direct competitor of TQL.

4. Upon information and belief, Ball is a Georgia resident. He was previously a TQL employee and is now an employee of Summit in the same or similar capacity.

5. Jurisdiction and venue are appropriately established herein as Ball contractually agreed to venue and jurisdiction in this Court, and all improper acts and conduct were purposely directed against an Ohio company located in Clermont County, Ohio.

## FACTS

**A. The Nature of TQL's Business and the Logistics Industry**

6. TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States.

7. TQL's customers consist of companies that want to ship goods from one location to another. These customers include companies that need to ship their own goods. In addition, many of TQL's customers also include other freight brokers that have already agreed to ship goods on behalf of another customer, but need assistance in finding a carrier to fulfill the shipment.

8. TQL does not own, operate, or lease any of its own trucks or trucking equipment. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent

carriers that are able and willing to haul freight at the times and places required by TQL's customers.

9. The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Among other things, relationships with customers, carriers, and other brokers are essential to sustained success within the industry. TQL spends a great deal of time, money, and other resources developing relationships with new customers and strengthening relationships with existing ones. Further, TQL has made substantial investments to develop and protect the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to succeed in this hyper-competitive industry.

10. Further, TQL protects its trade secrets and confidential information by conditioning employee access upon use of constantly changing passwords and requiring all employees to sign agreements that include confidentiality and restrictive covenant provisions. Likewise, TQL's systems implement internal controls that prevent employees from downloading or printing certain information. TQL takes the security of its confidential and competitive information extraordinarily serious.

**B.  Ball's Employment with TQL**

11. Ball worked at TQL from December 4, 2017 until December 31, 2018, when he voluntarily resigned.

12. Before commencing employment with TQL, Ball was required to sign, and did sign, an "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement" (the "Agreement"), containing several enforceable restrictive covenants, a true and accurate copy of which is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

13. In the Agreement, Ball agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL

customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Ball also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally, Ball contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Ball to enforce the terms of the Agreement.

14. The Agreement provides that, for any time during which Ball is in violation of the restrictive covenant described in Section 9(b), such restrictive covenant is tolled until such violation ceases.

15. While at TQL, Ball held the positions of Logistics Account Executive Trainee and Logistics Account Executive (collectively, "Broker"), thereby advancing through the company's comprehensive training. He worked in TQL's Greensboro, North Carolina office.

16. TQL provided Ball extensive training on topics that included its services, pricing structure, marketing, sales strategies, customers, and general operations. Ball developed close relationships with and an intimate knowledge of certain TQL customers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

17. TQL recently learned Ball has been working for Summit in a position that is the same as, or substantially similar to, his position at TQL, and that such employment began on or about July 23, 2018, which is prior to one year after his employment with TQL ended. While at Summit, Ball has solicited at least two TQL customers known to him through TQL's Greensboro, NC office, used and disclosed confidential TQL information, and/or otherwise unfairly competed with TQL. Given that he has assumed a similar, if not the same, role that he had while working

with TQL, it is inevitable that this unlawful conduct will occur/continue absent a permanent injunction.

**C.** **Summit's Knowledge of Contractual Violations**

18. Upon information and belief, Summit decided to employ Ball despite knowledge of the restrictive covenants contained in the Agreement with TQL and the other covenants and obligations therein. Despite being specifically informed by TQL of the Agreement and restricted covenants contained therein, Summit continues to employ Ball in violation of the Agreement. Upon further information and belief, Ball has breached and continues to breach his Agreement with TQL, including but not limited to, the non-compete provision, the prohibitions against soliciting TQL customers, and the prohibitions against disclosing or using TQL's confidential and trade secret information. Summit, upon information and belief, is knowingly encouraging Ball to engage in conduct that violates the terms of the Agreement and has failed to protect TQL's legitimate business interests and contractual relationship despite being informed of the same by TQL. Summit has also previously employed at least one other former TQL employee in violation of his Agreement with TQL.

## COUNT ONE: BREACH OF CONTRACT
### (Asserted against Ball)

19. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

20. The Agreement attached hereto as Exhibit "A" is a valid and legally enforceable contract that TQL and Ball entered into freely and without duress.

21. In exchange for his commitment to be bound by the Agreement, Ball received adequate and sufficient consideration, including, without limitation, employment, extensive training, and access to TQL's confidential information to assist with his professional development.

22. Section 9 of the Agreement provides for a one-year period following employment during which Ball is prohibited from accepting employment, affiliation, or association with a TQL competitor, of which Summit is one. Section 9 also provides for the tolling of that one-year Restricted Period, which, "[s]hall not include any period(s) of violation or period(s) of time required for litigation to enforce the covenants contained in this Agreement."

23. Ball has breached and continues to breach the Agreement by virtue of the fact that he has accepted and maintains employment in the same or a similar position with one of TQL's direct competitors, and, has used or disclosed TQL's confidential information, solicited for business at Summit at least two TQL customers known to him through TQL's Greensboro, NC office, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

24. Unless immediately enjoined, Ball will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

25. Therefore, consistent with this Verified Complaint and pursuant to the parties' agreement in Section 9(e) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief, enjoining Ball from any further violation of the Agreement for a period of one year following the Court's Order.

26. In the alternative and/or addition to such relief, as a direct and proximate result of Ball's breach and continuing breach of the Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

27. Pursuant to Section 9(e) of the Ball Agreement, TQL is also entitled independently to recover the attorney's fees, costs, and expenses expended as a result of Ball's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

### COUNT TWO: MISAPPROPRIATION OF TRADE SECRETS
(Asserted against Ball and Summit)

28. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

29. The confidential TQL information identified above are TQL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, et *seq.*

30. Ball also acknowledged in the Agreement that the confidential TQL information he would receive during his employment constitutes TQL's trade secrets.

31. Upon information and belief, Summit knew that Ball was subject to the Agreement.

32. This information derives independent economic value by not being readily known or ascertainable through ordinary means by other persons who can obtain economic value from its disclosure or use—namely, TQL's competitors.

33. TQL has spent significant time over many years and invested considerable sums, in terms of both financial and human resources, to develop and maintain this information.

34. This information is the subject of reasonable efforts by TQL to maintain its secrecy, including conditioning employee access to its systems upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring all employees to agree to sign an agreement containing confidentiality and restrictive covenant provisions similar to those included in the Agreement.

35. At the time Ball and Summit misappropriated TQL's trade secrets, they knew they acquired those trade secrets by improper means, and had clear knowledge that they only had access to the protected information under circumstances giving rise to a duty to maintain the information's secrecy.

36. Ball's and Summit's misconduct and wrongful taking of this information constitutes misappropriation under the Ohio Uniform Trade Secrets Act because they have used or disclosed, threatened to use or disclose, and inevitably will use or disclosure this information for their benefit.

37. As a result of Ball's and Summit's misappropriation of trade secrets, TQL has suffered and will continue to suffer damages, loss of competitive position, and irreparable harm..

38. Because Ball's and Summit's conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

### COUNT THREE: TORTIOUS INTERFERENCE WITH CONTRACT
(Asserted against Summit)

39. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

40. TQL has a contractual relationship with Ball.

41. Summit is aware of this contractual relationship and Ball's restrictive covenants included therein.

42. Despite this knowledge, Summit has knowingly and intentionally interfered with this contractual relationship, and continues to do so, by employing Ball, in violation of his Agreement with TQL.

43. Summit has tortiously, willfully, and maliciously ignored the contractual obligations that Ball owes to TQL, without any justifiable excuse.

44. As a proximate result of Summit's conduct, TQL has suffered, and will continue to suffer, irreparable harm and/or damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

45. Because Summit's conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

### COUNT FOUR: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Asserted against Summit and Ball)

46. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

47. The foregoing conduct of Summit and Ball constitutes tortious interference with TQL's business relations with its clients.

48. Summit and Ball knew TQL had a reasonable expectation of continuing its business relations with its clients, and nevertheless used improper means to damage or cause the severance of such relations, including, without limitation, by inducing Ball's breach of the Agreement.

49. Summit and Ball lacked any justification or privilege to act in the manner described above.

50. Upon information and belief, Defendants' wrongful conduct is continuing.

51. As a proximate result of the foregoing, TQL has suffered, and will continue to suffer, irreparable harm and/or damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

### PRAYER FOR RELIEF

**WHEREFORE**, TQL respectfully requests that this Court issue a judgment as follows:

a) Issue immediate, preliminary, and permanent injunctive relief prohibiting Ball from any further violation of his Agreement with TQL, plus attorney's fees as provided in the Agreement; and,

b) Issue immediate, preliminary, and permanent injunctive relief prohibiting Summit and/or Ball from further tortiously interfering with TQL's contractual or business

relations; and,

c) Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000.00; and,

d) Award punitive damages in favor of TQL in an amount to be determined at trial; and,

e) Award attorney's fees as provided in the Agreement or as otherwise provided by this Court; and,

f) Award court costs, prejudgment interest, and post-judgment interest; and

g) Any other relief that this Court deems just and proper.

Respectfully submitted,

KEATING MUETHING & KLEKAMP PLL

By: *Kasey Bond*
Kasey L. Bond (0078508)
John M. Milligan (0089385)
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
kbond@kmklaw.com
jmilligan@kmklaw.com

Attorneys for Plaintiff
TOTAL QUALITY LOGISTICS, LLC

Dated: June 3, 2020

9996954.2

**VERIFICATION OF COMPLAINT**

STATE OF OHIO )

COUNTY OF CLERMONT )

I, MARC BOSTWICK, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

*Marc K. Bostwick*
Marc Bostwick

Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 1 day of June, 2020.

*Lindsay Sadlowski*
Notary

Lindsay Sadlowski, Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC

9998661.1