DEC/06/2018/THU 09:38 AM    CLERK OF COURTS        FAX No. 513 732 7050        P. 001

## IN THE COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

**JUDGE BROCK**

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC, ) | Case No.: _____ |
| 4289 IVY POINTE BLVD. : | |
| CINCINNATI, OHIO, 45245, ) | Judge _____ 2018 CVH 01560 JUDGE BROCK |
| : | |
| Plaintiff, ) | |
| : | |
| . v. ) | **VERIFIED COMPLAINT FOR** |
| : | **INJUNCTIVE RELIEF AND DAMAGES** |
| MR. JERRY LEE FRANKLIN ) | |
| 1952 E SPINEL LINK APT 6 : | |
| FAYETTEVILLE, AR 72701, ) | |
| : | |
| and ) | |
| : | |
| CASESTACK, INC. ) | |
| 3000 OCEAN PARK BOULEVARD : | |
| SUITE 1000 ) | |
| SANTA MONICA, CA. 90405 : | |
| ) | |
| DEFENDANTS. : | |

The Plaintiff, Total Quality Logistics, LLC ("TQL"), for its Verified Complaint for

injunctive and other relief against the Defendants, Jerry Lee Franklin ("Mr. Franklin") and

CaseStack, Inc. ("CaseStack"), states as follows:

### NATURE OF THE ACTION

1.      Mr. Franklin worked for TQL and continues to be bound to TQL by way of

restrictive covenants contained in the Employee Non-Compete, Confidentiality and Non-

Solicitation Agreement ("Agreement") signed by Mr. Franklin before joining TQL. (*See,*

Agreement, attached as Exhibit 1).

2.      Mr. Franklin now competes with TQL in violation of the Agreement in his work

for a TQL competitor, CaseStack, as a "Client Development Associate (CDA)" for CaseStack.

That fact and other intentional acts of the Defendants set forth herein constitute breach of

Attachment 3

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 2 of 25 PAGEID #: 281

DEC/06/2018/THU 09:38 AM   CLERK OF COURTS        FAX No. 513 732 7050         P. 002
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 2 of 25 PAGEID #: 336

contract, tortious interference, and misappropriation of trade secrets for which TQL seeks injunctive relief, compensatory damages, and the recovery of attorney fees incurred.

## PARTIES, JURISDICTION, AND VENUE

3. TQL is an Ohio limited liability company with its principal place of business at 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

4. Mr. Franklin is a Tennessee resident and was employed by TQL from June 19, 2017 to May 31, 2018. Mr. Franklin worked in TQL's Fayetteville, Arkansas offices. Mr. Franklin resides at the address in the caption.

5. Mr. Franklin now works for CaseStack, Inc. as a Client Development Associate ("CDA")

6. CaseStack is, on information and belief, a corporation organized and existing under the laws of the State of California. CaseStack' principal place of business is located in Santa Monica, Ca. CaseStack conducts business in a number of states including Ohio.

7. This Court has jurisdiction over the parties.

8. Mr. Franklin contractually consented to this Court's jurisdiction and intentionally caused tortious injury in Ohio to TQL, an Ohio company located in Clermont County, Ohio.

9. CaseStack conducts business in Ohio and maintains an office in Cincinnati, Ohio at 250 East 5th Street. (*See, https://ww2.casestack.com/offices.html*)

10. CaseStack's website further states that it places "nearly one million shipments per year" and provides "an array of worldwide transportation management services." (*See, https://ww2.casestack.com/transportation.html*).

2

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 3 of 25 PAGEID #: 282

DEC/06/2018/THU 09:38 AM    CLERK OF COURTS         FAX No. 513 732 7050           P. 003
                Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 3 of 25 PAGEID #: 337

11.    CaseStack intentionally caused tortious injury in Ohio by interfering in TQL's Agreement with Mr. Franklin as described below.

12.    Venue is proper in this Court pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure. Mr. Franklin contractually consented to this Court's jurisdiction and the intentional acts of CaseStack and Mr. Franklin have harmed TQL in Clermont County, Ohio.

## FACTS

13.    TQL is one of the largest third-party logistics companies in the United States and operates in the highly competitive freight brokerage industry. TQL provides freight brokerage services, third-party logistics services, truck brokerage services, and assistance with supply-chain management throughout the United States. TQL has operated as a federally authorized freight broker since 1997.

14.    TQL's customers are companies that want to ship goods from one location to another. Included among these customers are companies that want to ship their own goods and other freight brokers who already agreed to ship goods on behalf of another customer but need assistance finding a carrier to fulfill the shipment.

15.    TQL does not own, operate, or lease any of its own trucks or trucking equipment. Nor does it employ any drivers to haul freight. Rather, TQL engaged and coordinates independent motor carriers that are able and willing to haul freight at the times and places required by TQL customers.

16.    CaseStack is a competitor of TQL. CaseStack provides freight brokerage services across the United States. Since 2010, CaseStack has held active freight brokerage licensure through the U.S. Department of Transportation's Federal Motor Carrier Safety Administration under Docket Number MC00730963.

3

17. The third-party logistics industry and the freight-shipping industry in general is extremely competitive. Relationships with customers, carriers, and other brokers are critical to success within the industry.

18. TQL spends significant amounts of time, money, and other resources to develop relationships with new customers and strengthen relationships with existing customers. TQL has also made substantial investments in developing and protecting the secrecy of its proprietary systems, processes, and procedures that it uses to manage its operations and to compete in the competitive logistics and freight industry.

19. TQL takes significant measures to protect its trade secrets, customer relationships, and other confidential information. For example, before beginning employment at TQL, all freight brokers, as well as many other types of employees, must sign restrictive covenants that restrict their ability to compete with TQL, to solicit TQL's customers or employees, or to disclose or misuse TQL's confidential information.

20. TQL utilizes individualized passwords that must be routinely changed, for electronic access to its proprietary and confidential information. TQL employs internal system controls to prevent employees from downloading, physically removing and printing certain information, as well as keycards and badges for entry to its offices.

21. Mr. Franklin sought employment with TQL, was hired in June 2017, and became a Logistics Account Executive ("LAE") for TQL. LAEs are also called "Brokers."

22. TQL provided Mr. Franklin with extensive training on TQL's strategies and methods to succeed within the industry, including, without limitation, training on TQL's services, customers, pricing structure, sales strategies, and general operations. TQL's logistics

4

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 5 of 25 PAGEID #: 284

DEC/06/2018/THU 09:39 AM   CLERK OF COURTS        FAX No. 513 732 7050        P. 005
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 5 of 25 PAGEID #: 339

training program generally takes between 8 and 26 weeks to complete. Mr. Franklin had no prior experience in freight brokerage or the third-party logistics industry before joining TQL.

23.     Throughout his employment by TQL, Mr. Franklin acquired detailed knowledge of TQL's unique operations, including, without limitation: shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services. Mr. Franklin also had extensive access to TQL's confidential and highly proprietary information for use in the performance of his job duties, including: proprietary software, operating policies and procedures, financial records (such as credit history and other similar information about current and prospective customers, suppliers, and motor carriers), information about pricing and the manner and mode of doing business, the terms of TQL's business dealings and relationships with customers and motor carriers, contracts and agreements of all kinds, sales lists and strategies, and detailed customer and motor carrier lists and information.

24.     Mr. Franklin was also required to manage relationships with TQL's existing customers and to develop relationships with prospective customers. As with all Brokers, Mr. Franklin had regular contact with those existing and prospective customers and, in fact, served as the main point of contact from TQL for many of those customers.

25.     Before joining TQL and as a condition of his employment with TQL, Mr. Franklin signed the Agreement. (*See*, Exhibit 1).

26.     Pursuant to the Agreement, Mr. Franklin agreed that TQL's "Confidential Information" as that term is defined in the Agreement, whether or not formally designated as such, was "vital to the success of TQL's business." *Id.*

5

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 6 of 25 PAGEID #: 285

DEC/06/2018/THU 09:39 AM   CLERK OF COURTS        FAX No. 513 732 7050        P. 006
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 6 of 25 PAGEID #: 340

27.     Mr. Franklin further agreed that any unauthorized use or disclosure of TQL's Confidential Information "would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL." *Id.*

28.     Mr. Franklin also agreed that TQL's Confidential Information was a proprietary trade secret with significant economic value, compiled through a substantial investment of time and money by TQL, and not common knowledge throughout the Industry. *Id.*

29.     Mr. Franklin promised that he would "at all times" refrain from using, sharing, or disclosing TQL Confidential Information to any individual or business entity (except as authorized by TQL in the conduct of TQL's business or as required by law). *Id.*

30.     Mr. Franklin acknowledged his understanding that association in any form with a business in competition with TQL "would necessarily result in (Mr. Franklin) revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL." *Id.*

31.     In Section 9 of the Agreement, Mr. Franklin agreed that for a period of one (1) year after the termination of his employment he would not directly or indirectly be employed by (or have any other interest in) any business that is competitive with TQL. *Id.*

32.     In Section 9 of the Agreement, Mr. Franklin agreed that for a period of one (1) year after the termination of his employment he would not directly or indirectly participate in any transportation-intermediary business that provides services anywhere in the Continental United States, including but not limited to any business "that provides shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services." *Id.*

6

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 7 of 25 PAGEID #: 286

DEC/06/2018/THU 09:39 AM   CLERK OF COURTS          FAX No. 513 732 7050           P. 007
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 7 of 25 PAGEID #: 341

33.    In Section 9 of the Agreement, Mr. Franklin agreed that for a period of one (1) year after the termination of his employment he would not directly or indirectly, solicit any TQL customer or client or take any action, to divert business from TQL. *Id.*

34.    In Section 9 of the Agreement, Mr. Franklin agreed that for a period of one (1) year after the termination of his employment he would not directly or indirectly, interfere with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any customer. *Id.*

35.    In Section 9 of the Agreement, Mr. Franklin agreed that for a period of one (1) year after the termination of his employment he would not directly or indirectly solicit, or assist others in soliciting any person who has been party to a business relationship with TQL. *Id.*

36.    In Section 9 of the Agreement, Mr. Franklin agreed that the running of the one (1) year restrictions set forth in Section 9 of the Agreement "shall be tolled during any time period during which (Mr. Franklin) violated any provision of the Agreement." *Id.*

37.    In Section 9 of the Agreement, Mr. Franklin agreed that TQL's trade secrets, customer lists, and other "Confidential Information" were "valuable, special, and unique assets of TQL's business, and that he would not disclose such information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law. Mr. Franklin further agreed that he would not make use of any such property for the benefit of any person or entity other than TQL under any circumstance. *Id.*

38.    In Section 9 of the Agreement, Mr. Franklin agreed that the content, time, and geographic restrictions placed on him by the Agreement were reasonable and properly required for the adequate protection of the business of TQL. *Id.*

7

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 8 of 25 PAGEID #: 287

DEC/06/2018/THU 09:40 AM   CLERK OF COURTS        FAX No. 513 732 7050        P. 008
                           Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 8 of 25 PAGEID #: 342

39.     In Section 9 of the Agreement, Mr. Franklin agreed that if there is a breach or threatened breach of any part of the Agreement, TQL shall be entitled to an injunction restraining him from breach or threatened breach. *Id.* Additionally, Mr. Franklin agreed that TQL, in its discretion, would be entitled to pursue a claim for damages, including TQL's costs, expenses, and reasonable attorneys' fees incurred. *Id.*

40.     The Agreement defines "Customer" as a "business...for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination" of Mr. Franklin's employment with TQL. *Id.*

41.     The Agreement includes Mr. Franklin's present employer, Case Stack, within the definition of a "Competing Business" since CaseStack is an entity engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States. *Id.*

42.     In Section 10 of the Agreement Mr. Franklin agreed that the Agreement shall be interpreted and enforced under the laws of the State of Ohio and any lawsuit with respect to the Agreement shall be brought in either the Court of Common Pleas, Clermont County, Ohio or the United States District Court for the Southern District of Ohio. *Id.* Mr. Franklin further submitted to the personal jurisdiction of the state and/or federal courts of Ohio, consented to service of process therefrom, and waived any other requirements with respect to personal jurisdiction, venue, or service of process. *Id.*

43.     In Section 14 of the Agreement, Mr. Franklin certified that he had sufficient time to consider the Agreement before executing it, that he carefully read and fully understood the Agreement, and that he knowingly and voluntarily agreed to the Agreement in its entirety. *Id.*

8

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 9 of 25 PAGEID #: 288

DEC/06/2018/THU 09:40 AM   CLERK OF COURTS         FAX No. 513 732 7050         P. 009
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 9 of 25 PAGEID #: 343

44.     In consideration for Mr. Franklin's agreements set forth above, TQL hired Mr. Franklin. TQL would not have allowed Mr. Franklin to gain knowledge of its proprietary customer information or access to TQL key customer relationships, if Mr. Franklin had not executed the Agreement.

45.     Mr. Franklin separated from TQL on May 31, 2018.

46.     TQL has learned that Mr. Franklin is now associated with CaseStack and is assisting and providing brokerage services for CaseStack in direct competition with TQL, including, on information and belief, interacting with customers and contacts Mr. Franklin was introduced to through his employment with TQL.

47.     Mr. Franklin's CaseStack Job Description requires that he be responsible for collaborating with and supporting CaseStack's Client Development Managers (CDMs). (*See*, Job Description received from CaseStack, attached as Exhibit 2)

48.     Shortly after becoming aware that Mr. Franklin was with CaseStack, TQL contacted CaseStack and shared the relevant portions of the Agreement with it. Yet, Mr. Franklin remains associated with CaseStack. TQL recently has learned that Mr. Franklin is doing business with one of his former TQL customers while working for CaseStack, or has otherwise been directly involved in diverting the business of that customer from TQL to CaseStack.

49.     In fact, Mr. Franklin's presence at CaseStack has caused that customer to send its business to CaseStack exclusively.

50.     CaseStack is aware that TQL has an Agreement with Mr. Franklin. Despite that knowledge, CaseStack continues to engage Mr. Franklin to provide freight brokerage services for CaseStack in violation of his Agreement and to TQL's financial detriment.

9

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 10 of 25 PAGEID #: 289

DEC/06/2018/THU 09:40 AM   CLERK OF COURTS        FAX No. 513 732 7050          P. 010
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 10 of 25 PAGEID #: 344

51.    Mr. Franklin is, therefore, in direct competition with TQL in violation of the

Agreement. Thus, the running of the 1-year restrictive covenants has been tolled.

### FIRST CLAIM FOR RELIEF
#### Breach of Contract
#### (Against Franklin)

52.    TQL incorporates by reference all of the previous paragraphs set forth in this

Complaint as if fully rewritten herein.

53.    TQL and Mr. Franklin entered the Agreement.

54.    The Agreement is a valid and legally enforceable contract.

55.    The Agreement is reasonable.

56.    TQL performed its obligations under the Agreement.

57.    Mr. Franklin breached the Agreement by associating himself with CaseStack prior

to May 31, 2019, because CaseStack is a competitor of TQL within the definition of "Competing

Business" in the Agreement.

58.    On information and belief, Mr. Franklin further breached the Agreement by using

or disclosing TQL's confidential information without TQL's authorization.

59.    On information and belief, Mr. Franklin has also breached the Agreement by

soliciting customers or diverting business from TQL following the termination of his

employment with TQL and prior to the expiration of his non-solicitation obligations.

60.    As a direct and proximate result of Mr. Franklin's actual or threatened unlawful

conduct, TQL has suffered and will continue to suffer irreparable harm.

61.    Monetary damages alone will not be sufficient to remedy all of the harm caused to

TQL by Mr. Franklin's breach of the Agreement.

10

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 11 of 25 PAGEID #: 290

DEC/06/2018/THU 09:41 AM   CLERK OF COURTS       FAX No. 513 732 7050        P. 011
                      Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 11 of 25 PAGEID #: 345

62.    Wherefore, TQL requests a temporary restraining order, preliminary injunction, and permanent injunction commanding Mr. Franklin to comply fully with the Agreement. TQL further requests recovery of its attorneys' fees and compensatory damages.

## SECOND CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Against Franklin)

63.    Plaintiff incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

64.    Mr. Franklin owed TQL a fiduciary duty, which included duties of good faith, honesty, and loyalty, based on his position as an employee of TQL, and based on the confidential information shared with him for use on behalf of TQL in the course and scope of his employment.

65.    Mr. Franklin breached his fiduciary duty to TQL by, among other things, competing with TQL and by misappropriating TQL's confidential and trade secret information.

66.    As a direct and proximate result of Mr. Franklin's breach of fiduciary duty, TQL has suffered and will continue to suffer irreparable harm.

67.    Wherefore, TQL requests a temporary restraining order, preliminary injunction, and permanent injunction commanding Mr. Franklin to comply fully with the Agreement. TQL further requests recovery of its attorneys' fees and compensatory damages.

## THIRD CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### (Against Mr. Franklin and CaseStack)

68.    Plaintiff incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

11

69.     TQL has trade secrets and develops and maintains confidential and highly proprietary information, including, among other items, information about its business dealings and relationships with its customers, customer lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with customers and vendors), marketing, and sales lists and strategies.

70.     TQL's confidential information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, including TQL's competitors. And this information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

71.     TQL's confidential information is protected, in whole or in part, as a trade secret within the meaning of Ohio Rev. Code § 1333.61(D).

72.     On information and belief, Mr. Franklin and CaseStack have willfully misappropriated or threatened to misappropriate TQL's trade secrets for use against TQL and for the benefit of the Defendants within the meaning of Ohio Rev. Code § 1333.61(B)(2).

73.     As a direct and proximate result of the Defendants actual or threatened misappropriation of TQL's trade secrets, TQL has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

74.     TQL has no adequate remedy at law.

75.     Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Mr. Franklin's actual or threatened misappropriation of trade secrets.

76.     Wherefore, TQL requests a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the further use and misappropriation of TQL's trade

12

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 13 of 25 PAGEID #: 292

DEC/06/2018/THU 09:41 AM   CLERK OF COURTS        FAX No. 513 732 7050       P. 013
                Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 13 of 25 PAGEID #: 347

secrets. TQL further requests recovery of its attorneys' fees and compensatory damages for the willful actions taken by Defendants.

### FOURTH CLAIM FOR RELIEF
#### Tortious Interference
#### (against CaseStack)

77.     Plaintiff incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

78.     The Agreement is a valid and binding agreement between TQL and Mr. Franklin.

79.     At all relevant times, CaseStack has been aware of the Agreement between TQL and Mr. Franklin.

80.     Despite this knowledge, CaseStack has purposefully and intentionally interfered with the Agreement by, among other things, engaging Mr. Franklin to broker freight for CaseStack in direct competition with TQL in violation of the Agreement.

81.     CaseStack has tortiously, willfully, and maliciously ignored the contractual obligations that Mr. Franklin owes to TQL, without any justifiable excuse, and in bad faith.

82.     As a direct and proximate result of CaseStack's conduct, TQL has been damaged by, among other things, the loss of sales revenue, customer relationships, and fair competition.

### RELIEF REQUESTED

WHEREFORE, TQL respectfully requests that this Court issue judgment in its favor and against Defendants as follows:

A.      Award TQL a temporary, preliminary, and permanent injunction as set forth above and find that the running of the 1-year restrictive covenants in the Agreement has been tolled;

13

B.      Order Defendants to pay TQL compensatory damages and reasonable attorneys'

fees in the maximum cumulative total not to exceed $75,000;

C.      Award TQL pre-judgment interest, costs and expenses, incurred in connection

with this action;

D.      Award TQL such other and further relief as this Court finds just and proper.

Respectfully Submitted,

Scott K. Jones (0069859)
Michael A Roberts (0047129)
Kellie A. Kulka (0095749)
GRAYDON HEAD & RITCHEY LLP
511 Walnut St., Suite 1800
Cincinnati, Ohio 45202
(513) 629-2799
sjones@graydon.law
mroberts@graydon.law
kkulka@graydon.law

14

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 15 of 25 PAGEID #: 294

DEC/06/2018/THU 09:42 AM    CLERK OF COURTS          FAX No. 513 732 7050          P. 015
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 15 of 25 PAGEID #: 349

## VERIFICATION

STATE OF OHIO          )
                              ) ss.
COUNTY OF CLERMONT   )

      I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

                                                     Marc Bostwick

## NOTARY PUBLIC

      Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 1st day of November, 2018.

                                                    Notary Public

**TO THE CLERK:**

      Please serve Defendants by certified mail, return receipt requested.

                                              KELLY A. PIERRO
                                              Notary Public, State of Ohio
                                              My Commission Expires
                                              July 22, 2023

DEC/06/2018/THU 09:42 AM    CLERK OF COURTS         FAX No. 513 732 7050              P. 016

# EXHIBIT 1

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 17 of 25 PAGEID #: 296

DEC/06/2018/THU 09:42 AM    CLERK OF COURTS        FAX No. 513 732 7050        P. 017
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 17 of 25 PAGEID #: 351



## TOTAL QUALITY LOGISTICS, LLC

### Employee Non-Compete, Confidentiality and Non-Solicitation Agreement

#### (Arkansas)

This Employee Non-Compete, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into by and between Total Quality Logistics, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the Employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"). Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

#### RECITALS:

**WHEREAS,** TQL is an Ohio limited liability company providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States. References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS,** TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry"). TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS,** TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any

AK                                             1

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 18 of 25 PAGEID #: 297

DEC/06/2018/THU 09:42 AM   CLERK OF COURTS        FAX No. 513 732 7050              P. 018
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 18 of 25 PAGEID #: 352

information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This Information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA;

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the industry;

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, Employee desires to be employed by TQL and TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and agrees to be bound by it.

**NOW THEREFORE**, in consideration of the employment or continued employment of Employee by TQL, including compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, which Employee considers adequate consideration for the promises contained herein, TQL and Employee agree as follows:

1.    Recitals. The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

AK                                           2

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 19 of 25 PAGEID #: 298

DEC/06/2018/THU 09:43 AM  CLERK OF COURTS       FAX No. 513 732 7050              P. 019
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 19 of 25 PAGEID #: 353

2.    Employee Duties.  Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.    At-will Employment.  Employee is an employee at-will.  Nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.    TQL Owns Confidential Information.  All Confidential Information as described herein is proprietary and the sole property of TQL.

5.    Confidential Information Is for TQL's Use Only.  Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business or as required by law.  Employee agrees that all information disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential.

6.    Return of Company Property.  Upon termination of employment or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody, or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data, or other materials.

7.    Presumption Regarding Confidential Information.  Employee agrees that Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, would necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.    Property Rights and Assignment.  Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL.  Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's employment with TQL.  To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such invention, improvement, and/or technological innovation.

AK                                        3



9.    Covenants and Remedies.

(a)    Agreement to Covenants and Material Breach.  The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

(b)    Covenants.  Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason:

(i)  Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below), except the ownership of less than 1% of the outstanding equity securities of any publicly-held corporation or entity;

(ii)   Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation-intermediary business that provides services anywhere in the Continental United States, including but not limited to any person or organization that provides shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services;

(iii)  Employee will not, directly or indirectly, solicit any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor, or take any action, to divert business from TQL;

(iv)  Employee will not, directly or indirectly, interfere with, tamper with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL; and

(v)  Employee will not, directly or indirectly employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of, consultant with, or been party to another business relationship with TQL.

(vi)  It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement.

(c)    Trade Secrets.  The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder.  Employee will not hereafter disclose such trade

AK                                                    4

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 21 of 25 PAGEID #: 300

DEC/06/2018/THU 09:44 AM    CLERK OF COURTS          FAX No. 513 732 7050          P.021
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 21 of 25 PAGEID #: 355

secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

(d)    Reasonableness of Restrictions.    Employee recognizes that the foregoing geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition.

(e)    Injunction. If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach. Alternatively and additionally, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee. If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL.

(f)    For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically, including doing business with any Customer or Motor Carrier.

(g)    Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

10.    Governing Law, Jurisdiction, and Venue. This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without giving effect to conflict of law provisions

AK                                        5

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 22 of 25 PAGEID #: 301

DEC/06/2018/THU 09:44 AM   CLERK OF COURTS        FAX No. 513 732 7050          P. 022
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 22 of 25 PAGEID #: 356

which would result in the application of any law other than Ohio law. Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in either the Court of Common Pleas, Clermont County, Ohio or the United States District Court for the Southern District of Ohio. Further, Employee hereby submits to the personal jurisdiction of the state and/or federal courts of Ohio, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process.

11.    Severability.  Should any of the provisions of this Agreement be declared or determined to be illegal or invalid, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

12.    Personnel Policies.  Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion. TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern. However, such rules, policies, practices, and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time. Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

13.    No Conflicting Employee Agreement.  Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

14.    Acknowledgments.  Employee acknowledges and agrees that he or she:

(a) has had sufficient time within which to consider this Agreement before executing it;
(b) has carefully read and fully understands all of the provisions of this Agreement;
(c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
(d) knowingly and voluntarily intends to be legally bound by this Agreement;
(e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and
(f) has knowingly and voluntarily executed this Agreement.

15.    Binding Agreement.  This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns. This Agreement is not assignable by Employee, but is fully assignable by TQL without notice or consent from the Employee.

16.    Entire Agreement.  This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement, including, but not limited to, the prior non-compete. This

AK                                              6

Agreement may be amended or modified only upon a written agreement signed by both of the parties hereto. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

IN WITNESS WHEREOF, the undersigned parties to this Agreement have duly executed it on the day and year first written below.

EMPLOYEE:

_____
Signature

Name: Jerry Franklin
        Please Print

Date: 6-19-17

TOTAL QUALITY LOGISTICS, LLC

By: _____

Name: Magon Hudson

Title: GSM

Date: 6-19-17

AK                                         7

DEC/06/2018/THU 09:45 AM   CLERK OF COURTS      FAX No.513 732 7050          P.024

# EXHIBIT 2

Case: 1:24-cv-00742-SJD Doc #: 14-3 Filed: 01/31/25 Page: 25 of 25 PAGEID #: 304

DEC/06/2018/THU 09:45 AM    CLERK OF COURTS         FAX No. 513 732 7050              P. 025
Case: 1:19-cv-00266-DRC Doc #: 7 Filed: 04/12/19 Page: 25 of 25 PAGEID #: 359



As the **Client Development Associate (CDA)**, this position plays a critical role in driving enhancement, standardization and development to key processes and documentation within the Client Development team. This role is responsible for collaborating with Client Development Managers (CDMs) at multiple locations, supporting their role of account implementation and optimizing efficiencies to translate into business expansion. This role will exhibit a passion for process improvement, an eye for professional document development and a desire to contribute to a fast growing, fun organization.

**ESSENTIAL JOB FUCTIONS:**

- *Enhance & Standardize Documents, Processes and Announcements*
- Understand CaseStack's value proposition and the Client Development team's role and responsibilities
- Develop standardized communication and documents to drive a consistent approach across the CDM team to our client base.
- Document SOPs for from an organizational perspective that will be distributed internally and externally.
- *Support Client Development Team Core Responsibilities*
- Assist Client Development Managers with new client on-boarding and implementation process
- Validate client provided implementation date against CaseStack business and operation requirements.
- Help complete internal account set up process
- Assist Client Development Managers in the assessment of existing client's business needs
- Extract, manipulate and analyze raw data from multiple sources that will be used in the CDM's assessment of a client's current and prospective foot print within the CaseStack network.
- *Perform ah-hoc projects and research as needed.*
- *Candidate must be comfortable working on multiple projects / assignments at one time. Every day will not be the same!*

**REQUIREMENTS / QUALIFICATIONS:**

- Bachelor's Degree -- preferably in Business, Marketing, Supply Chain, or related field
- Strong talent for multi-tasking and competing priorities
- Highly organized; attentive to details
- Ability to collaborate with multiple parties on a project
- Excellent written and oral communication skills
- Self-directed, yet strong team player
- Advanced skills in Microsoft Office, especially in Excel, PowerPoint, and Word
- Photo editing skills a plus (Photoshop, etc.)
- Knowledge of retail industry or consumer packaged goods (CPG) industry a plus

---

CaseStack, Inc. 3739 North Steele Blvd., Suite 120, Fayetteville, AR 72703
Telephone 479.856.6140  Fax 310.496.1281 – www.casestack.com

ALL-STATE LEGAL®
EXHIBIT
2