## IN THE COURT OF COMMON PLEAS
## CLERMONT COUNTY, OHIO

| | | |
|---|---|---|
| **TOTAL QUALITY LOGISTICS, LLC** | ) | **Case No.:** _____ |
| **4289 IVY POINTE BLVD.** | : | |
| **CINCINNATI, OHIO 45245** | ) | **Judge** _____ |
| | : | |
| **Plaintiff,** | ) | |
| | : | |
| **v.** | ) | **VERIFIED COMPLAINT FOR** |
| | : | **INJUNCTIVE RELIEF AND DAMAGES** |
| **CHRISTOPHER M. JOHNSON** | ) | |
| **9239 MAGNOLIA LILY AVE.** | : | |
| **CHARLOTTE, NC 28227** | ) | |
| | : | |
| **AND** | ) | |
| | : | |
| **PATRIOT LOGISTICS SERVICES, LLC** | ) | |
| **9239 MAGNOLIA LILY AVE.** | : | |
| **CHARLOTTE, NC 28227** | ) | |
| | : | |
| **ALSO SERVE STAT. AGENT** | ) | |
| **CHRISTOPHER M. JOHNSON** | : | |
| **9239 MAGNOLIA LILY AVE.** | ) | |
| **CHARLOTTE, NC 28227** | : | |
| | ) | |
| **Defendants.** | : | |

For its Complaint against Defendants Christopher M. Johnson ("Johnson") and Patriot

Logistics Services, LLC ("Patriot Logistics"), the Plaintiff, Total Quality Logistics, LLC ("TQL"),

states as follows:

### NATURE OF THE ACTION

1.      Johnson is a former employee of TQL. At the start of his employment with TQL,

he signed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement

("Agreement"). (*See*, Agreement, attached as Exhibit 1).

2.      Johnson now competes with TQL in violation of the Agreement in his work for a

TQL competitor that Johnson founded, Defendant Patriot Logistics Services, LLC. That fact, and

other intentional acts of the Defendants set forth herein, constitute breach of contract, misappropriation of trade secrets, and tortious interference.

3.     TQL seeks injunctive relief to prevent Defendants' continued irreparable harm to TQL and damages against Defendants on the claims of breach of contract, misappropriation of trade secrets, and tortious interference in an amount to be determined at trial in excess of $25,000.00, but less than $75,000.00, inclusive of any award of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief.

## PARTIES, JURISDICTION, AND VENUE

4.     TQL is an Ohio limited liability company with its principal place of business at 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers throughout the United States.

5.     Johnson was employed by TQL from September 14, 2015, to July 23, 2020, in TQL's Charlotte, NC office.

6.     Patriot Logistics is a North Carolina limited liability corporation which, as an active freight brokerage, conducts business competitive with TQL in a number of states, including on information and belief, Ohio. Patriot Logistics maintains a principal place of business in Charlotte, North Carolina.

7.     Johnson agreed in his Agreement with TQL that Ohio law governs any dispute regarding his non-competition and confidentiality.

8.     This Court has jurisdiction over Defendants because, among other reasons, Defendants intentionally misappropriated TQL's trade secrets, and committed tortious acts against TQL, a company located in Clermont County, Ohio.

2

9. Venue is proper in the Clermont County, Ohio, Court pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure as the intentional acts of the Defendants have caused tortious injury to TQL in Clermont County, Ohio.

10. This suit seeks injunctive relief to prevent Defendants' continued irreparable harm to TQL and damages against Defendants on the claims of breach of contract, misappropriation of trade secrets, and tortious interference in an amount to be determined at trial in excess of $25,000.00, but less than $75,000.00, inclusive of any award of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief.

## FACTS

11. TQL is one of the largest third-party logistics companies in the U.S. and operates in the highly competitive freight brokerage industry. TQL provides freight brokerage services, third-party logistics services, truck brokerage services, and assistance with supply-chain management throughout the U.S. TQL has operated as a federally authorized freight broker since 1997.

12. TQL's customers are companies that ship goods from one location to another. Included among these customers are companies that want to ship their own goods and other freight brokers who already agreed to ship goods on behalf of another customer but need assistance finding a carrier to fulfill the shipment.

13. TQL does not own, operate, or lease any of its own trucks. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent motor carriers that are able and willing to haul freight at the times and places required by TQL customers.

3

14.     Patriot Logistics is a competitor of TQL. Patriot Logistics has active freight brokerage licensure through the U.S. Department of Transportation's Federal Motor Carrier Safety Administration under Docket Number MC 1121375.

15.     The third-party logistics industry and the freight-shipping industry are extremely competitive. Relationships with customers, carriers, and other brokers are critical to success.

16.     TQL spends significant amounts of time, money, and other resources to develop relationships with new customers and strengthen relationships with existing customers. TQL has also made substantial investments in developing and protecting the secrecy of its proprietary systems, processes, and procedures that it uses to manage its operations and to compete in the competitive logistics and freight industry.

17.     TQL takes significant measures to protect its trade secrets, customer relationships, and other confidential information. For example, before beginning employment at TQL, all freight brokers, as well as many other types of employees, must sign restrictive covenants that restrict their ability to compete with TQL, to solicit TQL's customers or employees, or to disclose or misuse TQL's confidential information.

18.     TQL utilizes individualized passwords that must be routinely changed, for electronic access to its proprietary and confidential information. TQL employs internal system controls to prevent employees from viewing, downloading, physically removing and printing certain information, as well as keycards and badges for entry to its offices.

19.     Johnson sought employment with TQL, was hired in September 2015, and became a Logistics Account Executive ("LAE"), or freight broker for TQL, then a Saturday Group Leader ("SGL"), and finally, a Senior Logistics Account Executive ("SRLAE"). He resigned his employment in July of 2020.

4

20. TQL provided Johnson with extensive training on TQL's strategies and methods to succeed within the industry, including, without limitation, training on TQL's services, customers, pricing structure, sales strategies, and general operations. It took Mr. Johnson twenty-two (22) weeks to complete TQL's logistics training program. Johnson had no prior experience in freight brokerage or the third-party logistics industry before joining TQL.

21. Throughout his employment by TQL, Johnson acquired detailed knowledge of TQL's unique operations, including, without limitation: shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services. Johnson also had extensive access to TQL's confidential and highly proprietary information for use in the performance of his job duties, including: proprietary software, operating policies and procedures, financial records (such as credit history and other similar information about current and prospective customers, suppliers, and motor carriers), information about pricing and the manner and mode of doing business, the terms of TQL's business dealings and relationships with customers and motor carriers, contracts and agreements of all kinds, sales lists and strategies, and detailed customer and motor carrier lists and information.

22. Johnson was also required to manage relationships with TQL's existing customers and to develop relationships with prospective customers. As with all TQL LAEs, and even more so with SRLAEs, Johnson had regular contact with those existing and prospective customers and, in fact, served as the main point of contact from TQL for many of those customers.

23. The Agreement Johnson signed states as follows:

> "**5. Confidential Information is for TQL's Use Only**. Unless (Johnson) has prior written consent from TQL, (he) shall not at any time during the course of (his) employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business. (Johnson) agrees that all information disclosed to (him) or to which (he) has access during the period of (his)

5

employment, that there is any reasonable basis to believe to be, or that appears to be treated by TQL as, Confidential Information, shall be presumed to be Confidential Information hereunder.

**6. Return of Company Property.** Upon termination of employment or upon request by TQL for any reason, (Johnson) will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in (his) possession, custody or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and (he) will retain no copy of any such document, data or other materials.

**7. Presumption Regarding Confidential Information.** (Johnson) agrees that (his) engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, would necessarily result in (him) revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

**8. Trade Secrets.** (Johnson) recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and unique assets of TQL's business, access to and knowledge of which are essential to performance of (Johnson's) duties hereunder. (Johnson) will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, nor shall (Johnson) make use of any such property for (his) own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

**9. Covenants and Remedies.**

…

**9(b). Covenants.** (Johnson) agrees that, during the course of his…employment (except as required in the course of (his) employment with TQL), and for a period of one (1) year after termination or cessation of (his) employment for any reason (the "Restricted Period"): (i) (he) will not, directly or indirectly, own, operate, maintain or have any other interest (whether as owner, shareholder, officer, director, partner, member, joint venture or any other interest) in any Competing Business…; and (ii) (he) will not, directly or indirectly, (whether as an employee, agent, consultant, contractor, or otherwise), become employed by or engaged in a Competing Business…in a capacity similar to that in which (he) is engaged by TQL or in a capacity in which (he) is in a position to use or benefit from the use of TQL's Confidential Information; and (iii) (he) will not, directly or indirectly, solicit any Customer or Motor Carrier…for any business purpose in competition with or in conflict with…TQL; and (iv) (he) will not, directly or indirectly, interfere with, tamper with or disrupt any contractual relationship, or prospective contractual relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL, or otherwise take any action to divert Business from TQL; and (v) (he) will not, directly

6

or indirectly, employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of or consultant with TQL.

**9(c). Injunction & Enforcement Remedies.** If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining (Johnson) from such breach or threatened breach. Alternatively and additionally, without limitation of remedy, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement...If (Johnson) is found by a court of competent jurisdiction to have violated the terms of this Agreement, (he) shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL. Nothing herein shall be construed as prohibiting TQL from pursuing any other legal or equitable remedies that may be available to it for any breach or threatened breach of the Agreement. Furthermore, the Restricted Period...shall not include any period(s) of violation or period(s) of time required for litigation to enforce the covenants contained in this Agreement. . . . .

**10. Reasonableness of Restrictions.** (Johnson) agrees and acknowledges that the provisions of this Agreement, including the geographic, duration, and content restrictions...are reasonable and fair in all respects and properly required for the adequate protection of the Business of TQL from the disclosure of Confidential Information and unfair competition...

**11. Governing Law.** This Agreement is made and entered into in the State of Ohio. This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without regard to its conflict of law principles."

24.     TQL has recently learned that before leaving TQL, Mr. Johnson founded Patriot

Logistics. One month before leaving TQL, Johnson filed and formed Patriot Logistics, LLC, in

North Carolina on June 23, 2020. The day before he left TQL, Johnson obtained federal brokerage

authority for Patriot Logistic on July 22, 2020. One day later, on July 23, 2020, Johnson resigned

from TQL.

25.     Before the expiration of his non-competition promise in the Agreement (Exh. 1),

and, upon information and belief, before his leaving TQL, Johnson began actively soliciting

business from TQL prospects and customers, including, in at least one case, one customer Johnson

had serviced on behalf of TQL.

26.     Johnson has worked in direct competition with TQL and its freight brokers since

June 2020, if not earlier.

7

27.     When he joined TQL, Johnson agreed that TQL's "Confidential Information," whether or not formally designated as such, was vital to the success of TQL's business and that any unauthorized use or disclosure of TQL's Confidential Information would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL. (*See*, Exh. 1)

28.     Johnson also agreed that TQL's Confidential Information was a proprietary trade secret with significant economic value, compiled through a substantial investment of time and money by TQL, and not common knowledge throughout the Industry.

29.     Johnson promised that he would at all times refrain from using, sharing, or disclosing TQL Confidential Information to any individual or business entity (except as authorized by TQL in the conduct of TQL's business or as required by law).

30.     Johnson acknowledged that association with a business competitive with TQL would result in him revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

31.     Johnson further agreed that the running of the one (1) year non-competition restriction "shall not include any period(s) of violation or period(s) of time required for litigation to enforce the covenants contained in th(e) Agreement."

32.     TQL's trade secrets, customer lists, and other "Confidential Information" are valuable, special, and unique assets of TQL's business which Johnson agreed to not disclose to anyone for any reason, except as required by law. Johnson further agreed that he would not make use of TQL Confidential Information for anyone other than TQL.

8

33. Johnson agreed that the content, time, and geographic restrictions placed on him by the Agreement were reasonable and required for the protection of TQL's business and that a breach or threatened breach of any part of the Agreement, would entitle TQL to an injunction.

34. Patriot Logistics is a "Competing Business" under the Agreement since it is an entity engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services in the United States.

35. In consideration for Johnson's Agreement set forth above, TQL hired him. TQL would not have allowed him to gain knowledge of its proprietary customer information or access to TQL key customer relationships, if he had not executed the Agreement.

36. As such, TQL seeks injunctive relief and damages against Defendants in an amount to be determined at trial in excess of $25,000.00, but less than $75,000.00, inclusive of any award of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(Against Defendant Johnson)**

37. TQL incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

38. TQL and Johnson entered the Agreement.

39. The Agreement is a valid and legally enforceable contract.

40. The Agreement is reasonable.

41. TQL performed its obligations under the Agreement.

9

42.     As more fully described above, Johnson breached the Agreement by associating himself with Patriot Logistics prior to July 23, 2021, because Patriot Logistics is a competitor of TQL within the definition of Competing Business in the Agreement.

43.     Johnson has further breached the Agreement by using or disclosing TQL's confidential information without TQL's authorization.

44.     Johnson has also breached the Agreement by soliciting customers or diverting business from TQL following the termination of his employment with TQL and prior to the expiration of his restrictive covenants.

45.     As a direct and proximate result of Johnson's actual or threatened unlawful conduct, TQL has suffered and will continue to suffer irreparable harm.

46.     Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Johnson's breach of the Agreement.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets
### (Against All Defendants)

47.     TQL incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

48.     TQL has trade secrets and develops and maintains confidential and highly proprietary information, including, among other items, information about its business dealings and relationships with its customers, customer lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with customers and vendors), marketing, and sales lists and strategies.

49.     TQL's confidential information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means

10

by, other persons who can obtain economic value from its disclosure or use, including TQL's competitors. And this information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

50.     TQL's confidential information is protected, in whole or in part, as a trade secret within the meaning of Ohio Rev. Code § 1333.61(D).

51.     On information and belief, the Defendants have willfully misappropriated or threatened to misappropriate TQL's trade secrets for use against TQL and for the benefit of the Defendants within the meaning of Ohio Rev. Code § 1333.61(B)(2).

52.     As a direct and proximate result of the Defendants actual or threatened misappropriation of TQL's trade secrets, TQL has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

53.     TQL has no adequate remedy at law.

54.     Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Defendants' actual or threatened misappropriation of trade secrets.

### THIRD CLAIM FOR RELIEF
### Tortious Interference with Contract
### (Against Patriot Logistics)

55.     TQL incorporates by reference all of the previous paragraphs set forth in this Complaint as if fully rewritten herein.

56.     Pursuant to the Agreement, TQL has a contractual relationship with Johnson.

57.     Patriot Logistics was aware of the contractual relationship between TQL and Johnson.

58.     Despite this knowledge, Patriot Logistics purposefully and intentionally interfered with this contractual relationship by entering into an employment relationship or other affiliation

11

with Johnson prior to the expiration of his restrictive covenants in the Agreement with TQL. Such interference continues despite Patriot Logistics' knowledge that Johnson's ongoing employment and affiliation with Patriot Logistics violates the Agreement.

59.     Patriot Logistics has tortiously, willfully, and maliciously interfered with the contractual obligations Johnson owes to TQL without any justifiable excuse and in bad faith.

60.     As a direct and proximate result of Patriot Logistics' tortious interference, TQL has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

61.     TQL has no adequate remedy at law.

62.     Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Patriot Logistics' tortious interference.

## **RELIEF REQUESTED**

WHEREFORE, TQL respectfully requests judgment in its favor and against Defendants and hereby seeks the following relief:

A.     Issue immediate preliminary, preliminary, and permanent injunctive relief prohibiting Defendants from any further violation of the Agreement with TQL, plus attorney's fees as provided in the Agreement, from any further misappropriation of TQL's trade secret information, and from any further tortious interference with TQL's business relations;

B.     Award compensatory damages in favor of TQL in an amount to be determined at trial;

C.      Award punitive damages in favor of TQL;

D.     Award attorney's fees as provided in the Agreement, or as otherwise provided by law;

12

E.      For all relief requested, inclusive of compensatory damages, punitive damages, attorney's fees, and the fair value of injunctive relief, award TQL a cumulative amount in excess of $25,000.00, but less than $75,000.00;

E.      Court costs, prejudgment interest, and post-judgment interest; and

F.      Any other relief that this Court deems just and proper.

Respectfully submitted,

/s/ Kellie A. Kulka
Scott K. Jones (0069859)
Kellie A. Kulka (0095749)
Alexandra M. Berry (0098176)

OF COUNSEL:                              GRAYDON HEAD & RITCHEY LLP
                                         312 Walnut St., Suite 1800
GRAYDON HEAD & RITCHEY LLP               Cincinnati, OH 45202
312 Walnut St., Suite 1800               Phone:  (513) 629-2844
Cincinnati, OH 45202                     Fax:     (513) 651-3836
Phone:  (513) 621-6464                   sjones@graydon.law
Fax:     (513) 651-3836                  kkulka@graydon.law
                                         aberry@graydon.law

                                         *Attorneys for Total Quality Logistics, LLC*

13

## VERIFICATION

STATE OF OHIO        )
                      ) ss.
COUNTY OF CLERMONT   )

       I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. I have read the foregoing Complaint and have personal knowledge of the matters and contents thereof. The same are true and accurate to my knowledge, apart from matters therein stated to be alleged on information and belief, and, as to those matters, I have been informed and believe them to be true and accurate.

_Marc K. Bostwick_
Marc Bostwick

## NOTARY PUBLIC

       Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 12ᵗʰ day of July, 2021.

_Christopher M. Brown_
Notary Public

**TO THE CLERK:**

       Please serve Defendants by certified mail, return receipt requested. Thank you.

CHRISTOPHER M. BROWN
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date. Section 147.03 O.R.C.

14

# EXHIBIT 1

## TOTAL QUALITY LOGISTICS, LLC

### Employee Non-Compete, Confidentiality
### And Non-Solicitation Agreement

This EMPLOYEE NON-COMPETE, CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT ("Agreement"), is by and between TOTAL QUALITY LOGISTICS, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245 and the Employee whose name and address are set forth below his or her signature on the last page of this Agreement ("Employee").

### Recitals:

**WHEREAS,** TQL is an Ohio Corporation providing motor transport and related services, including third-party logistic services, motor freight brokerage services and supply-chain management services (hereinafter referred to as the "Business") throughout the Continental United States; and

**WHEREAS,** TQL is unique within the organizations providing services competitive to the Business (hereinafter referred to as the "Industry"). TQL has spent extensive time developing relationships with Customers, Motor Carriers, suppliers and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns at and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL; and

**WHEREAS,** TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer data bases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers, financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor carriers, and vendors; pricing, marketing and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible

written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection; and

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's Business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL; and

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its Business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's Business; and

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL; and

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry; and

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS**, TQL will not agree to employ Employee unless Employee signs this Agreement and is bound by it; and

**NOW THEREFORE,** in consideration of the employment of Employee by TQL, including compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, TQL and Employee agree as follows:

1.    Recitals. The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

2.    Employee Duties. Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time. It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.     At-will Employment.     Employee is an employee at-will. Nothing in this Agreement changes Employee's status as an at-will employee. Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.     TQL Owns Confidential Information. All Confidential Information as described herein is proprietary and the sole property of TQL.

5.     Confidential Information is for TQL's Use Only. Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business. Employee agrees that all information disclosed to Employee, or to which Employee has access during the period of his or her employment, that there is any reasonable basis to believe to be, or that appears to be treated by TQL as, Confidential Information, shall be presumed to be Confidential Information hereunder.

6.     Return of Company Property. Upon termination or cessation of employment for any reason or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data or other materials.

7.     Presumption Regarding Confidential Information.     Employee agrees that Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, would necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.     Trade Secrets. The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder. Employee will not hereafter disclose such trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

9.     Covenants and Remedies.

(a)     Agreement to Covenants and Material Breach. The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set

forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

   (b) Covenants. Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason (the "Restricted Period"):

     (i) Employee will not, directly or indirectly, own, operate, maintain or have any other interest (whether as an owner, shareholder, officer, director, partner, member, joint venturer or any other interest) in any Competing Business (as defined below); except that nothing in this subsection prohibits Employee from owning less than 1% of the outstanding equity securities of any publicly-held corporation or entity; and

     (ii) Employee will not, directly or indirectly, (whether as an employee, agent, consultant, contractor or otherwise), become employed by or engaged in a Competing Business (as defined below), in a capacity similar to that in which Employee is engaged by TQL or in a capacity in which Employee is in a position to use or benefit from the use of TQL's Confidential Information; and

     (iii) Employee will not, directly or indirectly, solicit any Customer or Motor Carrier (as defined below) for any business purpose in competition with or in conflict with the Business of TQL; and

     (iv) Employee will not, directly or indirectly, interfere with, tamper with, disrupt, or attempt to interfere with, tamper with or disrupt any contractual relationship, or prospective contractual relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL, or otherwise take any action to divert Business from TQL; and

     (v) Employee will not, directly or indirectly, employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of or consultant with TQL.

   (c) Injunction & Enforcement Remedies. If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach. Alternatively and additionally, without limitation of remedy, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee. If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL. Nothing herein shall be construed as prohibiting TQL from pursuing any other legal or equitable remedies that may be available to it for any breach or threatened breach of the Agreement. Furthermore, the Restricted Period (defined above) shall not include any period(s) of violation or period(s) of time required for litigation to enforce the covenants contained in this Agreement.

(d)     Definitions. For purposes of this Agreement, the term: (i) "Custom er" is any customer or prospective customer: (i) with whom Employee had contact in connection with Employee's employment with TQL during the twelve (12) month period prior to termination of Employee's employment with TQL for any reason; or (ii) about whom Employee had access to proprietary, confidential, or commercially advantageous information through Employee's employment by TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with TQL for any reason; (ii) the term "Motor Carrier" is any over-the-road motor carrier, trucker or hauling business that has transported freight for any Customer as a result of a relationship, dealings, arrangements, or communications with TQL and: (i) with whom Employee had contact in connection with Employee's employment with TQL during the twelve (12) month period prior to termination of Employee's employment with Company for any reason; or (ii) about whom Employee had access to proprietary, confidential, or commercially advantageous information through Employee's employment by TQL during the twelve (12) month period prior to termination or cessation of Employee's employment with TQL for any reason; (iii) the term "Competing Business" is any person, firm, corporation, or entity that is engaged in the Business in the Continental United States.

(e)     Acknowledgement of Intent. The parties agree and affirm that their intention with respect to Section 9 of this Agreement is that Employee's activities be limited only during Employee's employment with TQL and for a twelve (12) month period after termination or cessation of Employee's employment with TQL for any reason. The provisions calling for a "look back" of twelve (12) calendar months prior to termination or cessation of Employee's employment with TQL for any reason are intended solely as a means of identifying the Customers, Motor Carriers or employees to which such restrictions apply and are not intended to nor shall they, under any circumstances, be construed to define the length or term of any such restrictions.

10.     Reasonableness of Restrictions. Employee agrees and acknowledges that the provisions of this Agreement, including the geographic, duration, and content restrictions contained in Section 9, are reasonable and fair in all respects and properly required for the adequate protection of the Business of TQL from the disclosure of Confidential Information and unfair competition. Employee further agrees and acknowledges that this Agreement is based upon valuable and sufficient consideration, the receipt of which as of the date of this Agreement is hereby acknowledged.

11.     Governing Law. This Agreement is made and entered into in the State of Ohio. This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without regard to its conflict of law principles.

12.     Severability. Should any of the provisions of this Agreement be declared or determined to be illegal or invalid by a court of competent jurisdiction, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement provisions as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

The parties hereby consent and agree that the scope of the Agreement's provisions may be modified judicially in any proceeding brought to enforce such provisions.

13.     Personnel Policies.  Employee agrees to abide by TQL's rules, regulations, policies and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion. TQL's written rules, policies, practices and procedures shall apply to Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern. However, such rules, policies, practices and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time. Additional contractual obligations, or other modifications of this agreement may be made only by an express written agreement between Employee and TQL.

14.     - No Conflicting Employee Agreement.  Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

15.     Acknowledgments.  Employee acknowledges and agrees that he or she:

        (a)     has had sufficient time within which to consider the Agreement before executing it;

        (b)     has carefully read and fully understands all of the provisions of the Agreement;

        (c)     knowingly and voluntarily agrees to all of the terms set forth in the Agreement;

        (d)     knowingly and voluntarily intends to be legally bound by this Agreement;

        (e)     has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and

        (f)     has knowingly and voluntarily executed this Agreement.

16.     Binding Agreement.  This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns.  The Agreement is not assignable by Employee.

17.     Survival.  Sections 4 through 12 of this Agreement shall survive the termination or cessation of Employee's employment with TQL for any reason.

18.     Entire Agreement.  This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement.  This Agreement may be amended or modified only upon written agreement signed by both of the parties hereto.  This Agreement may be executed in

PPAB 1642339v2                                    6

Counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

In Witness Whereof, the undersigned parties to this Agreement have duly executed it on the day and year first written below.

EMPLOYEE:

_____
Signature

Name: _Christopher Johnson_
Please Print

Address: _2413 castleberry ct Apt F_
_Mason, OH 251'0_

Date: _09/14/2015_

TOTAL QUALITY LOGISTICS, LLC

By: _____

Name: _Jason Beck_

Title: _GSM_

Date: _09-14-2015_