## *Total Quality Logistics, LLC v. Lankford*

United States District Court for the Southern District of Ohio, Western Division

July 10, 2023, Decided; July 10, 2023, Filed

Case No. 1:23-cv-303

**Reporter**

2023 U.S. Dist. LEXIS 118484 *; 2023 WL 4423820

TOTAL QUALITY LOGISTICS, LLC, Plaintiff, v. JACOB RYAN LANKFORD, et al., Defendants.

**Counsel:  [*1]** For Total Quality Logistics, LLC, Plaintiff: Daniel E Linneman, Jeffrey C Mando, LEAD ATTORNEYS, Adams Law, PLLC, Covington, KY.

For Jacob Ryan Lankford, Point Freight Systems, LLC, Defendants: Brian Joseph Butler, LEAD ATTORNEY, Mezibov Butler, Cincinnati, OH.

**Judges:** DOUGLAS R. COLE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DOUGLAS R. COLE

# Opinion

### OPINION AND ORDER

Ryan Lankford worked for Total Quality Logistics, LLC (TQL). (Compl., Doc. 2, #76). While there, the company had Lankford sign non-solicitation and confidentiality agreements. (*Id.*). Lankford then left TQL and started working for a competitor, Point Freight Systems, LLC (PFS). (*Id.* at #78). TQL now believes that Lankford is violating those agreements while working for PFS, and that PFS has encouraged this behavior. (*Id.*). TQL sued both in the Court of Common Pleas for Clermont County, Ohio, asserting claims for breach of contract, injunctive relief, misappropriation of trade secrets, and tortious interference with contract. (*Id.* at #78-83). For relief, TQL demanded compensatory damages, punitive damages, and attorney fees "in excess of $25,000," injunctive relief, and fees. (*Id.* at #84). Defendants then removed the matter to this Court, asserting the **[*2]**  Court had diversity jurisdiction. (Doc. 1).

TQL now seeks remand. (Doc. 7). It does not dispute that the parties are diverse. Rather, TQL argues the Court lacks subject-matter jurisdiction because the amount in controversy does not exceed $75,000. (*Id.* at #124). To support that argument, TQL submitted a Stipulation clarifying the relief the company seeks:

> The Plaintiff, Total Quality Logistics, LLC ... hereby stipulates that the relief it seeks, and will accept, in this action is limited to judgment in the cumulative amount not exceeding $75,000.00, inclusive of compensatory damages, punitive damages, attorney's fees, and the fair value of any injunctive relief. This stipulation includes all of the relief sought in the Verified Complaint.

(Doc. 8, #128).

Defendants responded, resisting remand on two grounds. First, Defendants argue that a review of the state-court Complaint shows that, stipulation aside, the value of the relief sought necessarily exceeds $75,000. (Doc. 11, #157-59, 163-65). Second, they said that TQL's stipulation was defective and so does not prevent jurisdiction from attaching. (*Id.* at #159-60). Separately, PFS, whose principal place of business is in North Carolina, **[*3]**  moved to dismiss on personal jurisdiction grounds, claiming it lacked sufficient contacts with Ohio for this Court to exercise jurisdiction over it. (Doc. 9, #133).

For the reasons discussed below, the Court **GRANTS** TQL's Motion for Remand (Doc. 7) and **REMANDS** this action to the Court of Common Pleas for Clermont County, Ohio. Moreover, because the Court lacks subject-matter jurisdiction over the action, the Court **DENIES** PFS's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) **AS MOOT**.

## LEGAL STANDARD

When a defendant removes an action from state court to federal court, the federal court has subject-matter jurisdiction only if it would have had original jurisdiction over the action. *28 U.S.C. § 1441(a)*. Here, Defendants claim that this matter falls within the Court's original diversity jurisdiction under *28 U.S.C. § 1332(a)*. For that to be true, two conditions must be met: (1) the parties must be completely diverse; and (2) the amount in controversy must exceed $75,000. *Id.* Importantly, though, removal jurisdiction is assessed based on the facts as they existed at the time of removal. *See Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004)*. Separately, courts must also be mindful that, when jurisdiction upon removal is uncertain, federal courts must construe the removal **[\*4]** statutes strictly, resolving all doubts in favor of remand. *See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999)*.

## LAW AND ANALYSIS

The Court begins with TQL's Motion for Remand because if, as TQL claims, this Court lacks subject-matter jurisdiction, that would render "any decree in the case void and the continuation of the litigation in federal court futile." *Eastman v. Marine Mech. Corp., 438 F.3d 544, 549-50 (6th Cir. 2006)* (citation omitted). Ultimately, the Court concludes remand is appropriate, so the Court not only starts there but ends there as well.

As noted, diversity jurisdiction carries both a citizenship aspect and an amount-in-controversy aspect. But here, all concede the parties are completely diverse. (Doc. 1, #2; Doc. 7 #122). Thus, the Court considers only whether the amount in controversy requirement is met.

Generally, a plaintiff is the master of his or her complaint. *Heyman v. Lincoln Nat'l Life Ins. Co., 781 F. App'x 463, 469 (6th Cir. 2019)*. A plaintiff wishing to avoid removal, then, can demand relief in an amount below the jurisdictional threshold. *Id.*; *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S. Ct. 586, 82 L. Ed. 845 (1938)* ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."). So long as that demand in fact limits the relief the plaintiff can **[\*5]** receive, it prevents diversity jurisdiction from arising.

Ohio law, though, makes doing that tougher in two ways. First, under Ohio's Civil Rules, a plaintiff's complaint *usually* cannot demand a specific dollar amount for relief, but instead is limited to alleging whether the plaintiff seeks recovery exceeding $25,000. *Ohio Civ. R. 8(A)*. (The Court tackles that "usually" below.) Second, even if a plaintiff were to ignore that limitation and allege a specific cap on damages in their Complaint (e.g., "plaintiff seeks and will accept no more than $75,000"), Ohio law renders such limitations unenforceable. That is, Ohio law permits a plaintiff to recover damages beyond what their complaint alleges. *See Ohio Civ. R. 54(C)*; *Shankle v. Egner, Nos. 2011 CA 00121, 2011 CA 00143, 2012-Ohio-2027, 2012 WL 1622459, at \*5 (Ohio Ct. App. May 7, 2012)* ("*Civ. R. 54* authorizes courts to grant the relief to which a party is 'entitled,' regardless of whether the party has demanded the relief in the pleadings.").

As a result, normally a defendant in an Ohio court action may remove, even if the complaint does not demand relief greater than $75,000 on its face, so long as the defendant asserts in good faith that the amount in controversy exceeds the jurisdictional threshold (and, of course, that complete diversity exists). *See 28 U.S.C. § 1446(c)(2)*; *see also Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 84, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014)*

("When the plaintiff's complaint **[\*6]** does not state the amount in controversy, the defendant's notice of removal may do so."). In making that removal request, the defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and "need not contain evidentiary submissions." *Dart Cherokee, 574 U.S. at 85, 89*. There is no requirement that "[a] removing defendant ... prove up the jurisdictional allegations of a notice of removal by submitting evidence with the notice." *Evans v. Wells Fargo Bank, N.A., No. 15-2725, 2016 U.S. Dist. LEXIS 40991, 2016 WL 1248972, at \*3 (W.D. Tenn. Mar. 29, 2016)*. Defendants made such an allegation in support of the original removal here.

Faced with that situation, a plaintiff seeking remand has two options. First, the plaintiff can, at the first post-removal opportunity, file a stipulation clarifying that they *always* desired recovery *below* the jurisdictional threshold (e.g., "the amount the plaintiff is seeking and the most plaintiff will accept is less than $75,000"). *See Heyman, 781 F. App'x at 469-71*. So long as the stipulation's language is unequivocal and binding, and so long as it is a clarification rather than a reduction, that stipulation deprives the federal court of diversity jurisdiction. *See id.* The clarification versus reduction point matters because "events occurring subsequent to the institution of suit which **[\*7]** reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 872 (6th Cir. 2000)* (citation omitted)).

Second, the plaintiff can move for remand by disputing the allegation in the removal papers regarding the jurisdictional amount. If the plaintiff picks this latter course, the defendant, as the party seeking to keep the matter in federal court, then must show, by a preponderance of the evidence, that the jurisdictional amount is met. *See 28 U.S.C. § 1446(c)(2)(B)*.

TQL took the first road. The company filed an unequivocal, binding stipulation clarifying that it sought and would only accept a cumulative judgment not to exceed $75,000, including the fair value of any injunctive relief it obtains. (Doc. 8, #128). And TQL announced this stipulation at its first opportunity in federal court, some nine days following removal. *See Heyman, 781 F. App'x at 471*. The Court finds TQL's stipulation clarifies, rather than reduces, the amount in controversy. *See, e.g., Total Quality Logistics, LLC v. Summit Logistics Grp., LLC, 606 F. Supp. 3d 743, 753 (S.D. Ohio June 7, 2022)*. Remand is thus proper.

Defendants attacks that result on two grounds. First, they maintain, on factual grounds, that the stipulation is a reduction rather than a clarification. Second, they claim, as a legal matter, that under Ohio's Civil Rules, the stipulation was not TQL's *first* **[\*8]** opportunity to specify its damages, and thus the stipulation is ineffective under Sixth Circuit law. The Court disagrees on both fronts.

Start with the factual argument, which proceeds in two parts. First, Defendants note that in three counts, Counts I, III, and V, the Complaint separately alleges damages "in excess of $25,000." Thus, Defendants say, the Complaint's plain language shows that the combined damages for the three, plus the value of the costs, fees, and injunctive relief sought in the other counts, necessarily exceeds $75,000. (Doc. 11, #156).

Separately, the Defendants assert that a review of the Complaint easily confirms that TQL's requested recovery exceeds $75,000 in value. Defendants note, for example, that TQL's trade secrets claim could result in damages over $100,000 and that TQL has in similar matters demanded and received $60,000 in attorneys' fees alone. (*Id.* at #157-58). And Defendants highlight that TQL seeks injunctive relief whose value, while difficult to assess, can be substantial. (*Id.* at #163).

For both these reasons, Defendants say, the stipulation TQL filed in federal court in fact *reduces* the amount TQL is now seeking in federal court, rather than clarifying **[\*9]** the amount that TQL sought in state court. And as noted, a post-removal reduction will not deprive a federal court of subject-matter jurisdiction. *See Rogers, 230 F.3d at 872*.

Let's take those two factual arguments in order. As to the first, contrary to Defendants' claim, the Court does not read the Complaint as seeking three separate sums of compensatory damages. Rather, the basic harm alleged in Counts I, III, and V appears to be the same. That is, TQL seeks relief for one harm on three alternative legal theories. And a plaintiff can only recover once for a given harm, no matter how many legal theories support that

recovery. *See Martin v. Jones, 2015 Ohio 3168, 41 N.E.3d 123, 143 (Ohio Ct. App. 2015)*. In other words, TQL cannot aggregate the damages across the counts, meaning the Complaint does not expressly seek relief in excess of $75,000.

But what about the related argument that any good-faith reading of the state-court Complaint shows that TQL seeks more than $75,000 in value? As a matter of first principles, that argument sounds reasonable enough. After all, the facts are what matter at removal. And at that early stage, the state-court complaint alone can evidence those facts. So, if a fair reading of the complaint suggests that it demands relief greater than $75,000, one **[\*10]** could argue any post-removal stipulation is an improper reduction rather than a clarification that would support remand.

As a matter of Sixth Circuit precedent, though, that argument doesn't work. According to the Sixth Circuit, where state law prevents a plaintiff from including a binding statement in the state-court complaint that the plaintiff seeks and will accept less than the jurisdictional amount, the plaintiff can offer a stipulation to that fact post-removal in federal court. *See Heyman, 781 F. App'x at 469-71*. And so long as it is the plaintiff's first *post-removal* statement of damages and contravenes no other express statement in the state court case, that suffices. *Id.* In short, in such circumstances courts do not to look past that stipulation to make their own assessment of the value sought in the removed action.

And that makes some sense. After all, even if a plaintiff has been *harmed* in an amount greater than $75,000, they may choose to *recover* only $74,999. That is what it means to be the "master of the complaint." It is just that states like Ohio make it impossible for a plaintiff to evince that intent in their state-court complaint. Against that backdrop, a binding stipulation in federal court represents **[\*11]** the plaintiff's first opportunity to so clarify. And of course, that's the path TQL took here. In short, neither of Defendants' factual arguments based on the Complaint's language work.

But Defendants have one final arrow in their quiver—a legal argument based on a novel reading of Ohio's pleading rules. Noting that previous cases have stressed that plaintiffs must stipulate at their first opportunity, they claim TQL's clarification is untimely (and thus without effect) because TQL *could have* demanded a precise amount in their state-court Complaint. (Doc. 11, #159). More specifically, while Defendants acknowledge that *Ohio Civil Rule 8(A)* generally prevents a plaintiff from stating an amount, they say the Rule includes an exception that applies here. (*Id.*). That argument starts with the language in *Rule 8(A)*:

> If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought, *unless the claim is based upon an instrument required to be attached pursuant to Civ. R. 10*.

*Ohio Civ. R. 8(A)* (emphasis added). The Court will refer to the italicized clause as "*Rule 8(A)*'s exception." To that, *Ohio Civil Rule 10(D)(1)* adds:

> Account or Written Instrument. When any claim or **[\*12]** defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading.

*Id.* at 10(D)(1). Combining the two, Defendants argue that TQL's claims are "based upon" a "written instrument"— Lankford's employment contract—meaning that the case falls in *Rule 8(A)*'s exception and so the "shall not specify" damages language from that Rule does not apply. (*Id.* at #159-60). Accordingly, Defendants say, TQL could have demanded a specific amount for relief in its state-court pleading. (*Id.*). And if that's true, TQL's post-removal stipulation was not the company's "first opportunity" to so clarify, rendering it, or so Defendants say, ineffectual to preclude diversity jurisdiction. (*Id.*).

While interesting, the Court finds the argument unavailing for three reasons. First, Defendants offer no case law or interpretive guidance that supports their novel understanding of Ohio's Civil Rules. To put a point on it, if Defendants are correct, then every Ohio breach-of-contract plaintiff may demand a specific amount of monetary relief in their complaint. Yet Defendants do not offer a single case in which a party has done so. And as a federal

court sitting **[\*13]** in diversity, the Court hesitates to pioneer a new understanding of Ohio's Civil Rules that would transform Ohio's pleading standards without some state authority directing this Court to do so.

Second, even putting the lack of precedent aside, the available interpretive cues indicate *Rule 8(A)*'s exception is narrower than Defendants suggest. Instead, it appears the exception applies chiefly (if not exclusively) to liquidated-damages-type claims with a fixed amount in controversy. For example, *Rule 8*'s 1994 Staff Commentary Notes clarify that the exception is meant to accommodate claims on an account. *See Ohio Civ. R. 8(A)*, 1994 staff commentary. In such actions, the account itself, typically a list of charges and payments, details the precise amount in controversy. *See Creditrust Corp. v. Richard, No. 99-CA-94, 2000 Ohio App. LEXIS 3027, 2000 WL 896265, at \*3 (Ohio Ct. App. July 7, 2000)* (describing an "account" as "[a] detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relationship"). Likewise, the limited case law discussing the issue seems to understand the exception that way, as applying to claims arising from a "note, account, or other contract ... evidencing [a defendant's] alleged debt." *L.S. Industries v. Coe*, No. Civ. A. 22603, 2005 WL 3482173, at \*5 (Ohio Ct. App. Dec. 21, 2005).

Moreover, viewed in that light, the exception makes ample **[\*14]** sense. Pleading limits serve little purpose where an attached written instrument lists the *exact* damages in dispute. And indeed, where the amount is fixed and the only question is liability, plaintiffs are unlikely to overstate damages—the chief concern that led Ohio to adopt pleading limits in the first instance. *See Ohio Civ. R. 8(A)*, 1994 staff commentary ("The concerns that lead to enactment ... related to misconceptions about the civil justice system generated by media reports of large amounts of damages sought in complaints."). Thus, it is no surprise that the Rule drafters carved out a narrow exception for fixed-amount action-on-an-account, or equivalent, claims. But this is not such a claim.

Third, even if Defendants are correct in their understanding of Ohio law, federal law still indicates remand is proper. To start, the Sixth Circuit suggests that the plaintiff need only stipulate in the "first *post-removal* statement regarding the damages sought," not the *first* statement. *Heyman, 781 F. App'x at 470* (relying on a federal court stipulation as the basis for remand (emphasis added)). That is true at least so long as that stipulation does not contradict any express prior pronouncement that the damages exceed the jurisdictional **[\*15]** amount. *Summit Logistics, 606 F. Supp. 3d at 753* (allowing a stipulation where it did not contradict any prior statements). Here, no one disputes that TQL stipulated at the first post-removal opportunity, and Defendants have not provided the Court with any express contradictory pronouncements about damages that TQL made in connection with the state court proceedings (beyond the arguments the Court rejected above).

But that's not all. Sixth Circuit case law also clarifies that any below-the-jurisdictional-amount statement must be *binding* to preclude diversity jurisdiction. Yet as noted above, under *Ohio Civil Rule 54*, a plaintiff's demand for relief in his or her complaint is *not* binding—the plaintiff can recover more if the evidence supports it. *See Fewell v. Gross, Nos. CA2006-04-096, CA2006-05-103, 2007-Ohio-5788, 2007 WL 3133891, at \*5 (Ohio Ct. App. Oct. 29, 2007)* ("Courts are not limited to only grant the relief requested in a complaint. ... A prevailing party is entitled to the relief according to the proof adduced upon trial."). So even if *Rule 8(A)*'s exception allowed TQL's Complaint to precisely demand relief, there is no reason to believe that statement would have limited TQL's permissible recovery. Thus, Defendants' interpretation of *Rule 8(A)* notwithstanding, TQL's post-removal stipulation still provided TQL its first chance to offer a *binding* statement that the **[\*16]** relief it seeks is below the jurisdictional amount.


**CONCLUSION**

For these reasons, the Court finds that the diversity jurisdiction amount-in-controversy requirement is not met. The Court thus **GRANTS** TQL's Motion for Remand (Doc. 7) and **REMANDS** this action to the Court of Common Pleas for Clermont County, Ohio. Moreover, because the Court lacks subject-matter jurisdiction over the action, the Court **DENIES** PFS's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) **AS MOOT**. The Court **INSTRUCTS** the Clerk to **TERMINATE** this matter on the Court's docket.

**SO ORDERED**.

July 10, 2023

**DATE**

/s/ Douglas R. Cole

**DOUGLAS R. COLE**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**